# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

KIRK DAHL, HELMUT GOEPPINGER,                )     **No. 1:07-cv-12388-EFH**
JOSEPH S. FISHER, M.D., P.C. NEW             )
PROFIT SHARING TRUST BY JOSEPH S.            )
FISHER, M.D., TRUSTEE, JAMES J. KLEIN,       )
M.D., RUFUS ORR, POLICE AND FIRE             )
RETIREMENT SYSTEM OF THE CITY OF             )
DETROIT, and ROBERT ZIMMERMAN,               )
Individually and on Behalf of All Others     )
Similarly Situated,                          )
                                             )
                        Plaintiffs,          )
                                             )
        vs.                                  )
                                             )
BAIN CAPITAL PARTNERS, LLC, THE              )
BLACKSTONE GROUP, TC GROUP, INC.,            )
L.P., THE GOLDMAN SACHS GROUP,               )
INC., GS CAPITAL PARTNERS, L.P., JP          )
MORGAN CHASE & CO., JP MORGAN                )
PARTNERS, LLC, KOHLBERG KRAVIS               )
ROBERTS & COMPANY, L.P.,                     )
PROVIDENCE EQUITY PARTNERS, INC.,            )
SILVER LAKE PARTNERS, L.P., TPG              )
CAPITAL, L.P., and WARBURG PINCUS,           )
LLC,                                         )
                                             )
                        Defendants.          )
_____     )

# CLASS PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY
## ORDER FOR INTERLOCUTORY APPEAL

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ......................................................................................1

II.  LEGAL STANDARD ...............................................................................................2

III. ARGUMENT...........................................................................................................4

    A.   Defendants Do Not Present Any Controlling Questions of Law Not Settled By Controlling Authority over which There are Substantial Grounds for Disagreement ......................................................................................................5

        1.   The Preemption Question Does Not Meet §1292(b) Standards.....................6

        2.   The Sufficiency of the Pleadings Question Does Not Meet §1292(b) Standards......................................................................................................13

    B.   The Lack of First Circuit Authority Applying *Billing* and *Twombly* Does Not Justify a §1292(b) Appeal...............................................................................16

    C.   Interlocutory Review Will Delay Rather Than Advance the Litigation ................16

        1.   The Pleadings Are Not Yet Settled...............................................................17

        2.   Dismissal Would Not Preclude Discovery and Trial on Plaintiffs' Separate Unjust Enrichment Count................................................................18

IV.  CONCLUSION........................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

Cᴀsᴇs

*Abortion Rights Mobilization, Inc. v. Regan*,
   552 F. Supp. 364 (S.D.N.Y. 1982)........................................................................3

*Babyage.com, Inc. v. Toys "R" Us, Inc.*,
   C.A. Nos. 05-6792, 06-242, 2008 WL 2746302 (E.D. Pa. July 15, 2008).........................4, 16

*Bell Atlantic Corp. v. Twombly*,
   127 S. Ct. 1955 (2007)..............................................................1, 13, 14, 15

*Booten v. U.S*
   233 F. Supp. 2d 227 (D. Mass. 2002) ..................................................................9

*Caraballo-Seda v. Municipality of Hormigueros*,
   395 F.3d 7 (1st Cir. 2005).........................................................................2

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949) ...............................................................................3

*Credit Suisse Securities (USA) LLC v. Billing*,
   127 S. Ct. 2383 (2007)...........................................................................1, 6

*Cummins v. EG & G Sealol, Inc.*,
   697 F. Supp. 64 (D.R.I. 1988).......................................................................18

*Espinal-Dominguez v. Puerto Rico*,
   352 F.3d 490 (1st Cir. 2003).....................................................................2, 16

*Estate of Metzermacher ex rel. Metzermacher v. National R.R. Passenger Corp.*,
   487 F.Supp.2d 24 (D. Conn. 2007)....................................................................7

*Estates of Ungar ex rel. Strachman v. Palestinian Auth.*,
   228 F. Supp. 2d 40 (D.R.I. 2002)....................................................................2

*Finnegan v. Campeau Corp.*
   915 F.2d 824 (2d. Cir. 1990).....................................................................11, 12

*German by German v. Federal Home Loan Mort. Corp.*,
   896 F. Supp. 1385 (S.D.N.Y. 1995)...................................................................3

*Greenwood Trust Co. v. Massachusetts*
   971 F.2d 818 (1st Cir. 1992).......................................................................10

*Hypertherm, Inc. v. Am. Torch Tip Co.*,
  No. 05-CV-373-JD, 2008 WL 1767062 (D.N.H. April 15, 2008)..........................................18

*In re Bank of New Eng. Corp.*,
  218 B.R. 643 (B.A.P. 1st Cir. 1998) .......................................................................................3

*In re Novergence, Inc.*,
  No. 08-1882, 2008 WL 5136842 (D.N.J. Dec. 5, 2008).........................................................15

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
  859 F.2d 1007 (1st Cir. 1988)..................................................................................................9

*In re Short Sale Antitrust Litigation*
  527 F. Supp. 2d 258-61..................................................................................................10, 11

*Johnson v. Watts Regulator Co.*,
  No. CIV. 92-508, 1994 WL 421112 (D.N.H. Aug. 11, 1994) .................................................7

*Kapossy v. McGraw-Hill, Inc.*,
  942 F. Supp. 996 (D.N.J. 1996) ......................................................................................4, 5, 7

*Lauro Lines S.R.L. v. Chasser*,
  490 U.S. 495 (1989).................................................................................................................2

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*,
  127 S. Ct. 2705 (2007).............................................................................................................4

*LNC Invs., Inc. v. First Fid. Bank*,
  No. 92 CIV. 7584 (CSH), 2000 WL 461612 (S.D.N.Y. April 18, 2000) ...............................15

