UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KIRK DAHL, et al.,                                    :

        Plaintiffs,                           :

          v.                                    :     Civil Action
                                                    No. 07-12388-EFH

BAIN CAPITAL PARTNERS, LLC, et al.,    :

        Defendants.                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## JP MORGAN CHASE & CO.'S OPPOSITION TO
## PLAINTIFFS' MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED

Dated:    April 8, 2010                          James R. Carroll
          Boston, Massachusetts                Kurt Wm. Hemr
                                             SKADDEN, ARPS, SLATE,
                                               MEAGHER & FLOM LLP
                                           One Beacon Street
                                         Boston, Massachusetts  02108
                                         (617) 573-4800

                                         Of Counsel:

                                         Peter E. Greene
                                         SKADDEN, ARPS, SLATE,
                                                 MEAGHER & FLOM LLP
                                         Four Times Square
                                         New York, New York  10036
                                         (212) 735-3000

                                         Counsel for Defendant
                                         JP Morgan Chase & Co.

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

CORRECTIVE COUNTERSTATEMENT OF BACKGROUND ................................................ 2

ARGUMENT .................................................................................................................. 6

I.      PLAINTIFFS HAVE FAILED TO IDENTIFY ANY REASON WHY ANY
DOCUMENT THEY CHALLENGE IS LIKELY RELEVANT HERE;
FOR THAT REASON ALONE, PLAINTIFFS' MOTION SHOULD BE DENIED .......... 6

II.     PLAINTIFFS' SPECIFIC CHALLENGES TO JP MORGAN'S ASSERTIONS OF
PRIVILEGE LACK MERIT ............................................................................... 7

      A.     There Has Been No Waiver Of Privilege By Reason Of Any
          Non-Confidential Disclosure To A Third Party ...................................... 7

      B.     The Documents Plaintiffs Identify Were Not Improperly Withheld Based
          On The Common Interest Doctrine ..................................................... 15

      C.     Plaintiffs' Concern Regarding A Document Sent To A Distribution List
          Was Resolved *Before* Plaintiffs Filed Their Motion, And Is Moot ...................... 17

III.    IF THE COURT IS INCLINED TO GRANT PLAINTIFFS ANY RELIEF, THE
COURT SHOULD NOT USE PLAINTIFFS' PROPOSED FORM OF ORDER ............. 18

CONCLUSION .............................................................................................................. 20

## TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(S)**

Calvin Klein Trademark Trust v. Wachner,
  124 F. Supp. 2d 207 (S.D.N.Y. 2000) ....................................................................8, 11, 12

Export-Import Bank v. Asia Pulp & Paper Co.,
  232 F.R.D. 103 (S.D.N.Y. 2005) ........................................................................................9

In Re JP Morgan Chase & Co. Sec. Litig.,
  MDL No. 1783, 2007 WL 2363311 (N.D. Ill. Aug. 13, 2007) .........................9, 10, 11, 12

Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.,
  253 F.R.D. 300 (D.N.J. 2008) ....................................................................................11, 12

Santelli v. Electro-Motive,
  188 F.R.D. 306 (N.D. Ill. 1999) ........................................................................................7

Stafford Trading, Inc. v. Lovely,
  No. 05-C-4868, 2007 WL 611252 (N.D. Ill. Feb. 22, 2007) ........................8, 9, 10, 11, 12

U.S. v. Arthur Young & Co.,
  465 U.S. 805 (1984).........................................................................................................9

Winchester Capital Mgmt. Co., Inc. v. Manufacturers Hanover Trust Co.,
  144 F.R.D. 170 (D. Mass. 1992) ..................................................................................10, 11

## RULES AND RELATED AUTHORITY

Fed. R. Civ. P. 26(b)(5)(A)..................................................................................................18, 19

Fed. R. Civ. P. 26,
  Advisory Committee Note on 2006 Amendment........................................................18, 19

D. Mass. Local R. 34.1(E) ...............................................................................................19

## PRELIMINARY STATEMENT

As the Court knows, plaintiffs in this matter allege a massive conspiracy among private equity firms to engage in price fixing in a number of independent and unrelated leveraged buyout transactions ("LBOs") over a period of multiple years.  JP Morgan Chase & Co. ("JP Morgan") is not a private equity firm,[1] and for many, many reasons -- which will be addressed in a forthcoming summary judgment motion -- does not belong in this case.  Yet, plaintiffs' discovery from JP Morgan has been extensive (and expensive).  JP Morgan has produced to plaintiffs more than 275,000 pages of documents concerning the nine LBOs addressed by plaintiffs' complaint.  JP Morgan has also identified on a log documents responsive to plaintiffs' document requests that it withheld from production on grounds of privilege.  JP Morgan's privilege log was first provided to plaintiffs on October 12, 2009, shortly after JP Morgan's document production was substantially completed.[2]

The number of documents that JP Morgan withheld from its production as privileged was reasonable, both in light of the overall size of JP Morgan's production, and in light of the inevitable need for legal advice in connection with the large financial transactions at issue in this case.  Pursuant to the Court's direction,[3] JP Morgan provided its privilege log to plaintiffs in electronic format to facilitate their review of its assertions of privilege.

---

[1]  The Court dismissed JP Morgan Partners, LLC from this action on February 12, 2009, on the basis of releases granted in connection with the settlement of prior shareholder litigations. (Docket No. 201.)

[2]  Since that date, JP Morgan has amended its privilege log from time to time, including by withdrawing assertions of privilege to certain documents, clarifying the basis for its assertions of privilege with respect to particular documents, and adding a small number of additional entries.  However, with one exception (identified below), the privilege log entries that plaintiffs dispute in this Motion were all set forth in JP Morgan's October 12, 2009 log.

