**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

* * * * * * * * * * * * * * * * * * * * * * * * * * 
KIRK DAHL, ET AL., Individually and
on Behalf of All Others Similarly Situated,

Plaintiffs

v. CIVIL ACTION NO.: 07-12388-EFH

BAIN CAPITAL PARTNERS, LLC, ET AL.,

Defendants.

* * * * * * * * * * * * * * * * * * * * * * * * * * 

**MEMORANDUM AND ORDER**

June 22, 2010

HARRINGTON, S.D.J.

This matter comes before the Court on the plaintiffs' motion to compel documents from defendant, JP Morgan Chase & Co. The underlying lawsuit relates to the leveraged buyouts of a number of companies of which plaintiffs were shareholders (the "Target Companies"). The defendants are financial firms, primarily private equity firms, that were involved with the leveraged buyouts. The plaintiffs bring their claims pursuant the Sherman Act, 15 U.S.C. § 1, on behalf of themselves and others similarly situated, alleging that the defendants illegally colluded to artificially fix the sales prices of the Target Companies' securities. Plaintiffs contend that they were, in turn, deprived of the true value of their stock. They now move to compel defendant JP Morgan to produce certain documents related to the leveraged buyouts, which have been withheld on the basis of the attorney-client privilege.

The documents at issue primarily consist of communications between JP Morgan and counsel for Michaels Stores, one of the Target Companies. At the time of the communication, JP Morgan was acting as a financial advisor to Michaels Stores and was responsible for managing the bidding process by which the company would be sold. Plaintiffs contend that the attorney-client privilege was waived with respect to these communications because JP Morgan was a third party to the attorney-client relationship. JP Morgan opposes the plaintiffs' motion, arguing that the contested documents fall within an exception to the third-party wavier rule, which extends the protection of the privilege to communications with third parties that are employed to assist lawyers in rendering legal advice.

"Generally, disclosing attorney-client communications to a third party undermines the privilege." Cavallaro v. United States, 284 F.3d 236, 246-47 (1st Cir. 2002). "An exception to this general rule exists for third parties employed to assist a lawyer in rendering legal advice." Id. at 247. The circumstances under which the exception applies are limited.

First, the third-party communications must be "necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." Id. at 247-48 (quoting United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961)). "[T]he 'necessity' element means more than just useful and convenient." Id. at 249. "The involvement of the third party must be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications." Id. The exception, therefore, does not apply to instances where an attorney's ability to represent a client is merely improved by the assistance of the third party. See id. (The fact that "[ accountant] double-checked [lawyers'] legal advice to make sure it was consistent with the accounting records . . . is not enough to show that [accountant] was necessary, or at least highly useful, in facilitating [lawyers'] provision of legal

advice.") (internal quotations omitted); United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999) (Communications found not to be privileged even though investment banker "significantly assisted the attorney in giving his client legal advice about its tax situation").

Second, the exception applies only to communications in which the third party plays an interpretive role. In other words, the third party's communication must serve to translate information between the client and the attorney. See, e.g., Ackert, 169 F.3d at 139-40 ("[Lawyer] was not relying on [accountant] to translate or interpret information given to [lawyer] by his client."); In re G-I Holdings Inc., 218 F.R.D. 428, 434 (D.N.J. 2003) (Exception applies only "when the accountant functions as a 'translator' between the client and the attorney"); United States v. Chevron Texaco Corp., 241 F. Supp. 2d 1065, 1071 (N.D. Cal. 2002) (Privilege does not "extend . . . beyond the situation in which an accountant was interpreting the client's otherwise privileged communications or data in order to enable the attorney to understand those communications or that client data"); Calvin Klein Trademark Trust v. Wachner, 124 F. Supp. 2d 207, 209 (S.D.N.Y. 2000) (Investment bank "serv[ed] . . . an interpretive function" where it advised lawyers "as to what a reasonable business person would consider 'material'" for the purposes of legal disclosures); Comm'r of Revenue v. Comcast Corp., 901 N.E.2d 1185, 1198 (Mass. 2009) ("We agree with the majority of courts that the [exception] applies only when the accountant's role is to clarify or facilitate communications between attorney and client.").

