UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

KIRK DAHL, ET AL., Individually and
on Behalf of All Others Similarly Situated,

            Plaintiffs

       v.                    CIVIL ACTION NO.:
                              07-12388-EFH

BAIN CAPITAL PARTNERS, LLC, ET AL.,

            Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

August 29, 2013

HARRINGTON, S.D.J.

      On July 18, 2013, the Court denied Defendant Thomas H. Lee Partners, L.P.'s ("THL") Renewed Individual Motion for Summary Judgment. Dahl v. Bain Capital Partners, LLC, No. 07-12388-EFH, 2013 WL 3802433, at \*10 (D. Mass. July 18, 2013) (the "Prior Order"). THL now asks the Court to reconsider its Prior Order, asserting that the Court misapplied the controlling standard for summary judgment in antitrust cases under Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). Upon reconsideration, the Court allows THL's Motion.

      The Prior Order held that an email correspondence between THL executives discussing whether THL should compete for the Harrah's transaction established THL's connection to the overarching conspiracy alleged in Count One of the Plaintiffs' Fifth Amended Complaint. Id. at

*5. In that email correspondence one executive states, "I know we typically don't bust things up-I'm trying to find out from my friend who is the CFO what the status of the deal is-early or late stage."  A second executive responds, "I hate ambulance chasing someone elses deal if its pretty baked.  Find out status."  The Prior Order concluded that the phrase "bust things up," in the light most favorable to the Plaintiffs, implied an unwillingness on the part of THL to "harm an associate" by "jumping" its deal and, in turn, evidenced THL's participation in the overarching conspiracy.  Id.

Upon reconsideration, the Court holds that such a conclusion was erroneous under the Matsushita standard.  In the light most favorable to the Plaintiffs, the evidence does not tend to exclude the possibility that THL was acting independently in not pursuing a Harrah's deal.  See Matsushita, 475 U.S. at 588 ("To survive a motion for summary judgment or for a directed verdict, a plaintiff seeking damages for a violation of § 1 must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently.").  The email correspondence was an internal discussion, which was not conveyed to other co-defendants and which otherwise fails to suggest an association based on an agreement between THL and TPG, the other co-defendant seeking the Harrah's deal.  Without more, THL's hesitance to "bust up" TPG's late-stage deal was as consistent with an independent fear of retaliation by TPG as it was with an agreement with TPG not to "jump" announced proprietary deals.[1]  See Matsushita, 475 U.S. at 588 ("[C]onduct as consistent with permissible competition as with illegal conspiracy does

---

[1] Plaintiffs also contend that another email noting that THL was reluctant to "step[] on" TPG in pursuing the Harrah's transaction shows a connection to the overarching conspiracy.  The Court rules that this statement, for the same reasons, fails to exclude the possibility of independent action.

not, standing alone, support an inference of antitrust conspiracy.") (citing Monsonato Co. v. Spray-Rite Service Corp., 465 U.S. 752, 764 (1984)); Dahl v. Bain Capital Partners, LLC, No. 07–12388–EFH, 2013 WL 950992, at *14 (D. Mass. March 13, 2013) ("The Defendants' alleged motivations to maintain friendly relationships with other Defendants in the industry further fail to suggest the existence of a market-wide conspiracy [because] [e]ach Defendant may simultaneously, but independently, institute a policy of not inciting retaliation from other Defendants."); see also White v. R.M. Packer Co., Inc., 635 F.3d 571, 575 (1st Cir. 2011) ("[Section 1] does not reach independent decisions, even if they lead to the same anticompetitive result as an actual agreement among market actors."). Furthermore, similar statements by other co-defendants made during the Freescale and HCA transactions are inadmissible against THL, where no other evidence establishes its participation in those transactions or the overarching conspiracy. See Fed. R. Evid. 801(d)(2)(E) (statement by alleged co-conspirator "does not by itself establish . . . participation in [the conspiracy].)". The evidence related to the Harrah's transaction, therefore, does not tend to exclude the possibility of independent action and fails to support THL's connection to the overarching conspiracy.

    Because the Prior Order held that the Harrah's evidence was sufficient to connect THL to the overarching conspiracy, the Court did not reach the issue of whether evidence relating to the Aramark transaction, another transaction in which THL was involved, was also sufficient. Dahl, 2013 WL 3802433, at *5 n.7. The Court now concludes that such evidence, in the light most favorable to the Plaintiffs, fails to connect THL to the overarching conspiracy.

    The evidence consists of one statement in an email between executives at Goldman Sachs, THL's consortium partner in the Aramark deal. The statement read "[t]rying to get the word out

that given 40% voting control by management this is a done deal, although stock continues to trade above offer price of $32 . . . down a bit today." Plaintiffs contend that this statement shows that Goldman, and by implication THL, was spreading the word to other Defendants that Aramark was a "done deal" so that, pursuant to the overarching conspiracy, the other Defendants would "stand down." The Court concludes that this sole internal communication between executives at Goldman Sachs is insufficient to link THL to the overarching conspiracy. The Aramark consortium's interest in "get[ting] the word out" that Aramark was a "done deal" is, without more, as consistent with an independent effort to deter a last-minute competing bid before the deal was signed, as it is with a request to the industry to "stand down" pursuant to an agreement. The evidence does not tend to exclude the possibility of independent action under Matsushita.[2]

For the foregoing reasons, Defendant Thomas H. Lee Partners, L.P.'s Motion for Reconsideration of Order Denying Thomas H. Lee Partners, L.P.'s Renewed Individual Motion for Summary Judgment (Docket No. 895) is, hereby, ALLOWED. Upon reconsideration, the Court ALLOWS Defendant Thomas H. Lee Partners, L.P.'s Renewed Individual Motion for Summary Judgment (Docket No. 779).

SO ORDERED.

/s/ Edward F. Harrington

---

[2] Plaintiffs also refer to a statement by an employee of Credit Suisse, the advisor to the Special Committee of Aramark's board, who remarked that "gs [Goldman Sachs] and jpm [JP Morgan, also THL's Consortium partner in the Aramark transaction,] are telling lbo firms to stay away and the [special] committee is upset about this." Assuming that this hearsay statement from a non-coconspirator is sufficient to connect THL to the overarching conspiracy, the Plaintiffs have failed to establish that it is admissible against THL.

EDWARD F. HARRINGTON
United States Senior District Judge