*M.M.R.-Z. ex rel. Ramirez-Senda v. Puerto Rico*,
  528 F.3d 9 (1st Cir. 2008)........................................................................................................7

*McGillicuddy v. Clements*,
  746 F.2d 76 (1st Cir. 1984)................................................................................1, 4, 11, 12

*Milbert v. Bison Labs., Inc.*,
  260 F.2d 431 (3rd Cir. 1958) ................................................................................................17

*Morris v. Flaig*,
  511 F. Supp. 2d 282 (E.D.N.Y. 2007) ..................................................................................13

*Muniz v. Sabol*
  517 F.3d 29 (1st Cir. 2008) ...................................................................................................10

*Natale v. Pfizer, Inc.*
  379 F. Supp. 2d 161 (D. Mass. 2005) ...................................................................................10

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
   161 F. Supp. 2d 355 (D.N.J. 2001) ................................................................4, 5

*Paschall v. Kansas City Star Co.*,
   605 F.2d 403 (8th Cir. 1979) .............................................................................3

*Pennsylvania Ave. Funds v. Borey*,
   569 F. Supp. 2d 1126 (W.D. Wash. 2008) .......................................................12

*Philip Morris, Inc. v. Harshbarger*,
   957 F. Supp. 327 (D. Mass 1997) ...........................................................10, 12, 15

*Principal Mut. Life Ins. Co. v. Cincinnati TV 64 Ltd. Partnership*,
   845 F.2d 674 (7th Cir. 1988)........................................................................18, 19

*Radio Station WOW v. Johnson*,
   326 U.S. 120 (1945)............................................................................................2

*U.S. ex rel. LaValley v. First Nat'l Bank of Boston*,
   CIV. A. No. 86-236-WF, 1990 WL 112285 (D. Mass. July 30, 1990) ...................17

*U.S. v. Lahey Clinic Hosp., Inc.*
   399 F.3d 1 (1st Cir. 2005).............................................................................9, 10

*U.S. v. Woodbury*,
   263 F.2d 784 (9th Cir. 1959) ............................................................................3

## STATUTES, RULES AND REGULATIONS

28 U.S.C.
   § 1292(b)................................................................................................ *passim*

## OTHER AUTHORITIES

James Wm. Moore, et al., *Moore's Federal Practice* § 203.31 (3d ed. 2003) ............................2, 9

## I.    PRELIMINARY STATEMENT

Defendants' Motion to Certify Order for Interlocutory Appeal should be denied. Interlocutory appeal is limited to cases presenting "difficult and pivotal questions of law not settled by controlling authority." *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984). This is not such a case, as Defendants' motion does not take issue with any questions of law decided by this Court. This Court's December 15, 2008 Memorandum and Order (the "Order") denying Defendants' motion to dismiss applied controlling Supreme Court authority – *Credit Suisse Securities (USA) LLC v. Billing*, 127 S. Ct. 2383 (2007) and *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) – to the factual allegations of Plaintiffs' Third Amended Complaint (the "Complaint"). Applying the legal framework and standards the Supreme Court set forth in *Billing* and *Twombly*, this Court concluded that none of the four *Billing* factors were present (and thus Plaintiffs' claims are not preempted by the securities laws) and that the Complaint met Rule 8 pleading standards.

Defendants do not argue (nor could they) that *Billing* and *Twombly* are not controlling authorities. There is no question that *Billing* and *Twombly* expressly govern the preemption and adequacy of pleading arguments raised in Defendants' motions to dismiss. Instead, Defendants object to how this Court applied *Billing* and *Twombly* to the facts of this case. But the district court's application of settled law to facts is not properly the province of an interlocutory appeal. If it were, an interlocutory appeal would be appropriate every time a losing party disagreed with the application of controlling authority to the facts or inferences drawn therefrom. The scope of Defendants' motion makes clear their true intent – to reargue the entirety of their omnibus motion to dismiss to the First Circuit in an attempt to obtain an outcome more to their liking. A

"do-over" is not the purpose of an interlocutory appeal, and Defendants' motion should be denied for this reason alone.

## II.   LEGAL STANDARD

Interlocutory review under 28 U.S.C. §1292(b) is proper only when an order "involves [1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). The proponent of the motion seeking amendment to certify a question for interlocutory review must demonstrate all three factors. *See Caraballo-Seda v. Municipality of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005); *Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 228 F. Supp. 2d 40, 50 (D.R.I. 2002); *see generally* James Wm. Moore, et al., *Moore's Federal Practice* §203.31 (3d ed. 2003).

The First Circuit "as a general rule [does] not grant interlocutory appeals from a denial of a motion to dismiss." *Caraballo-Seda*, 395 F.3d at 9 (citing *McGillicuddy*, 746 F.2d at 76 n.1. An "order denying [a] motion to dismiss – does not end the case. It is, therefore, not 'final' nor appealable under the so-called final judgment rule." *Espinal-Dominguez v. Puerto Rico*, 352 F.3d 490, 495 (1st Cir. 2003).

Because requests for interlocutory review violate the final judgment rule, they are not granted simply because a party hopes to avoid the expense of litigation. The Supreme Court has expressly "declined to find the costs associated with unnecessary litigation to be enough to warrant allowing the immediate appeal of a pretrial order." *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 499 (1989).