[3]  Order, June 22, 2009, at 5 (Docket No. 245).

Now, just before the close of discovery,[4] plaintiffs have moved to compel production of hundreds of documents that JP Morgan has withheld as privileged (the "Motion," Docket No. 280).  The Court should deny plaintiffs' Motion in its entirety.  As set forth below, plaintiffs have not suggested any reason why those documents are relevant to any fact in dispute in this case.  JP Morgan's assertions of privilege with respect to the particular privilege log entries disputed by plaintiffs are supported by case law, including precedent from this District, and by the specific facts and circumstances relating to those privileged documents.

In addition, in a number of instances set forth below, the grounds for plaintiffs' challenges to particular entries on JP Morgan's privilege log were addressed by JP Morgan prior to plaintiffs' filing of their Motion.  To the extent plaintiffs' Motion is directed to those already-resolved matters, their Motion should be denied as moot.

## CORRECTIVE COUNTERSTATEMENT OF BACKGROUND

Plaintiffs' recitation of the "Background" to their Motion (Pltfs.' Mem.[5] 2-4) suggests that plaintiffs' discussions with JP Morgan regarding privilege matters have comprised "nearly five months of negotiations" -- from November 24, 2009 up to the filing of their Motion -- and that the Court must act to avoid "further delay."  (Pltfs.' Mem. 4.)  Not so.

In fact, plaintiffs did not specifically identify the entries on JP Morgan's privilege log that they disputed until January 25, 2010, more than three months after receiving JP Morgan's

---

[4]  Fact discovery concluded as to JP Morgan on April 1, 2010.  See Stipulation, July 13, 2009, ¶ 4, at 2 (Docket No. 248) ("The first stage of discovery shall conclude on April 1, 2010.").  JP Morgan has agreed to make certain personnel whose depositions were noticed by plaintiffs prior to that date available for deposition after April 1, 2010.  Plaintiffs and the defendants other than JP Morgan have agreed among themselves to extend discovery by two months, i.e., to June 1, 2010.  See Stipulation, March 30, 2010 (Docket No. 283).

[5]  References to "Pltfs.' Mem." or to the "Memorandum" refer to Plaintiffs' Memorandum In Support Of Plaintiffs' Motion To Compel (Docket No. 281).

October 12, 2009 privilege log.  When plaintiffs finally did identify the particular privilege log

entries that they disputed, JP Morgan and its counsel responded promptly by reviewing the

disputed entries, and either clarifying the basis for its assertions of privilege or withdrawing or

limiting its assertions of privilege to avoid unnecessary motion practice.  Plaintiffs filed their

Motion while that process of consultation and review was still ongoing.

        Plaintiffs' on-again, off-again discussions with JP Morgan regarding privilege

occurred in three phases:

        1.      On **November 24, 2009**, Plaintiffs' counsel sent JP Morgan's counsel a

letter asserting a series of generically-stated challenges to JP Morgan's privilege log.  (Furnald

Decl. Ex. 1.[6])  In follow-up telephone calls and correspondence,[7] JP Morgan asked plaintiffs to

identify which entries on JP Morgan's privilege log they disputed, and to say why they thought

that those withheld documents might be relevant to any issue in dispute in this litigation:

> JP Morgan Chase has produced more than a quarter million pages of documents,
> and has identified approximately 3,000 documents on its privilege log.  Under
> these circumstances, it is not productive to discuss attorney-client privilege issues
> in sweeping generalities.  Privilege determinations are frequently complex and
> almost always fact-dependent, and many of the documents on JP Morgan Chase's
> privilege log are routine mark-ups of contract documents that are of no apparent
> significance to any factual dispute in this litigation.  Accordingly, if there are
> particular documents on JP Morgan Chase's privilege log that you believe may be
> relevant, please identify them so that we may discuss those particular documents
> in their specific factual context.

(Furnald Decl. Ex. 7, at 1 (Jan. 13, 2010 JP Morgan letter to plaintiffs).)

---

[6]    References to "Furnald Decl." refer to the Declaration Of Lisa A. Furnald In Support Of
Plaintiffs' Motion To Compel (Docket No. 282).

[7]    Those communications included JP Morgan's December 10, 1009 letter to plaintiffs (not
submitted); a December 17, 2009 call; plaintiffs' December 21, 2009 letter regarding that call
(Furnald Decl. Ex. 5); plaintiffs' December 31, 2009 letter to plaintiffs (Furnald Decl. Ex. 6);
and JP Morgan's January 4, 2010 electronic mail message to plaintiffs' counsel (not
submitted).

2.      On **January 25, 2010**, plaintiffs identified for the first time almost 400 entries on JP Morgan's October 12, 2009 privilege log that plaintiffs disputed.  By that same letter, plaintiffs informed JP Morgan of their intent to file a motion to compel relating to those 400 entries, and requested a final conference prior to filing their Motion.  (Furnald Decl. Ex. 9.)

JP Morgan responded promptly to that letter.  Just three days later, on January 28, 2010, JP Morgan sent plaintiffs a detailed letter addressing each of the privilege log entries that plaintiffs had disputed.  (Furnald Decl. Ex. 10.)  On that same date, JP Morgan conferred with plaintiffs regarding those matters.  JP Morgan supplemented its January 28, 2010 letter in subsequent correspondence,[8] but it did not hear anything at all from the plaintiffs on this subject for almost <u>two</u> <u>months</u>.