Third, the third party's communication must be made for the purpose of rendering legal advice, rather than business advice. Cavallaro, 284 F.3d at 248-49 ("[T]he evidence is strong that [the accountants] acted to provide accounting advice rather than to assist [the lawyers] in providing legal advice."); United States v. Kovel, 296 F.2d 918, 922 ("What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal

advice from the lawyer. If what is sought is not legal advice but only accounting service, . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.”); Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd., 232 F.R.D. 103, 111 (S.D.N.Y. 2005) (“At the very least, the party claiming the attorney-client privilege must give evidence that the document was created for the purpose of providing or obtaining legal rather than business advice.”) (internal quotations omitted).

After a hearing on the matter, the Court made an *in camera* examination of the contested documents. The documents are email communications between JP Morgan and counsel for Michaels Stores. The emails can be grouped by subject matter into four categories. The first category relates to the negotiation and execution of legal documents related to the sales process, such as confidentiality agreements. The second category relates to issues of due diligence, including discussions about information requests from potential bidders and the process by which the requested information would be disseminated. The third category relates to material created by JP Morgan about the sales process that was to be provided to Michaels Stores’ Board of Directors. The fourth category relates to documents created by JP Morgan outlining the sales process for potential bidders.

In brief, with respect to many of the emails, JP Morgan was copied to or forwarded legal documents and communications about legal issues between Michael Stores and its lawyers in order to provide “feedback” based on its “financial expertise and industry experience.” With respect to the remaining emails, JP Morgan provided information to or sought information from Michaels Stores’ representative and its legal counsel regarding the sales process. JP Morgan contends that the communications were necessary to allow the lawyers to advise Michaels Stores’ board of directors as to its fiduciary duties.

The Court rules that the documents at issue do not fall within the exception to the third-party waiver rule. As to the forwarded and copied emails, JP Morgan's review of legal documents and legal advice to provide "feedback" is not enough to show that JP Morgan was necessary, or at least highly useful, in facilitating the legal advice. See Cavallaro, 284 F.3d at 246-47 (double-checking legal advice is not enough to show accountant's role is necessary); see also Chevron Texaco Corp., 241 F. Supp. 2d at 1072 (Privilege does not apply where "accountant is hired merely to give additional legal advice . . . even where doing so would assist the attorney in advising the client."). Furthermore, JP Morgan's stated role with respect to these emails was to provide advice based on its "financial expertise and industry experience," which, by this characterization, is more within the realm of business advice rather than legal advice. See Cavallaro, 284 F.3d at 246-47.

As to the email communications regarding the sales process, Michael Stores' lawyers were not relying on JP Morgan to translate or interpret information given to them by Michaels Stores. Rather, the lawyers received information from JP Morgan that Michaels Stores simply did not have, such as information about JP Morgan's dealings with potential bidders. See Ackert, 169 F.3d at 139. Furthermore, the information discussed and the documents attached to those emails, such as the board material and the letters to potential bidders, were garnered and created by JP Morgan as part of its role as a financial advisor charged with managing the company's sales process. The fact that the information and documents were then provided to Michaels Stores' lawyers to aid in the provision of legal advice does not thereby shield the communications from discovery. See Ackert, 169 F.3d at 139 ("[A] communication between an attorney and a third party does not become shielded by the attorney-client privilege solely

because the communication proves important to the attorney's ability to represent the client.”).[1] The Court, accordingly, allows plaintiffs’ motion.

Plaintiffs’ Motion to Compel Defendant JP Morgan Chase & Co. to Produce Documents Improperly Withheld as Privileged (Docket No. 280) is ALLOWED.

SO ORDERED.

/s/ Edward F. Harrington
EDWARD F. HARRINGTON
United States Senior District Judge

[1] There are nine contested documents that do not relate to the Michaels Stores leveraged buyout. The first document involves Aramark, another Target Company to which JP Morgan acted as financial advisor. The document is a discussion outline regarding corporate governance and ownership topics prepared by Aramark’s counsel and sent to JP Morgan for its “feedback.” The remaining eight documents relate to the leveraged buyout of AMC, in which JP Morgan Partners LLC, an affiliated company of JP Morgan Chase & Co., was a bidder. JP Morgan Partners hired Ernst & Young as its accounting advisor with respect to the AMC leveraged buyout. The documents are email communications between JP Morgan Partners and Ernst & Young regarding due diligence issues. The Court rules that these documents do not fall within the exception since the financial advisors were requested to provide financial advice, were not acting to interpret information from the client, and were not necessary to the provision of legal advice.