Instead, the Court observed that forbidding interlocutory appeals "achieves significant savings in time and resources on the part of the litigants." *Radio Station WOW v. Johnson*, 326 U.S. 120, 123-24 (1945). "The purpose of section 1292(b) is not to offer advisory opinions

'rendered on hypotheses which (evaporate) in the light of full factual development.'" *Paschall v. Kansas City Star Co.*, 605 F.2d 403, 406 (8th Cir. 1979) (vacating certification of whether Sherman Act §2 violation had been "improvidently granted" pending final resolution of plaintiffs' proof).   Rather, interlocutory review under §1292(b) is reserved for that narrow category of orders that are "not otherwise appealable . . . when they have a final and irreparable effect on the rights of the parties."  28 U.S.C. §1292(b); *In re Bank of New Eng. Corp.*, 218 B.R. 643, 652 (B.A.P. 1st Cir. 1998) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545 (1949)).

The First Circuit's general rule against granting interlocutory appeals from denials of motions to dismiss "reflects [its] policy preference against piecemeal litigation, [] as well as prudential concerns about mootness, ripeness, and lengthy appellate proceedings." *Id.*[1]  "Thus, the fact that appreciable trial time may be saved is not determinative . . . and neither is the fact that the case has tremendous implications or might materially advance the ultimate termination of the litigation." *Id.*

Instead, the First Circuit has "repeatedly emphasized that interlocutory certification under 28 U.S.C. §1292(b) should be used sparingly and only in exceptional circumstances and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority."  *Id.*  Section 1292(b) review "is not intended as a vehicle to provide early review of difficult rulings in hard cases."  *German by German v. Federal Home Loan Mort. Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995); *Abortion Rights Mobilization, Inc. v. Regan*, 552 F. Supp. 364, 366 (S.D.N.Y. 1982) (citing *U.S. v. Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959).

---

[1]       Unless otherwise noted, all emphasis is added and citations are omitted.

## III.   ARGUMENT

The first requirement for a §1292(b) appeal requires Defendants to present a "controlling question of law."   28 U.S.C. §1292(b).  *McGillicuddy*, 746 F.2d at 76 n.1.  The First Circuit requires that the question of law be one not settled by controlling authority.  *Id.*  Defendants do not meet their burden here because *Billing* and *Twombly* are controlling authority on the issues of preemption and pleading standards, respectively.  Defendants do not dispute this fact.  They merely contend that the Court misapplied those binding authorities in its Order.

Further, Defendants must demonstrate a "substantial ground for difference of opinion" as to that "controlling question of law."  28 U.S.C. §1292(b).  The "difference of opinion" required for review under §1292(b) "must arise out of genuine doubt as to the correct legal standard."  *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 355, 360 (D.N.J. 2001); *Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996, 1001 (D.N.J. 1996).  Again, Defendants do not meet their burden because there is no dispute that *Billing* and *Twombly* are the applicable legal standards.

Judge Anita B. Brody in the Eastern District of Pennsylvania recently confronted a similar request for §1292(b) appeal in an antitrust case.  *See Babyage.com, Inc. v. Toys "R" Us, Inc.*, C.A. Nos. 05-6792, 06-242, 2008 WL 2746302 (E.D. Pa. July 15, 2008).  In that case, defendants argued that another 2007 Supreme Court opinion – *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 127 S. Ct. 2705 (2007), which overturned a 100-year-old rule making minimum resale price agreements automatically illegal – "'created a sea change in the standards governing'" antitrust claims of minimum resale price maintenance and "may not yet have been thoroughly digested by all the regional circuit courts of appeal."  *Id.*, at *4.

Judge Brody denied defendants' motion because "the novelty of the governing case law does not present the 'substantial grounds for difference of opinion' required by §1292(b)."  *Id.*

Judge Brody also ruled against the same type of arguments for §1292(b) appeal that Defendants urge here:

> Defendants really appear to argue that I misapplied *Leegin*.  They argue that my findings [regarding plaintiffs' allegations] are not indicative of the sort of harm to competition *Leegin* requires of a Sherman §1 plaintiff (citation omitted).  But again, these are gripes with my application of the *Leegin* harm-to-competition standard, not with the correctness of the standard itself.  Objections like these do not trigger §1292(b) interlocutory review.

*Id*.  Here, Defendants do no more than complain that the Court misapplied *Billing* and *Twombly* to the facts.  "[M]ere disagreement with the district court's ruling is not a substantial ground for difference of opinion within the meaning of §1292(b)."  *P. Schoenfeld Asset Mgmt.*, 161 F. Supp. 2d at 360; *Kapossy*, 942 F. Supp. at 1001.  Accordingly, Defendants' failure to present the Court with anything more than their collective disagreement over its application of *Billing* and *Twombly* is fatally insufficient for §1292(b) review.

> ### A.    Defendants Do Not Present Any Controlling Questions of Law Not Settled By Controlling Authority over which There are Substantial Grounds for Disagreement

Defendants seek to certify for interlocutory appeal two holdings from the Court's Order. Memorandum of Law in Support of Defendants' Motion to Certify Order for Interlocutory Appeal ("Defs. Memo") at 1.  First, the Court held that "the securities laws do not preempt plaintiffs' claims under antitrust laws."  *Id*.  Specifically, Defendants challenge the Court's finding that "the SEC does not substantively regulate the PE firms, it merely requires certain disclosures be filed as part of an LBO transaction."  Order at 6-7; *see* Defs. Memo at 1.  Second, the Court held that "plaintiffs had alleged facts that give rise to a 'plausible' conspiracy among all 13 defendants to prevent competitive bidding in large LBOs."  Defs. Memo at 1.  These two questions do not meet the requirements for certification for interlocutory appeal under §1292(b)

because they do not present any controlling questions of law not settled by controlling authority over which there are substantial grounds for disagreement.