3.      On Thursday, **March 18, 2010**, plaintiffs informed JP Morgan that they intended immediately to file a motion to compel relating to privilege.  In light of the passage of time since the last communication from plaintiffs on this issue (<u>i.e.</u>, since January 28, 2010), JP Morgan requested that plaintiffs meet and confer with JP Morgan to explain what if any issues had not been resolved by the parties' prior correspondence.  (<u>See</u> March 18, 2010 JP Morgan letter to plaintiffs (Furnald Decl. Ex. 15).)  A call was scheduled for Monday, March 22, 2010.

On Friday, March 19, 2010, in advance of that call, plaintiffs provided JP Morgan with a list of the privilege log entries that it considered to be in dispute -- but the list had grown!  (<u>See</u> Exhibit 1 hereto.)  Some of the entries identified in that list had been identified as disputed in plaintiffs' January 25, 2010 letter, but <u>520</u> of those entries had <u>never</u> previously been identified

---

[8]   That subsequent correspondence included JP Morgan's February 4, 2010 letter to plaintiffs (not submitted); JP Morgan's February 17, 2010 letter to plaintiffs (Furnald Decl. Ex. 13); and JP Morgan's March 10, 2010 letter to plaintiffs (not submitted).

by plaintiffs as entries as to which there was any dispute.  (See Exhibits 2 and 3 hereto (March 19, 2010 JP Morgan letter to plaintiffs and plaintiffs' March 22, 2010 response).)

During the Monday, March 22, 2010 call, JP Morgan informed plaintiffs that it would respond promptly to plaintiffs' concerns regarding the newly disputed entries, and could do so by March 31, 2010.  In response, plaintiffs did not say whether they would defer filing a motion to give JP Morgan the time that it had requested to review those newly disputed entries.

On Wednesday, March 24, 2010 and Thursday, March 25, 2010, JP Morgan sent letters to plaintiffs updating them on JP Morgan's review of the 520 privilege log entries first identified as disputed in plaintiffs' March 19, 2010 list.  (See Furnald Decl. Ex. 16 (March 24, 2010 letter); Exhibit 4 hereto (March 25, 2010 letter).)  With respect to a number of those entries, JP Morgan agreed to withdraw or narrow its assertion of privilege to avoid unnecessary motion practice.

Notwithstanding those ongoing efforts on JP Morgan's part, plaintiffs commenced filing their Motion papers on Thursday, March 25, 2010 -- just 41 minutes after receiving JP Morgan's most recent letter updating plaintiffs on its efforts to address their purported concerns.[9] JP Morgan infers that plaintiffs have filed this Motion in an attempt to find some basis for extending the "fishing expedition" that has characterized discovery in this case.

---

[9]  JP Morgan continued its review notwithstanding the filing of plaintiffs' Motion.  On Wednesday, March 31, 2010, as it had promised, JP Morgan sent a third, final letter to plaintiffs stating its position as to each of the privilege log entries identified for the first time as disputed in plaintiffs' March 19, 2010 list.  (See Exhibit 5 hereto.)

Plaintiffs responded to that letter on April 8, 2010, the date of the filing of this Opposition.  (See Exhibit 6 hereto.)  In that letter, Plaintiffs acknowledged that JP Morgan had addressed many of their concerns, but also purported to dispute yet additional entries on JP Morgan's October 12, 2009 privilege log that they had never previously identified as disputed.  See id. at 4 (discussion of "Group XVII," referring to "[a]dditional entries on JP Morgan's logs").

## <u>ARGUMENT</u>

I.     **PLAINTIFFS HAVE FAILED TO IDENTIFY ANY REASON WHY
       ANY DOCUMENT THEY CHALLENGE IS LIKELY RELEVANT HERE;
       <u>FOR THAT REASON ALONE, PLAINTIFFS' MOTION SHOULD BE DENIED</u>**

The LBO transactions effected by private equity firms that are the subject of this case required the drafting of numerous contracts, U.S. Securities & Exchange Commission filings, proxy materials, and other documents, all of which required the provision of legal advice by counsel.  Even if the numerous privileged documents generated in the course of that necessary legal work might have been responsive to plaintiffs' onerous and overbroad document requests, there is no reason to believe that any of those documents are relevant to any "overarching conspiracy" alleged by plaintiffs.   Indeed, JP Morgan is prepared to submit for the Court's <u>in camera</u> review all of the documents associated with the particular privilege log entries disputed by plaintiffs' Motion.[10]

JP Morgan has repeatedly asked plaintiffs to explain <u>why</u> they believe that any of the documents as to which they have challenged assertions of privilege are relevant to this case:

> [Y]our letter of January 25, 2010 does not explain why you believe that any of the documents identified therein might be important to this litigation.  We have reviewed those documents in the course of preparing this letter, and they do not appear to be significant to any factual issue in dispute in this litigation.  We do not believe the Court should be burdened by discovery motion practice over whether irrelevant documents are privileged.  However, JP Morgan cannot preempt motion practice by producing irrelevant documents:  that could give rise to a suggestion, however unfounded, of subject matter waiver, whether in this litigation or some future litigation involving the same transaction.  Therefore, I urge plaintiffs to consider carefully whether any challenge that might be made to JP Morgan's assertion of privilege with respect to a document actually merits burdening the Court with such motion practice.

---

[10]  JP Morgan informed plaintiffs during its March 22, 2010 telephone call with plaintiffs that it would be prepared to submit the challenged documents for the Court's <u>in camera</u> inspection.

(Furnald Decl. Ex. 10, at 2; <u>see also</u> Furnald Decl. Exs. 13, 16; Exs. 4, 5 hereto.)  Plaintiffs

declined to provide any explanation in response to these requests.  Their Motion papers also omit

to suggest any reason why the documents they seek might be relevant to this case.