>1.      The Preemption Question Does Not Meet §1292(b) Standards

As this Court recognized, in *Billing*, the Supreme Court set forth the analysis courts must use to determine when the securities laws impliedly pre-empt application of the antitrust laws. Order at 3-4, citing 127 S. Ct. 2383. ("[W]hen a court decides whether securities law precludes antitrust law, it is deciding whether, given context and likely consequences, there is a 'clear repugnancy' between the securities law and the antitrust complaint – or as we shall subsequently describe the matter, whether the two are 'clearly incompatible.'") *Billing,* 127 S. Ct. at 2392. As a predicate to determining whether a "clear repugnancy" exists, the Supreme Court directed lower courts to make a finding as to:

> (1) [T]he existence of regulatory authority under the securities law to supervise the activities in question; (2) evidence that the responsible regulatory entities exercise that authority; (3) a resulting risk that the securities and antitrust laws, if both applicable, would produce conflicting guidance, requirements, duties, privileges, or standards of conduct, and (4) whether the issue involves an area of conduct squarely within the heartland of securities regulations.

*Id*. at 2383.  If any one of these four factors are not met, then the antitrust laws are not pre-empted.  Order at 4, citing *Billing*, 127 S. Ct. at 2389-90.

This Court properly interpreted *Billing* to require it to apply the four-factor test to the facts and make a determination as to whether Plaintiffs' claims are preempted.  Order at 3-8. Defendants do not, and indeed cannot, suggest otherwise.  Rather, Defendants' argument is that this Court misapplied (as opposed to misinterpreted) *Billing* to the facts introduced by the parties concerning regulation of leveraged buy out ("LBO") transactions by the Securities and Exchange Commission ("SEC").  Defendants' quarrel with the Court's application of *Billing* is evident from their briefing.  For example, Defendants argue that, "as defendants set forth in both their

papers and at oral argument, the Supreme Court's four-part test for implied repeal is satisfied here" and that, in their opinion, "this Court's decision is at odds with the Supreme Court's decision in *Billing.*"  Defs. Memo. at 6-7.

Thus, Defendants' proposed §1292(b) appeal on preemption will not address a "question of law," but rather a disagreement over a mixed question of fact and law to which this Court applied on point Supreme Court authority.   In the First Circuit, it is clear that such an issue is clearly outside the scope of an interlocutory appeal under §1292(b).  *See*, *e.g.*, *M.M.R.-Z. ex rel. Ramirez-Senda v. Puerto Rico*, 528 F.3d 9, 14 (1st Cir. 2008) (interlocutory appeal is never a proper avenue to challenge "the court's perception of a ***factual*** dispute") (emphasis in original); *Kapossy*, 942 F. Supp. at 1002 ("§1292(b) was never intended to put before the courts of appeals this type of 'legal' question, in which the exercise of the district court's discretion is necessarily intertwined with its understanding of the facts of the case . . . ."); *Estate of Metzermacher ex rel. Metzermacher v. National R.R. Passenger Corp.*, 487 F.Supp.2d 24, 29 (D. Conn. 2007) ("[a] 'substantial ground for difference of opinion' cannot be grounded merely in a claim that the Court's decision was wrong"); *Johnson v. Watts Regulator Co.*, No. CIV. 92-508, 1994 WL 421112, at *2 (D.N.H. Aug. 11, 1994) ("While the defendants claim there is a substantial ground for difference of opinion concerning a controlling question of law and cite various cases, the real difference of opinion is between the defendants' and the court's application of the law to the particular facts of this case.").

In support of their argument, Defendants simply repeat the same purported "evidence" of regulation that the Court already considered and rejected in deciding the motion to dismiss.  For example, Defendants repeat their prior contention that SEC filings made in connection with the nine LBOs demonstrates SEC regulation.  *Compare* Defs. Memo. at 7 (describing Defendants'

view of SEC filings made in connection with nine LBOs); Memorandum in Support of

Defendants' Motion to Dismiss the Third Amended Complaint ("Defs. MTD Memo") at 8-10

(describing same).   As the Court recalls, Plaintiffs refuted these allegations, arguing that

Defendants did not make SEC filings with respect to every LBO transaction, and this lack of

filings was "evidence" that the SEC did not have regulatory authority over LBOs.[2]

Defendants also try to resuscitate their prior assertion that as registered investment

advisors, certain of them are directly regulated by the SEC, while admitting, as they must, that

many Defendants are not required to register and many are not registered.   *Compare* Class

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 4, 57; Defs.

Memo at 7-8; *see also* Order at 6 ("[T]he Shareholders maintain that the PE Firms carefully

avoided SEC oversight.   For instance, the Shareholders allege that both the PE Firms are exempt

from regulation under the Investment Company Act, and the PE Firms' partners and employees

are exempt from registration under the Investment Advisers Act.   These two acts are prominent

laws under which the SEC regulates the securities market.   Therefore, the first *Billing* factor is

not met.").

As the foregoing indicates, neither the character of the SEC filings made in connection

with LBOs nor the extent of SEC regulation of private equity firms as investment advisors are

disputes about a "question of law" or issues of *Billing* interpretation.   It is hornbook law that a

"'question of law' has the meaning that a lay person would give the term, as referring to a 'pure'

---

[2]       Moreover, as the Court observed in the Order, the overwhelming majority of the
purportedly voluminous SEC filings that were made in connections with the nine LBOs were
made by the target companies Defendants acquired, not by the Defendants named in the
Complaint.   *See* Order at 6 ("The PE Firms assert that the many filings that a Target Company
must make in conjunction with an LBO represents regulation by the SEC.   This argument is
unconvincing."); *see also* Class Plaintiffs' Memorandum of Law in Opposition to Defendants'
Motions to Dismiss at 57-61.

question of law . . . rather than merely to an issue that might be free from factual contest." *Moore's Federal Practice* §203.1[2].  District courts are authorized to grant interlocutory appeals "for abstract legal issues that can be decided quickly and cleanly without having to study the record," not factual disputes based on factual and evidentiary submissions made by the parties. *Id.*

Here, the Court reviewed and ruled on Defendants' motion to dismiss based upon the facts presented by both Plaintiffs and Defendants as to the extent (if any) of oversight and regulation the SEC provides in connection with LBOs.  If such disagreements provided proper foundation for an interlocutory appeal, in the *Billing* context, Defendants' position would support interlocutory appeal of every application of the four-factor test by a district court.  That is not the law.  *See In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1010 n.1 (1st Cir. 1988) ("the instances where section 1292(b) may appropriately be utilized will, realistically, be few and far between").