In the absence of <u>any</u> explanation by plaintiffs as to why the documents they seek

might be relevant -- and none is found in plaintiffs' opening Memorandum -- this Court need not

and should not expend its resources on the time-consuming and ultimately entirely academic

exercise of determining the precise scope of the attorney-client privilege in the context of these

large-scale, multi-party transactions.  The Court can and should deny plaintiffs' Motion on that

basis alone.  <u>E.g.</u>, <u>Santelli v. Electro-Motive</u>, 188 F.R.D. 306, 310 (N.D. Ill. 1999) (declining to

resolve whether medical records that were irrelevant to issues in dispute were covered by a

privilege, and denying motion to compel as to those records).

## II.    PLAINTIFFS' SPECIFIC CHALLENGES TO JP MORGAN'S ASSERTIONS OF PRIVILEGE LACK MERIT

### A.    There Has Been No Waiver Of Privilege By Reason Of Any Non-Confidential Disclosure To A Third Party

Among the documents withheld by JP Morgan as privileged -- and challenged

here by plaintiffs (<u>see</u> Pltfs.' Mem. 5-11) -- are certain documents relating to transactions in

which JP Morgan's bankers served as financial advisors on a confidential basis to a company that

was the subject of an LBO transaction by private equity firms, and in that capacity were privy to

certain attorney-client privileged communications between the company and its counsel.

Numerous courts evaluating claims of privilege under similar factual circumstances have held

that when communications between a company and its counsel are disclosed to a company's

financial advisor on a confidential basis, that disclosure does <u>not</u> constitute a waiver of the

company's attorney-client privilege.

For example, in <u>Calvin Klein Trademark Trust v. Wachner</u>, 124 F. Supp. 2d 207 (S.D.N.Y. 2000), the management of the Calvin Klein design firm had explored selling that company with the help of a law firm ("Wachtell") and an investment bank ("Lazard") acting as a financial advisor.  In a subsequent dispute, an adverse party sought to compel production of communications between Calvin Klein and Wachtell that had been disclosed to Lazard, including by compelling Lazard to produce those communications.  Judge Rakoff of the Southern District held that the disclosure of communications to Lazard in the context of a potential sale of the company did not destroy the privilege, because the bank's investment expertise was important to the rendering of legal advice, even where a seasoned law firm like Wachtell rendered that advice:

> With respect to the documents, it is evident on inspection that the vast majority of the documents listed on the Lazard and Wachtell privilege logs involve, in one way or another, joint discussions among CKI, Lazard, and Wachtell as to what CKI was legally required to disclose to prospective purchasers at various stages of negotiations. While Warnaco argues that Lazard's inclusion in the discussions waived the attorney-client privilege that would otherwise apply to the documents that reflect those discussions, it is clear to the Court that Lazard's roles in participating in those discussions and helping draft these documents, to the extent such roles were more than ministerial, involved rendering expert advice as to what a reasonable business person would consider "material" in this context. "Materiality" in this regard is a mixed question of fact and law, which a responsible law firm in Wachtell's place would not be able to adequately resolve without the benefit of an investment banker's expert assessment of which facts were "material" from a business person's perspective.  …  Thus, the assertion of attorney-client privilege must be sustained as to these documents.

<u>Id.</u> at 209.

Similarly, in <u>Stafford Trading, Inc. v. Lovely</u>, No. 05-C-4868, 2007 WL 611252 (N.D. Ill. Feb. 22, 2007), an options trading business ("Stafford") explored putting itself up for sale with the help of a law firm (Kirkland & Ellis) and an investment bank (Goldman Sachs, or "GS") acting as a financial advisor.  "GS was heavily involved in the negotiations between Stafford and TD [the eventual acquiror], and frequently communicated with Kirkland regarding the transaction."  <u>Id.</u> at *1.  In a subsequent dispute, an adverse party sought to compel

production of communications between Stafford and Kirkland that had been disclosed to

Goldman Sachs.  The court held that those communications did not necessarily lose their

privileged character:

> Although GS serves a multitude of clients, it is clear in this case that all of the
> players from GS, Stafford, and Kirkland considered their communications to be
> confidential, and that the communications were treated as such.  Many courts
> have recognized that, in today's market place, attorneys need to be able to have
> confidential communications with investment bankers to render adequate legal
> advice.  See [Calvin Klein, 124 F. Supp. 2d at 209.] …

> The Court adopts this balanced approach in the instant case, limiting the privilege
> to those instances where Plaintiffs have demonstrated that GS confidentially
> communicated with Kirkland or Stafford's in-house counsel for the purpose of
> obtaining or providing legal advice.

Id. at *6-*7.[11]

The same result was reached by the court in In Re JP Morgan Chase & Co. Sec.

Litig., MDL No. 1783, 2007 WL 2363311 (N.D. Ill. Aug. 13, 2007), on which plaintiffs purport

---

[11]  Significantly, the court in Stafford Trading rejected the holding of Export-Import Bank v.
Asia Pulp & Paper Co., 232 F.R.D. 103 (S.D.N.Y. 2005), on which plaintiffs rely (Pltfs.'
Mem. 10).  The Export-Import court's holding principally relied on the Supreme Court's
rejection of an accountant-client privilege in U.S. v. Arthur Young & Co., 465 U.S. 805
(1984).  The Stafford Trading court noted that the concerns underlying the Arthur Young
decision were not present in a case involving a confidential financial advisor:

> After reviewing the caselaw, the Court concludes that the rule in Export-Import is
> too restrictive.  Notably, the Export-Import court's concern about the exception
> swallowing the basic rule in Arthur Young is unwarranted.  In declining to
> embrace an accountant-client privilege in Arthur Young, the Supreme Court relied
> upon the fact that an independent public accountant serves a public role … The
> Supreme Court makes clear in Arthur Young that clients are not entitled to rely
> upon a bond of confidentiality with an independent accountant, because these
> accountants act on behalf of the public.  Under these circumstances, the
> accountants could not be considered agents of their clients.  Conversely, in the
> instant case, GS was clearly acting on behalf of Stafford, not the public at large.