This Court's opinion in *Booten v. U.S.* is instructive of why Defendants' motion must fail.  *See* 233 F. Supp. 2d 227 (D. Mass. 2002) (Harrington, J.).  In that case, this Court observed that the controlling authority (the Westfall Act) did "not speak clearly to the question," there was "no binding precedent squarely on point" and "considerable authority" under identical circumstances contradicted the result implied by the statutory text.  *Id.* at 228.  Such is certainly not the case here, where a recent Supreme Court case exhaustively surveyed the implied preemption landscape and set forth the framework for applying the doctrine.

The cases cited by Defendants in support of their motion are similarly instructive of why interlocutory appeal is inappropriate in this case.  In *U.S. v. Lahey Clinic Hosp., Inc.*, the First Circuit decided a preemption matter on interlocutory appeal where, unlike this case, there was no

Supreme Court or other controlling authority directly on point to guide the lower court's ruling on a preemption issue.  399 F.3d 1 (1st Cir. 2005).  *Greenwood Trust Co. v. Massachusetts* is also not instructive, as the First Circuit considered a dispositive choice-of-law issue as to whether federal or Massachusetts law was "controlling authority."  971 F.2d 818, 821 (1st Cir. 1992).  In *Natale v. Pfizer, Inc.*, Chief Judge Young of the District of Massachusetts certified his decision for interlocutory review *motu proprio* after thoroughly discussing a wide body of conflicting authority interpreting a particular provision of a recently-enacted and controversial federal statute, the Class Action Fairness Act of 2005.  379 F. Supp. 2d 161, 181 (D. Mass. 2005).  In contrast to this case where the Court applied two controlling U.S. Supreme Court authorities, in *Philip Morris v. Harshbarger*, Judge O'Toole found "difficult and pivotal questions of law not settled by controlling authority" when evaluating a preemption claim grounded in a new statutory enactment that had not been previously considered by any controlling authority (such as the Supreme Court).  Defs. Memo. at 5, citing *Philip Morris, Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass 1997).  Nor is there a "split in the district courts" here as there was in *Muniz v. Sabol*.  *See* Defs. Memo. at 6, citing 517 F.3d 29, 32 (1st Cir. 2008).

Here, post-*Billing* cases indicate no confusion, disagreement or conflict among courts over a "question of law" or the analysis that *Billing* requires lower courts to perform.  In an effort to manufacture a reason for interlocutory review, Defendants claim that the Order contradicts other post-*Billing* preemption cases.  For example, Defendants argue that the Order is "also at odds with the Southern District of New York's interpretation of *Billing* in *In re Short Sale Antitrust Litigation*."  Defs. Memo. at 9, citing 527 F. Supp. 2d 258-61.  Defendants are incorrect.  Judge Marrero applied the same method of analysis in *In re Short Sale* as this Court

did here, *i.e.*, the *Billing* four-part test.  *Id.*  Applying the facts before him, Judge Marrero

determined that *Billing* mandated dismissal because "a clear repugnancy" existed between SEC

regulation and the application of the antitrust laws.  *Id.* at 258-61.

Defendants have never raised the facts of *In re Short Sale* in any of their briefs or oral

arguments because these facts bear no resemblance to this case.[3]  *In re Short Sale* involved a

claim brought by a class of persons who sold public equities "short" in open market transactions

on national stock exchanges.  The plaintiffs alleged that they paid inflated fees to stock brokers,

who are tightly-regulated by the SEC, when they borrow publicly-traded securities for the

purpose of executing the short sale.  *Id.* at 255-56.  In obvious contrast to this case, Congress had

expressly delegated to the SEC "regulatory authority to supervise short sale transactions."  *Id.* at

259.

The factual differences between *In re Short Sale* and this case account for the different

outcome.  Defendants' statement that "[t]his Court's interpretation of *Billing* is [] contrary to the

recent interpretation of the Southern District of New York in *In re Short Sale*" is simply wrong.

Defs. Memo at 2.  This Court's Order raises absolutely no interpretive conflict with *In re Short

Sale*.  Defendants' construction of what constitutes a conflict belies the obvious reality that

different facts give rise to different outcomes when the same test is applied.  That such is the

case does not come close to presenting a "pivotal question of law not settled by controlling

authority" that justifies interlocutory review.  *McGillicuddy*, 746 F.2d 76 at 76 n.1.

Defendants also rehash the Second Circuit's opinion in *Finnegan v. Campeau Corp.*,

which was thoroughly briefed by the parties and the subject of much discussion at oral argument.

---

[3]     If *Short Sale* was sufficiently on point for a different outcome to create a conflict as to a
difficult and pivotal question of law not settled by controlling authority, one might expect that
Defendants would have referred to the case prominently in their omnibus motion to dismiss.
Instead, *Short Sale* appears only in a footnote.  Defs. MTD Memo at 6 n.2.

*See* Defs. Memo. at 9, citing 915 F.2d 824 (2d. Cir. 1990).  As Plaintiffs described previously, *Finnegan* is not akin to this case because, *inter alia*, plaintiffs there attacked joint bidding *qua* joint bidding rather than an agreement to divide the market for LBO transactions, as alleged here. Further, the parties to the transaction in *Finnegan* were two "strategic bidders" rather than repeat players in LBO transactions as the Defendant Private Equity Firms are here.  *See* 915 F.2d at 825-30.  Moreover, the *Finnegan* court expressly stated that "the Williams Act . . . does not foreclose all antitrust claims" and that its holding was applicable "in the circumstances of the case at bar."  *Id*. at 828.