Id. at *6.  Here, too, JP Morgan's bankers acted confidentially as financial advisors to the
company, not on behalf of the public.

to rely (see Pltfs.' Mem. 12 & Furnald Decl. Ex. 26).  In that case, JP Morgan Securities Inc.

("JPMSI") had advised its corporate parent JP Morgan regarding a merger with another financial

institution.  The court concluded that even if those two entities were regarded as analytically

separate -- notwithstanding their corporate relationship -- disclosure of advice from JP Morgan's

attorneys to JPMSI would <u>not</u> destroy the privilege:

> The Court finds <u>Stafford Trading</u>'s discussion of the development of this area of
> law to be particularly instructive, and the parties' brief arguments surrounding the
> issue of whether the documents shared between JP Morgan and JPMSI are
> privileged do not warrant extensive additional discussion of the development of
> this area of law.  The present situation is similar to that in <u>Stafford Trading</u>.  Even
> if the Court assumes that JPMSI should not be treated as a wholly-owned
> subsidiary of JP Morgan, JPMSI was involved in providing JP Morgan with
> advice that was held in confidence by the proper recipients.  JPMSI's task was to
> use the knowledge that JP Morgan's attorneys gave JPMSI in order to provide
> cogent investment advice regarding the merger with Bank One.  Based on
> <u>Stafford Trading</u>, the Court finds that the mere fact that documents were shared
> with JPMSI does not render the attorney-client privilege waived, insofar as those
> documents contained or sought legal advice and otherwise remained confidential.

<u>Id.</u> at *7.

   The precedents discussed above are consistent with the case law of this District.

For example, in <u>Winchester Capital Mgmt. Co., Inc. v. Manufacturers Hanover Trust Co.</u>, 144

F.R.D. 170 (D. Mass. 1992), a bank ("Manufacturers") retained a consulting firm ("Winchester")

to advise the bank regarding issuance of guaranteed investment contracts.  Winchester provided

its expertise through an individual ("Chiusano") who worked as its contractor.  In a subsequent

dispute, Manufacturers sought to compel production of communications between Mr. Chiusano

and Winchester's attorneys that were used in the preparation of an opinion letter.  Magistrate

Judge Collings of this District held that the disclosure did not destroy the privilege:

> Manufacturers argues … that since Mr. Chiusano is a "third party," the disclosure
> of the document to him and his presence at the discussions on the topics discussed
> in the letter operates as a waiver.  While the general proposition is sound, as with
> many legal principles, there are exceptions, and, in my opinion, Mr. Chiusano, at
> least in the context of the Opinion Letter, falls into the exception which provides

that disclosure to a third party who is identified with the party claiming the privilege and to whom disclosure is reasonable and necessary in order for all the facts to be made known to the attorney does not waive the privilege.  I find that Winchester has carried its burden of establishing its entitlement to assert the privilege as to discussions at which Mr. Chiusano was present for the purpose of transmitting to the attorney information upon which the Opinion Letter was based. The motion to compel deposition testimony as to these communications will be denied.

Id. at 172 (citations omitted).[12]

The precedents discussed above -- Calvin Klein, Stafford Trading, JP Morgan, and Winchester Capital -- warrant upholding JP Morgan's assertions of privilege in this case with respect to the specific privilege log entries disputed by plaintiffs.  Here, JP Morgan's bankers acted at times as confidential financial advisors for companies that were exploring a sale, including via a LBO transaction.  That is the same role that Lazard played in the Calvin Klein case, and the same role that Goldman Sachs played in the Stafford case.  Accordingly, JP Morgan properly withheld from production attorney-client privileged documents that its bankers received on a confidential basis when acting in that advisory capacity, because the confidential disclosure to JP Morgan did not waive the privilege.[13]

Plaintiffs assert that Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300 (D.N.J. 2008) ("Sealed Air", discussed in Pltfs' Mem. at 9-10) is to the contrary.  JP Morgan respectfully submits that the Court should rely on the other authorities cited above, for two reasons:

---

[12]  Magistrate Judge Collings did not find that the privilege applied with regard to communications involving Mr. Chiusano that were not intended to be confidential, or with regard to communications that related to business rather than legal advice.  Id. at 174-75.  JP Morgan has not claimed privilege with respect to any such documents.

[13]  If JP Morgan received a document from a company in some other capacity, or if a document that JP Morgan received in its advisory capacity did not relate to the provision or requesting of legal advice, JP Morgan did not assert privilege with respect to that document.

*First*, the court in <u>Sealed Air</u> recognized that its holding was "a very limited holding," <u>id.</u> at 314, in that many of the withheld documents in dispute would be subject to withholding on the basis of the work product immunity in any event.

*Second*, the court in <u>Sealed Air</u> considered it dispositive that the engagement letter between the company and its financial advisor did not specifically discuss that the financial advisor might facilitate the provision of legal advice to the company, deeming the fact "that [the company's] counsel may have found [the bank's] analyses useful in providing legal advice is <u>irrelevant</u> if the purpose of [the bank's] retention was not legal in nature." <u>Id.</u> at 314 (emphasis added).  But the courts in <u>Calvin Klein</u>, <u>Stafford Trading</u>, and <u>JP Morgan</u> did not treat that fact as "irrelevant," and for good reason:  As those courts recognized, a potential sale of a company will typically require ongoing, confidential interaction between the company's management and financial and legal advisors to the company.