*Finnegan* is a also a pre-*Billing* case, and the Supreme Court could have adopted the approach taken by the Second Circuit in *Finnegan* had it chosen to do so.  But the Supreme Court did not even consider *Finnegan*, despite the fact that *Finnegan* is a Second Circuit case and *Billing* was on appeal to the Supreme Court from the Second Circuit.  As this Court recognized, in the only post-*Billing* case to directly consider *Finnegan*, the Western District of Washington wondered aloud whether *Finnegan* remained good law after *Billing*, but found it unnecessary to reach the issue.  *See* Order at 7 n.4 citing *Pennsylvania Ave. Funds v. Borey*, 569 F. Supp. 2d 1126, 1130 (W.D. Wash. 2008).

Finally, the preemption question Defendants present for certification for interlocutory appeal is not "controlling."  "A question of law is 'controlling' if reversal of the district court's order would terminate the action."  *Philip Morris*, 957 F. Supp. at 330.  Here, Defendants question the Court's ruling that the SEC does not actively exercise regulatory authority over LBOs.  Defs. Memo. at 7-9.  Even if the First Circuit were to find that the Court had improperly ruled that the SEC does not actively exercise regulatory authority over LBOs, such a finding would not be dispositive and the legal issue is therefore not "controlling" as required for an

interlocutory appeal.  Indeed, the Court ruled that "[a]ll four factors of *Billing* are not satisfied applying the facts at hand" (Order at 6), and Defendants have yet to offer anything other than their own theories as to why preemption should apply in this case.  Under such circumstances, an interlocutory appeal is inappropriate.  *See Morris v. Flaig*, 511 F. Supp. 2d 282, 318 (E.D.N.Y. 2007) (denying §1292(b) appeal because movants "fail to present a single case that contradicts the Court's holdings as to each of the four legal questions presented").

> 2. <u>The Sufficiency of the Pleadings Question Does Not Meet §1292(b) Standards</u>

Defendants are reluctant to part with their view that "the challenged conduct is just as consistent with lawful independent action as with an unlawful conspiracy" and disagree with the Court's application of the law to the facts.  Defs. Memo at 12.  Defendants recite their motion to dismiss argumentation in summary form, but simply labeling Plaintiffs' allegations as "conclusory" and repeating their view that the challenged conduct is "consistent with lawful independent action" does not create a substantial disagreement over a controlling question of law.

The question on which Defendants seek certification is "whether an antitrust claim may proceed past the pleadings stages where the challenged conduct 'could just as well be independent action' as an unlawful conspiracy."  Defs. Memo at 11.  This question has been answered by a controlling authority.  In *Twombly*, the Supreme Court said no:  "when allegations . . . are set out in order to make a §1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."  *Twombly*, 127 S. Ct. at 1966.  There are no grounds for disagreement on this question of law; *Twombly* is controlling and explicit.

Defendants also question whether the Court considered the business justification arguments offered by their lawyers.  Defs. Memo at 12.  Defendants couch their argument in terms of a question of law, but again, Defendants just disagree with the Court's analysis.

In this Court's *Twombly* analysis, it observed that "[t]he heart of the complaint [in *Twombly*] rested on parallel conduct by each defendant and included no allegation of any illegal agreement tying the defendants' individual parallel conduct together."  Order at 10.  The Supreme Court came to this conclusion after considering the "suggestions raised by [the] conduct [alleged] when viewed in light of common economic experience."  *Twombly*, 127 S. Ct. at 1971.  The Court's observations of common economic experience included, for example: "resisting competition is routine market conduct;" and the ILECs had a tradition of monopoly, making noncompetition natural to them.  *Id*. at 1971-72.

Thus, the Supreme Court directed judges to use common economic experience in evaluating the sufficiency of §1 allegations.  *Twombly*, 127 S. Ct. at 1971.  Contrary to this express instruction, Defendants assume the Court did not view the conduct as plead through common economic experience.  Defs. Memo at 12.  Nothing in the Court's Order indicates that it disregarded Defendants' arguments as to the legality of their conduct.  Rather, the Court indulged the parties in 190 pages of briefing and well over 2 hours of oral argument on these matters.  The Court viewed the conduct alleged within its common economic experience and concluded that the allegations in this case differed from the mere parallel conduct alleged in *Twombly*.

This Court observed that "[t]he heart of the complaint [in *Twombly*] rested on parallel conduct by each defendant and included no allegation of an illegal agreement tying the defendants' individual parallel conduct together."  Order at 10.  After considering Plaintiffs'

allegations, the briefs, and hearing oral argument, this Court found that "[t]his case is different;" "[i]n contrast with *Twombly*, the circumstances here 'plausibly suggest' that an illegal agreement existed in violation of §1." *Id.*   The Complaint makes specific allegations that "tie[] the PE Firms together in a way that the *Twombly* defendants were not." *Id.*   Namely, those ties were the overlap of PE firms in multiple transactions "coupled with the Shareholders' allegations that the PE Firms conspired to prevent open, competitive bidding for the Target Companies." *Id.*   Therefore, the Complaint crossed the threshold from "could just as well be independent action" to "plausibly suggesting . . . agreement." *Twombly*, 127 S. Ct. at 1966.