* * *

The following chart sets forth the specific facts that support the assertion of privilege with respect to each of the specific privilege log entries identified as disputed in plaintiffs' Memorandum (<u>see</u> Pltfs. Mem. 10-11).  Plaintiffs were informed of these supporting facts by JP Morgan's October 12, 2009 privilege log and by JP Morgan's January 28, 2010 letter to plaintiffs (Furnald Decl. Ex. 10):

| *Entries challenged*<br>*(with plaintiffs' description)* | *Basis of JP Morgan's assertion of privilege*<br>*(as previously provided to plaintiffs)* |
|---|---|
| **(i)** Entry Nos. 41-48, 54-57, 60-76, 85-88, 639-641, 647-649, 659-660, 745-748, 780-817, 895-934, 944-948, 953-992, 995-998<br><br>"Communications (and attachments) reflecting provision of or request for legal advice from outside or in-house counsel for Michael's Stores sent/received by JP Morgan, advisory bank to Michael's Stores."<br><br>*Addressed by JP Morgan in Jan. 28, 2010 letter to plaintiffs, at 2-3 (Furnald Decl. Ex. 10) (discussion of "Group A").* | As set forth more fully in the privilege log entries relating to the referenced documents, these documents contain privileged legal advice and requests for legal advice from Michaels Stores' in-house counsel and its outside counsel (Cravath, Swaine & Moore LLP).<br><br>JP Morgan's bankers acted as financial advisors to Michaels Stores in connection with this transaction.  The engagement letter with Michael Stores under which JP Morgan provided financial advisory services to Michaels Stores required JP Morgan to keep information provided by Michaels Stores in connection with that engagement confidential.[14] |
| **(ii)** Entry Nos. 2642, 2656-2658, 2663-2672, 2675-2685, 2689-2692, 2697-2706<br><br>"Communications between counsel for Neiman Marcus and JP Morgan, advisory bank to Neiman Marcus."<br><br>*Addressed by JP Morgan in Jan. 28, 2010 letter to plaintiffs, at 3 (Furnald Decl. Ex. 10) (discussion of "Group C").* | As set forth more fully in the privilege log entries relating to the referenced documents, these documents include privileged legal advice and requests for legal advice from Neiman Marcus' outside counsel (Simpson Thatcher & Bartlett LLP).<br><br>JP Morgan's bankers acted as financial advisors to Neiman Marcus in connection with this transaction.  The engagement letter with Neiman Marcus under which JP Morgan provided its financial advisory services to Neiman Marcus required JP Morgan to keep information provided by Neiman Marcus in connection with that engagement confidential.[15] |

---

[14]  Furnald Decl. Ex. 20, § 2(e), JPM 00126397 (engagement letter dated March 15, 2006, "Standard Terms & Conditions").

[15]  Form of engagement letter dated April 27, 2005, § 2(e) ("Standard Terms & Conditions"), at JPM 00228776.  Plaintiffs have submitted to the Court a prior draft of this letter (see Furnald Decl. Ex. 24) that does not include this confidentiality provision, which is substantially similar to the provision referenced in n. 14 supra.  If requested, JP Morgan would submit a copy of this document for filing under seal for the Court's review.

| *Entries challenged*<br>*(with plaintiffs' description)* | *Basis of JP Morgan's assertion of privilege*<br>*(as previously provided to plaintiffs)* |
|---|---|
| **(iii)**   Entry Nos. 1154, 1169<br><br>"E-mail chain and attachments disclosed to Ernst & Young, engaged by JPMP in connection with the AMC LBO to provide certain diligence services."<br><br>*Addressed by JP Morgan in Jan. 28, 2010 letter to plaintiffs, at 5-6 (Furnald Decl. Ex. 10) (discussion of "Group G").* | As set forth more fully in the privilege log entries relating to those documents, those documents include privileged legal advice and requests for legal advice from the outside counsel (Latham & Watkins LLP) retained by JP Morgan Partners in connection with the AMC transaction.<br><br>JP Morgan Partners also retained Ernst & Young LLP in connection with that transaction to evaluate certain due diligence matters.  The terms under which Ernst & Young LLP provided advisory services to JP Morgan Partners in connection with that transaction required Ernst & Young LLP to keep information provided by JP Morgan Partners in connection with that engagement confidential.[16] |
| **(iv)**   Entry No. 1 (on JP Morgan's separate privilege log for hard copy documents dated January 13, 2010)<br><br>"Communications between counsel for Aramark disclosed to JP Morgan, advisory bank to the company at the time."<br><br>*Addressed by JP Morgan in Jan. 28, 2010 letter to plaintiffs, at 7 (Furnald Decl. Ex. 10) (discussion of "Group K").* | As set forth in the privilege log entry relating to that document, that document reflects privileged legal advice from Aramark's outside counsel, Simpson Thatcher & Bartlett LLP.<br><br>JP Morgan's bankers acted as confidential financial advisors to Aramark at the time this document was circulated (March 23, 2006).  JP Morgan subsequently withdrew from that advisory role. |

---

[16]   The Court dismissed JP Morgan Partners from this action on February 12, 2009, on the basis of releases granted in connection with the settlement of prior litigations.  (Docket No. 201.)  JP Morgan has produced certain documents on behalf of JP Morgan Partners, and these two privilege log entries relate to that production.