Again, Defendants' argument reduces to a disagreement on the application of settled authority to facts.  If disagreements over application of law to facts were properly the basis for a §1292(b) appeal, every *Twombly* decision issued by a district court would properly be appealed on an interlocutory basis.[4]  In *In re Novergence, Inc.*, a district court confronted a motion for §1292(b) appeal arising from a bankruptcy court opinion applying *Twombly*.  *In re Novergence, Inc.*, No. 08-1882, 2008 WL 5136842 (D.N.J. Dec. 5, 2008).  There, as here, the district court saw "no genuine doubt as to the correct legal standard" and found that moving defendant "merely disagrees with the conclusions reached by the Bankruptcy Court in applying those legal standards, which is insufficient to establish grounds for a difference of opinion" under §1292(b). *Id.*, at *3.

Finally, the question Defendants present on the sufficiency of the pleadings is not controlling because reversal would not terminate the action.  *Philip Morris*, 957 F. Supp. at 330.

---

[4]   Defying temporal possibility, Defendants cite cases from 1997 and 2000, before the Supreme Court decided *Twombly* in 2007, for the proposition that "[t]he standard that a district court must apply on a motion to dismiss under *Twombly* is a pure legal question, and 'resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." Defs. Memo at 12 (citing *LNC Invs., Inc. v. First Fid. Bank*, No. 92 CIV. 7584 (CSH), 2000 WL 461612, at *3 (S.D.N.Y. April 18, 2000) and *Philip Morris*, 957 F. Supp. 327.

Even if the First Circuit were to disagree with the Court's conclusion that the Complaint plausibly suggests an illegal agreement and requires Plaintiffs to replead, leave to amend would be proper because this would be the first opportunity for Plaintiffs to amend in response to challenges directed to their claims.  Therefore, reversal would not terminate the action.

> **B.**     **The Lack of First Circuit Authority Applying *Billing* and *Twombly* Does Not Justify a §1292(b) Appeal**

Given its lengthy, detailed opinion on pleading standards in antitrust cases in *Twombly*, the Supreme Court would no doubt be surprised to learn that interlocutory appeals were justified because "there is no First Circuit authority interpreting *Twombly* in an antitrust case."  Defs. Memo. at 15.   Such would also be the case with regard to Defendants' argument that interlocutory appeal is justified because "the First Circuit has not yet ruled on the standard that courts should apply to analyze questions of implied repeal after *Billing*," given that the Supreme Court examined its prior precedent on implied repeal of the antitrust laws in *Billing* and issued a comprehensive opinion leaving no doubt as to the proper test to be applied.  Defs. Memo. at 10. As noted above, the defendants in *Babyage.com* made this precise argument, and the court dismissed it out of hand.  *See Babyage.com*, *supra*, at *4 ("the novelty of governing case law does not present 'substantial grounds for difference of opinion' required by §1292(b)").

> **C.**     **Interlocutory Review Will Delay Rather Than Advance the Litigation**

The third factor §1292(b) factor requires "that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. §1292(b).  "[T]he only harm [a defendant] stands to suffer from the unavailability of interlocutory review is an inchoate harm stemming from an erroneous but non-final ruling" denying his motion to dismiss is "always a risk in litigation – and not the sort of harm that warrants special solicitude."  *Espinal-Dominguez*, 352 F.3d at 498.  Where "reversal on the question [presented] would not terminate

the suit," "immediate appeal . . . would not materially advance the ultimate termination of the

suit, but would more likely prolong the course of litigation, threaten duplicative burdening of the

appellate court . . ., increase the costs to the parties, and endanger preservation of existing

evidence through additional delay."  *U.S. ex rel. LaValley v. First Nat'l Bank of Boston*, CIV. A.

No. 86-236-WF, 1990 WL 112285, at *4 (D. Mass. July 30, 1990).

### 1.   The Pleadings Are Not Yet Settled

In its Order denying Defendants' motion to dismiss, the Court explicitly explained that:

> [T]he first stage of discovery shall be directed solely and exclusively to the nine (9) specified transactions alleged in the complaint, which transactions the Shareholders claim constitute indicia of the Overarching Conspiracy.

> At the conclusion of the first stage of discovery, the court shall determine whether further discovery as to additional transactions is warranted.  This determination shall be based on whether or not the first stage of discovery raises sufficient evidence of collusion on the part of the PE Firms.

> If a second stage of discovery is warranted, the Shareholders shall move to amend the complaint in order to add additional transactions and defendants.

Order at 11-12.[5]  Until the pleadings are settled, there can be no "ultimate termination of the

litigation."  28 U.S.C. §1292(b).  Even where "conclusions of law . . . would be 'controlling

questions of law' proper for interlocutory appeal where they address novel issues upon which

there is substantial ground for a difference of opinion," "'a legal question cannot be termed

"controlling" if litigation would be conducted in much the same manner regardless of the

disposition of the question on appeal.'"  *First Nat'l Bank*, 1990 U.S. Dist. LEXIS 9913, at *10.

---

[5]    The Court's measured grant of discovery and exercise of control over the process also mollifies any concern expressed by defendants as to "long-drawn-out [sic] … antitrust … cases" being "prime examples of cases 'where an intermediate appeal may avoid protracted and expensive litigation."  Defs. Memo at 4 (citing *Milbert v. Bison Labs., Inc.*, 260 F.2d 431 (3rd Cir. 1958).

2.     Dismissal Would Not Preclude Discovery and Trial on Plaintiffs' Separate
       Unjust Enrichment Count

The Complaint contains an Unjust Enrichment claim that Defendants unsuccessfully moved to dismiss.  *See* Complaint, ¶¶ 212-218.  The Court "abstain[ed] from ruling on the motion to dismiss the unjust enrichment claim."  Order at 5 n.11  As such, dismissal of the single Sherman Act count will not finally resolve the Unjust Enrichment Count.