Here, the confidential advisor is Ernst & Young (who was <u>not</u> acting in this situation as a public accountant) and the party receiving the confidential advice is JP Morgan Partners.  The privilege analysis is identical, however.  And, as with the other entries challenged in plaintiffs' Motion, plaintiffs have not explained why the documents referenced by these entries -- which in this case relate solely to a <u>dismissed</u> defendant -- would be at all relevant.

Accordingly, to the extent plaintiffs' Motion relates to a contention that JP Morgan has improperly asserted privilege with respect to documents that were provided on a non-confidential basis to a third party, it should be denied.

**B.     The Documents Plaintiffs Identify Were Not Improperly Withheld Based On The Common Interest Doctrine**

Plaintiffs contend that JP Morgan has withheld particular documents on the basis of an "improper characterization of the common-interest doctrine." (Pltfs.' Mem. 11.) However, the Court need not decide any general issue relating to the application of common interest doctrine on this Motion.[17] All of the particular privilege log entries disputed by plaintiffs (see id. at 14) refer to (1) documents received by JP Morgan's bankers in their capacity as confidential financial advisors to Michaels Stores or Neiman Marcus, and therefore properly withheld as privileged for the specific reasons discussed in Part II.A above; or (2) documents that have been produced to plaintiffs, either in their entirety or with limited redactions, after further review by JP Morgan.  The following chart explains in detail:

| *Entries challenged* | *Basis for assertion of privilege, or other resolution* |
|---|---|
| **(v)**  Entry Nos. 49-53, 58-59, 634-638, 642-645, 764-779, 999-1002<br><br>*Addressed by JP Morgan in Jan. 28, 2010 letter to plaintiffs, at 2-3 (Furnald Decl. Ex. 10) (discussion of "Group A").* | These documents include privileged legal advice and requests for legal advice from Michaels Stores' in-house counsel and its outside counsel (Cravath, Swaine & Moore LLP).  JP Morgan acted as a financial advisor to Michaels Stores in connection with this transaction.  See item (i) in chart on p. 13 supra. |

---

[17]   In particular, JP Morgan has not contended -- as Pltfs' Mem. 11-12 erroneously suggests -- that communications between opposing parties negotiating a contract are presumptively subject to a common interest privilege, and JP Morgan has not withheld documents from production on that basis.  To the contrary, JP Morgan has produced an enormous number of such communications.

| ***Entries challenged*** | ***Basis for assertion of privilege, or other resolution*** |
|---|---|
| **(vi)**  Entry Nos. 2624-2632<br><br>*Addressed by JP Morgan in Jan. 28, 2010 letter to plaintiffs, at 3 (Furnald Decl. Ex. 10) (discussion of "Group C").* | These documents include privileged legal advice and requests for legal advice from Neiman Marcus' outside counsel (Simpson Thatcher & Bartlett LLP). JP Morgan acted as a financial advisor to Neiman Marcus in connection with this transaction.  <u>See</u> item (ii) in chart on p. 13 <u>supra</u>. |
| **(vii)**  Entry Nos. 2112-2115<br><br><u>*Not*</u> *previously identified by plaintiffs as disputed.  Produced with redactions by JP Morgan on March 31, 2010.* | JP Morgan reviewed the documents relating to these entries and determined that they could be produced, with redactions to the document referred to in Entry No. 2112 to protect privileged communications reflecting JP Morgan's request for legal advice from Minh Van Ngo of Cravath, Swaine & Moore LLP, who provided legal advice to JP Morgan and the other underwriters in connection with the SunGard transaction.<br><br>Plaintiffs <u>never</u> identified these privilege log entries as disputed before filing their Motion (not even in their March 19, 2010 list).  JP Morgan produced the documents on March 31, 2010. |
| **(viii)**  Entry Nos. 2712-2713<br><br>*Addressed by JP Morgan in March 25, 2010 letter to plaintiffs, at 10 (Ex. 4 hereto) (discussion of "Group XII").* | JP Morgan reviewed the documents relating to these entries and determined that they could be produced with redactions to protect attorney-client privilege. JP Morgan informed plaintiffs of its decision to produce these documents on March 25, 2010, <u>before</u> plaintiffs filed their Motion.  JP Morgan produced the documents on March 31, 2010.<br><br>On April 8, 2010, plaintiffs apparently <u>withdrew</u> their challenge to these privilege log entries.  <u>See</u> plaintiffs' April 8, 2010 letter, at 4 (Ex. 6 hereto) (discussion under "Group XII," stating that these entries "do not fall within the three issues that are the subject of Plaintiffs' [Motion]"). |

Accordingly, to the extent plaintiffs' Motion relates to their contention that JP Morgan has improperly asserted  privilege with respect to documents withheld on the basis of the common interest doctrine, it should be denied.

### C. Plaintiffs' Concern Regarding A Document Sent To A Distribution List Was Resolved *Before* Plaintiffs Filed Their Motion, And Is Moot

Plaintiffs assert that "[i]n a number of cases, JP Morgan has failed to list on its privilege log the individual people who actually received documents, and instead, refers to a distribution list … as the recipient." (Pltfs.' Mem. 14.) A distribution list is a mechanism for circulating electronic mail messages to a pre-selected group of persons. A message sent to a distribution list is not sent to one particular recipient, but is automatically forwarded to all members of the list by the computer program that routs electronic mail across a computer network. Plaintiffs do not dispute that where such a list is utilized solely for internal distribution within a company, privileged documents sent to that list may properly be withheld as privileged.