In *Cummins v. EG & G Sealol, Inc.*, 697 F. Supp. 64, 71 (D.R.I. 1988), the district court held that "interlocutory certification would…be inappropriate [where a] case involves multiple counts only one of which could possibly be resolved by an immediate appeal."  The *Cummins* court adopted the following analysis to guide courts through the so-called "multiple count issue":

> Where the order complained of is failure to dismiss a claim, an interlocutory appeal is appropriate only where inclusion of that claim significantly increases the complexity and duration of trial or pretrial proceedings.  Such an increase is most likely where the claim in question has no issues in common with the other claims.

*Cummins*, 697 F. Supp. at 72; *see also Hypertherm, Inc. v. Am. Torch Tip Co.*, No. 05-CV-373-JD, 2008 WL 1767062, (D.N.H. April 15, 2008) (denying §1292(b) certification because "only one of [defendants'] multiple counterclaims" was subject to dismissal if interlocutory review as successful, holding "[t]herefore, an interlocutory appeal of summary judgment on the [challenged] claim would not 'materially advance the ultimate termination of the litigation in this case'" citing §1292(b).); *Principal Mut. Life Ins. Co. v. Cincinnati TV 64 Ltd. Partnership*, 845 F.2d 674, 676 (7th Cir. 1988) (district court order granting judgment on one count but dismissing other counts without prejudice and expressly providing plaintiff right to reinstate other counts was not final appealable order because it did not "terminate the litigation").

Where, as here, there are multiple counts, not all of which are subject to dismissal, much less dismissal with prejudice, the cost-benefit justification of abrogating the final judgment rule

and permitting piecemeal review to avoid the seemingly unnecessary cost of a "trial that never should have been" is negated and certification for immediate appeal is improper. "[C]ertification of an interlocutory order affecting only a portion of [plaintiff's] claim is inappropriate" where plaintiffs' "two counts have issues in common with one another" such that "it is very likely that evidence will be submitted at trial" as to one count will also support the other count. *Cummins*, at 73. Even where "some additional discovery regarding the [other count] may be necessary," certification is inappropriate if "it will not be so substantial as to justify an interlocutory appeal." *Id.* This is especially true because "it would be more expedient to incur several extra days of trial regarding the [challenged count] than to have immediate appellate review." *Id.* In short, "certification of an order affecting only one count of [a] two count complaint is improper as it would not "advance the ultimate termination of the litigation" as §1292(b) demands. *Id.*

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion should be denied.

DATED:  January 20, 2009                    Respectfully submitted,

                                            SCOTT + SCOTT LLP


                                            _____/s/ Kristen M. Anderson_____
                                            Kristen M. Anderson (Admitted *pro hac vice*)
                                            Christopher M. Burke (Admitted *pro hac vice*)
                                            Arthur L. Shingler III (Admitted *pro hac vice*)
                                            Hal Cunningham (Admitted *pro hac vice*)
                                            600 B Street, Suite 1500
                                            San Diego, CA 92101
                                            (619) 233-4565

                                            David R. Scott (Admitted *pro hac vice*)
                                            SCOTT + SCOTT LLP
                                            108 Norwich Avenue
                                            Colchester, CT 06415
                                            (860) 537-3818

Meghan E. Walt (BBO #658971)
ROBINS, KAPLAN, MILLER & CIRESI LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
(617) 267-2300

K. Craig Wildfang (Admitted *pro hac vice*)
Thomas B. Hatch (Admitted *pro hac vice*)
Stacey P. Slaughter (Admitted *pro hac vice*)
ROBINS, KAPLAN, MILLER & CIRESI LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

Patrick J. Coughlin (Of Counsel)
David W. Mitchell (Admitted *pro hac vice*)
Susan G. Taylor (Admitted *pro hac vice*)
Mary K. Blasy (Admitted *pro hac* vice)
COUGHLIN STOIA GELLER RUDMAN &
ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058

Tyler W. Hudson (Of Counsel)
WAGSTAFF & CARTMELL LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1177

Jack Landskroner (Admitted *pro hac vice*)
Paul Grieco (Admitted *pro hac vice*)
LANDSKRONER • GRIECO • MADDEN, LTD.
1360 West 9th Street, Suite 200
Cleveland, OH 44113
(216) 522-9000

Brian Robbins (Admitted *pro hac vice*)
George Aguilar (Admitted *pro hac vice*)
ROBBINS UMEDA & FINK, LLP
610 West Ash Street, Suite 1800
San Diego, CA 92101
(619) 525-3990

Richard Lockridge (Admitted *pro hac vice*)
Charles N. Nauen (Admitted *pro hac vice*)
Karen Riebel (Admitted *pro hac vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Suite 2200
100 Washington Avenue South
Minneapolis, MN  55401
(612) 339-6900

Dennis Stewart (Of Counsel)
HULETT HARPER STEWART, LLP
550 West C Street, Suite 1600
San Diego, CA  92101
(619) 338-1133

J. Gerard Stranch, IV (Admitted *pro hac vice*)
BRANSTETTER, STRANCH & JENNINGS,
PLLC
227 Second Avenue, North – 4th Floor
Nashville, TN  37201-1631
(615) 254-8801

Brian Murray (Of Counsel)
MURRAY, FRANK & SAILER LLP
275 Madison Avenue, 8th floor
New York, NY 10016
(212) 682-1818

Mark Reinhardt (Of Counsel)
REINHARDT WENDORF & BLANCHFIELD
P.O. Box 460
2201 Atlantic Avenue
Sullivan's Island, SC 29482
(651) 287-2100

Nadeem Faruqi (Of Counsel)
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, NY 10017
(212) 983-9330

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 20, 2009, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

<u>    s/ Kristen M. Anderson                    </u>
Kristen M. Anderson
SCOTT + SCOTT LLP
600 B Street, Suite 1500
San Diego, CA 92101
(619) 233-4565
kanderson@scott-scott.com