In its March 24 and 25, 2010 letters to plaintiffs, sent <u>before</u> plaintiffs filed their Motion, JP Morgan addressed the newly-identified entries on plaintiffs' March 19, 2010 list of disputed privilege log entries that related to distribution lists. (<u>See</u> Furnald Decl. Ex. 16, at 10-13 (March 24, 2010 letter); Ex. 4 hereto, at 10-13 (March 25, 2010 letter).) Plaintiffs' Memorandum now offers just one "example" of a log entry referring to a distribution list -- an electronic mail message and two attachments (Entry Nos. 1287-1289) -- that JP Morgan had withheld from production. (Pltfs.' Mem. 15.) Yet, that document was produced to plaintiffs on March 4, 2010, three weeks <u>before</u> plaintiffs filed their Motion. JP Morgan informed plaintiffs by its letter of March 25, 2010, sent <u>before</u> plaintiffs filed their Motion, that it had withdrawn its assertion of privilege with respect to that document. (<u>See</u> Ex. 4 hereto, at 13 ("Group XVII").) Plaintiffs' request to compel production of that document is moot, and should be denied.[18]

---

[18]  On April 8, 2010, the date of the filing of this Opposition, plaintiffs identified to JP Morgan for the very first time five additional privilege log entries relating to distribution lists. <u>See</u>

*(cont'd)*

**III.   IF THE COURT IS INCLINED TO GRANT PLAINTIFFS ANY RELIEF,
        THE COURT SHOULD NOT USE PLAINTIFFS' PROPOSED FORM OF ORDER**

For the reasons stated in Parts I and II above, plaintiffs' Motion should be denied in its entirety.  However, if plaintiffs were entitled to any relief at all -- which JP Morgan expressly denies -- that relief should be limited to requiring in camera review or production of specific documents associated with the specific privilege log entries challenged by plaintiffs' Motion.  The form of order proposed here by plaintiffs ("Proposed Order," Docket No. 280, Ex. 1) is inappropriate, and likely to prolong and compound the disputes between the parties rather than finally and efficiently resolving them.

Rather than directing the production of particular entries on JP Morgan's privilege log, Plaintiffs' Proposed Order would grant relief with respect to ambiguously-defined categories of documents purportedly referenced in JP Morgan's privilege log (e.g., "all documents withheld pursuant to Defendant's erroneous interpretation of the common interest doctrine").   An order in that form would open the door to collateral disputes, and perhaps even further motion practice, regarding the meaning and scope of that order and its application to particular privilege log entries.  An order in that form would also defeat an important purpose of requiring parties to prepare privilege logs, i.e., to permit the parties to confer, and to permit this Court to provide specific relief where appropriate, on the basis of the particular information provided on the log.  See Fed. R. Civ. P. 26, Advisory Committee Note on 2006 Amendment ("Rule 26(b)(5)(A) provides a procedure for a party that has withheld information on the basis of privilege … to

_____

(cont'd from previous page)
  plaintiffs' April 8, 2010 letter, at 4 (Ex. 6 hereto) (discussion of "Group XVII").  As it has done previously, JP Morgan will review and respond to plaintiffs' letter promptly.  No action by the Court is necessary or appropriate on this Motion with respect to any such after-the-fact challenge on plaintiffs' part.

make the claim so that the requesting party can decide whether to contest the claim and the court can resolve the dispute.").

Plaintiffs assert that "having informed JP Morgan about the categories of documents that [JP Morgan] erroneously withheld as privileged, Plaintiffs are not required to point JP Morgan to each and every entry on its voluminous logs of roughly 3,000 entries that falls under these categories."  (Pltfs.' Mem. 4 n.2.)[19]  To the contrary, it is entirely appropriate that plaintiffs be held here to the minimal standard of specifically identifying their challenges to JP Morgan's claims of privilege.  Plaintiffs might have proposed at the outset of this litigation a protocol by which the parties would have been relieved of the considerable burden and expense of producing detailed privilege logs, in favor of producing lists of categories of documents withheld as privileged (which could be challenged on that basis).  Plaintiffs elected not to do that.  Rather, plaintiffs asked that JP Morgan and other defendants provide the detailed privilege logs called for by Fed. R. Civ. P. 26(b)(5)(A) and D. Mass. Local R. 34.1(E), and <u>further</u> asked this Court to require those logs to be provided in electronic form to facilitate their review of those privilege logs.  Having obtained that relief,[20] and having had five months to review JP Morgan's October 12, 2009 privilege log in electronic form before filing their Motion, plaintiffs should not be granted any relief on their Motion other than with respect to the particular privilege log entries that they have chosen to challenge in their Motion.

---

[19]   Similarly, plaintiffs' Motion purports to identify the lists of privilege log entries disputed by plaintiffs as "non-exhaustive" (<u>id.</u> 10, 14) or as "one example."  (<u>Id.</u> 15.)  Plaintiffs further assert that any relief granted by the Court with respect to their Motion should apply to "improperly redacted documents as well."  (<u>Id.</u> 2 n.1.)  Those implicit assertions regarding the breadth of the grant of relief that plaintiffs seek to obtain are not spelled out in plaintiffs' Proposed Order, and confirm the inappropriateness of that form of Proposed Order.

[20]   Order, June 22, 2009, at 5 (Docket No. 245).

## CONCLUSION

For the foregoing reasons, this Court should deny plaintiffs' Motion in its entirety.

Dated:  April 8, 2010
       Boston, Massachusetts

Respectfully submitted,

 /s/  James R. Carroll
James R. Carroll (BBO #554426)
Kurt Wm. Hemr (BBO #638742)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800
jcarroll@skadden.com
khemr@skadden.com

Of Counsel:

Peter E. Greene
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
(212) 735-3000

Counsel for Defendant
JP Morgan Chase & Co.

## CERTIFICATE OF SERVICE

I, James R. Carroll, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on April 8, 2010.

Dated:  April 8, 2010

 /s/  James R. Carroll
James R. Carroll