UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIRK DAHL, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>BAIN CAPITAL PARTNERS, LLC, et al.,<br><br>                    Defendants. | Lead Case No. 1:07-cv-12388-WGY<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF NAMED PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS BAIN CAPITAL PARTNERS, LLC, AND THE GOLDMAN SACHS GROUP, INC. |

946797_3

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND ..................................................................................2

    A.  Overview of the Case............................................................................................2

    B.  Discovery .............................................................................................................3

    C.  The Summary Judgment and Class Certification Proceedings ...............................4

    D.  The Mediation and the Settlement Process ...........................................................5

III.  SUMMARY OF THE PROPOSED SETTLEMENTS ............................................6

    A.  The Settlement Class............................................................................................6

    B.  Settlement Consideration .....................................................................................7

        1.  Monetary Relief ......................................................................................7

        2.  Cooperation in the Prosecution of Claims ................................................7

    C.  Release of Claims ................................................................................................8

    D.  Entry of Final Judgment Orders............................................................................9

    E.  Fee and Expense Applications ..............................................................................9

IV.  CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE......................9

V.  PRELIMINARY APPROVAL OF THE SETTLEMENTS IS WARRANTED ...............11

    A.  The Settlement Negotiations Occurred at Arm's Length ......................................13

    B.  Sufficient Discovery and Investigation Was Conducted .......................................14

    C.  The Proponents of the Settlements Are Experienced in Similar Litigation...........16

    D.  Number of Objections ........................................................................................17

VI.  THE COURT SHOULD APPROVE THE PROPOSED FORM AND MANNER
    OF CLASS NOTICE ..........................................................................................18

VII.  APPOINTMENT OF CO-LEAD COUNSEL .......................................................19

VIII.  PROPOSED SCHEDULE OF EVENTS..............................................................19

**Page**

IX.    CONCLUSION..............................................................................................................20

946797_3

# TABLE OF AUTHORITIES

Page

## CASES

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997) ...................................................................................................10

*Bennett v. Roark Capital Grp., Inc.,*
No. 2:09-cv-00421-GZS, 2011 WL 1627939
(D. Me. Apr. 27, 2011) ..............................................................................................18

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship,*
100 F.3d 1041 (1st Cir. 1996) ...................................................................................10

*D'Amato v. Deutsche Bank,*
236 F.3d 78 (2d Cir. 2001) ........................................................................................14

*Durrett v. Housing Auth. of Providence,*
896 F.2d 600 (1st Cir. 1990) ......................................................................................12

*Hochstadt v. Boston Scientific Corp.,*
708 F. Supp. 2d 95 (D. Mass. 2010) .................................................................. *passim*

*In re JPMorgan Chase Mortg. Modification Litig.,*
No. 1:11-md-02290-RGS, 2014 U.S. Dist. LEXIS 65718
(D. Mass. May 7, 2014) ..............................................................................................14

*In re Lupron(R) Mktg. & Sales Practices Litig.,*
228 F.R.D. 75 (D. Mass. 2005) ..................................................................................10

*In re Lupron(R) Mktg. & Sales Practices Litig.,*
345 F. Supp. 2d 135 (D. Mass. 2004) ........................................................................13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
No. 05-MD-1720 (JG) (JO), 2013 U.S. Dist. LEXIS 179340
(E.D.N.Y. Dec. 13, 2013) .....................................................................................14, 17

*In re Pharm. Indus. Average Wholesale Price Litig.,*
588 F.3d 24 (1st Cir. 2009) ........................................................................................11

*In re StockerYale, Inc. Sec. Litig.,*
No. 1:05cv00177-SM, 2007 U.S. Dist. LEXIS 65575
(D.N.H. Aug. 21, 2007) .........................................................................................11, 18

*Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund,*
582 F.3d 30 (1st Cir. 2009) ...................................................................................12, 13

- iii -

Page

*Smilow v. Sw. Bell Mobile Sys.*,
   323 F.3d 32 (1st Cir. 2003) ............................................................................................ 10

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
   208 F.3d 288 (1st Cir. 2000) .......................................................................................... 10

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §1 ..................................................................................................................................... 18
   §15 ..................................................................................................................................... 2

Federal Rules of Evidence
   Rule 801(d)(2) .................................................................................................................. 8
   Rule 803 ............................................................................................................................ 8
   Rule 901 ............................................................................................................................ 8

Federal Rules of Civil Procedure
   Rule 23 ....................................................................................................................... 12, 13
   Rule 23(a) ............................................................................................................. 6, 10, 11
   Rule 23(b)(2) .................................................................................................................... 10
   Rule 23(b)(3) ....................................................................................................... 1, 6, 10, 11
   Rule 23(e) ....................................................................................................... 1, 11, 19
   Rule 23(e)(1) .................................................................................................................... 18
   Rule 23(f) ......................................................................................................................... 16
   Rule 23(g) ......................................................................................................................... 19
   Rule 23(g)(1)(A) ............................................................................................................. 19
   Rule 54(b) ......................................................................................................................... 9
   Rule 56 ......................................................................................................................... 1, 5

## SECONDARY AUTHORITIES

*Manual for Complex Litigation* (4th ed. 2004)
   §21.632 ...................................................................................................................... 11, 12
   §21.633 ............................................................................................................................ 12
   §21.634 ............................................................................................................................ 12
   §21.635 ............................................................................................................................ 11

946797_3

## I.   INTRODUCTION

After six years of contentious litigation, during which the parties briefed multiple rounds of Rule 12 and Rule 56 motions and conducted expansive fact and expert discovery, Named Plaintiffs[1] have reached settlements with Defendants Bain Capital Partners, LLC ("Bain Capital"), and The Goldman Sachs Group, Inc. ("Goldman"), on the terms and conditions set forth in the Settlement Agreements, filed herewith (collectively, the "Settlements").[2] *See* Exhibits A and B of the Appendix submitted herewith (hereinafter, the "Settlement Agreements"). Co-Lead Counsel, on behalf of Named Plaintiffs and thousands of other investors who comprise the Settlement Class, hereby request preliminary approval of the Settlements, which will finally resolve the antitrust claims against Bain Capital and Goldman (the "Settling Defendants") and provide substantial monetary relief to the Settlement Class. As a result of the proposed Settlements, Bain Capital and Goldman have agreed to pay $54,000,000 and $67,000,000, respectively, in cash for the benefit of the Settlement Class Members. The Settling Defendants have also agreed to cooperate with Named Plaintiffs in the prosecution of their claims against the Non-Settling Defendants in certain respects relating to the authenticity and admissibility of Goldman Sachs and Bain Capital documents.[3] The proposed Settlements are the product of counsel's zealous litigation efforts and extensive arm's-length negotiations between highly experienced counsel, overseen by a respected and experienced mediator.

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Named Plaintiffs respectfully request this Court enter an order: (1) certifying a Settlement Class pursuant to Rule 23(b)(3) for

---

[1]   Kirk Dahl, Police and Fire Retirement System of the City of Detroit, City of Omaha Police and Fire Retirement System, and Michael Wojno as Executor for the Estate of Robert Zimmerman.

[2]   All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Settlement Agreements.

[3]   The Non-Settling Defendants include The Blackstone Group L.P., The Carlyle Group LLC, Kohlberg Kravis Roberts & Company, L.P., Silver Lake Technology Management, L.L.C., and TPG Capital, L.P.

- 1 -

purposes of effectuating the proposed Settlements; (2) granting preliminary approval of the proposed

Settlements; (3) directing that Settlement Class Members be given notice of the pendency of this

Action and the proposed Settlements in substantially the same form and manner set forth herein; (4)

setting a hearing date for the Court to consider final approval of the proposed Settlements and related

matters ("Final Approval Hearing"); and (5) setting a schedule for various events related thereto

("Notice Order").[4]

For the reasons discussed herein, the proposed Settlements provide an extremely favorable

result for the Settlement Class, readily satisfy the governing standards for approval in this Circuit,

and are well within the range of fairness, adequacy and reasonableness so as to warrant the Court's

preliminary approval and authorization for dissemination of notice of their terms to the Settlement

Class Members.

## II.     FACTUAL BACKGROUND

### A.     Overview of the Case

This is an antitrust class action, brought under Section 1 of the Sherman Act, 15 U.S.C. §1,

and Section 4 of the Clayton Act, 15 U.S.C. §15.  Named Plaintiffs allege that Defendants restrained

competition by participating in illegal overarching conspiracies to limit competition among

themselves and their co-conspirators with the goal of reducing the sale prices of certain publicly-

traded target companies that were sold pursuant to leveraged buyout deals ("LBOs").  Named

Plaintiffs allege that Defendants' anticompetitive conduct caused the shareholders of each target

company to receive an unlawfully depressed price per share, resulting in significant economic

damages to the putative classes.  From the outset, Bain Capital and Goldman have vigorously

---

[4]     The Notice Order is Exhibit C of the Appendix submitted herewith.

946797_3

disputed these allegations, and they continue to deny any liability and deny that Named Plaintiffs and the putative class members suffered any damages as a result of their conduct.

Several complaints have been filed over the course of this litigation.  On December 28, 2007, certain of Named Plaintiffs filed the first complaint in this matter, entitled *Davidson v. Bain Capital Partners, LLC*, No. 1:07-cv-12388.   A similar antitrust action, entitled *Dahl v. Bain Capital Partners, LLC*, No. 1:08-cv-10254, was filed on February 14, 2008, and the cases were consolidated for all purposes before Judge Harrington on April 28, 2008.   Multiple consolidated amended complaints were filed thereafter, leading up to the Third Amended Class Action Complaint, filed on August 26, 2008.   Defendants, including Bain Capital and Goldman, filed joint and individual motions to dismiss this complaint, and after full briefing and a hearing, the Court granted certain individual motions, but denied the joint motion to dismiss all of Named Plaintiffs' claims on December 15, 2008.  A petition for interlocutory appeal of the December 15, 2008 order was denied.

## B.    Discovery

Fact discovery in this litigation was conducted in three phases.  This phased discovery was conducted over the span of four years, during which Co-Lead Counsel served four requests for production of documents on all Defendants (nearly 200 individual document requests), as well as subpoenas on numerous third parties.  After significant motion practice over the scope of discovery, Co-Lead Counsel obtained and reviewed more than 13 million pages of documents.  Co-Lead Counsel also deposed more than 50 corporate witnesses, some of whom were senior executives at Bain Capital and Goldman.  This discovery generated a detailed factual record regarding each Defendant's participation and their role in the LBOs and other transactions.  In addition, Defendants, including Bain Capital and Goldman, served discovery on Named Plaintiffs and took the depositions

of, *inter alia*, Dr. Dahl, Mr. Wojno as Executor of the Estate of Robert Zimmerman, and a representative of the City of Omaha Police and Fire Retirement System.

Expert discovery was likewise extensive, as both sides retained multiple experts.  Named Plaintiffs retained four experts, who submitted six expert reports, comprising more than 500 pages. There were three defense experts, who submitted six reports, comprising more than 600 pages.  Each Party had the opportunity to depose the opposing side's experts during the summary judgment proceedings.

### C.      The Summary Judgment and Class Certification Proceedings

At the close of fact discovery, Named Plaintiffs filed the Fifth Amended Class Action Complaint, wherein they brought two claims.  First, Named Plaintiffs brought the Overarching Conspiracy claim against all Defendants, alleging an agreement to restrain competition in the 27 deals that were the subject of the three phases of discovery.  Second, Named Plaintiffs brought the HCA claim, alleging an unlawful agreement among the HCA Defendants (Goldman, TPG, Carlyle and Blackstone) to restrain competition in the HCA deal.

Defendants subsequently filed 13 motions for summary judgment, including omnibus motions as to both claims, and individual summary judgment motions by each of the 11 Defendants. The briefing on the first round of summary judgment motions alone was voluminous, as Defendants submitted over 700 pages of briefing and more than 1,280 exhibits.  In opposition, Named Plaintiffs submitted over 1,000 pages of briefing and more than 1,290 exhibits.  The Court heard two days of oral argument on these motions on December 18 and 19, 2012.  The Court denied the omnibus motions as to both claims, but granted summary judgment to Defendant JP Morgan Chase & Co. The Court denied entirely Defendants' motions for summary judgment on the HCA claim, but narrowed Named Plaintiffs' Overarching Conspiracy claim to an eight-deal "overarching agreement

- 4 -

between the Defendants to refrain from 'jumping' each other's announced proprietary deals" ("Eight Deal Conspiracy") involving AMC Entertainment Inc., SunGard Data Systems Inc., Aramark Corporation, Kinder Morgan, Inc., HCA Inc., Freescale Semiconductor, Inc., Harrah's Entertainment, Inc., and TXU Corp. (the "Eight Deals"). Mar. 13, 2013 Order (Dkt. No. 763) at 30.

Defendants then filed renewed motions for summary judgment and motions for reconsideration. Bain Capital's and Goldman's renewed motions for summary judgment were denied. In addition, Goldman's motion for reconsideration of the Court's order denying summary judgment on the HCA claim was denied. The Court granted Defendants Providence's, Thomas H. Lee's, and Apollo's renewed motions for summary judgment. All other motions were denied. A petition for interlocutory appeal of the summary judgment orders was also denied.

On October 21, 2013, Named Plaintiffs filed a motion for class certification of the Eight Deal Conspiracy claim and the HCA claim. In support of the motion, Named Plaintiffs submitted the expert reports of Drs. Simon Wilkie and Michael Williams. On January 24, 2014, Defendants filed an opposition to the motion for class certification with supporting expert reports from Drs. Paul Gompers and Edward Snyder. On March 28, 2014, Named Plaintiffs submitted their reply briefing, as well as additional expert reports from Drs. Wilkie and Williams, Micah Officer, and Robert Marshall. On May 8, 2014, the Court granted Defendants' request to file a sur-reply brief as well. The motions have been fully briefed and are currently pending before the Court.

Additional Rule 56 motions, if any, are due by August 1, 2014, and this case is currently set for trial in November 2014.

### D.     The Mediation and the Settlement Process

During the pendency of the case, Co-Lead Counsel and counsel for Settling Defendants participated in a mediation process before a former district court judge and experienced mediator.

946797_3

Prior to the mediation sessions, Co-Lead Counsel and the Settling Defendants submitted written statements and supporting materials to the mediator, briefing him on the complicated legal and factual issues of the case.  The mediation process was difficult, complex, and always at arm's length.

After formal mediation was unsuccessful, Co-Lead Counsel engaged in individual, informal settlement negotiations with Bain Capital and then Goldman.  Soon thereafter, the Parties negotiated a separate Memorandum of Understanding as to Bain Capital and then as to Goldman, and proceeded to negotiate the final terms of the Settlement Agreements and related exhibits, resulting in the proposed Settlements.

As this litigation is at an advanced stage, the Parties have conducted their own significant investigation and evaluation of the relevant laws and facts necessary to assess the strengths and weaknesses of Named Plaintiffs' claims and the Settling Defendants' defenses.  Based on these investigations, the Parties have independently concluded that entering into the proposed Settlements is in their best interests.

## III.     SUMMARY OF THE PROPOSED SETTLEMENTS

### A.      The Settlement Class

In connection with preliminary approval, Named Plaintiffs request that the Court certify the following Settlement Class, pursuant to Rule 23(a) and Rule 23(b)(3) for the purpose of settlement only:

> All persons or entities who sold or exchanged their common stock of (1) AMC Entertainment Inc., (2) SunGard Data Systems Inc., (3) Aramark Corporation, (4) Kinder Morgan, Inc., (5) HCA Inc., (6) Freescale Semiconductor, Inc., (7) Harrah's Entertainment, Inc., or (8) TXU Corp., as part of the leveraged buyout of each of the preceding target companies.  Excluded from the Settlement Class are the Court and any members of the Court's immediate family; the Defendants, including their predecessors, successors, and affiliates as well as their current and former directors, managers, partners, officers, and employees; and the directors and officers of each target company at the time of the LBO, provided that the foregoing exclusion shall not cover "Goldman Sachs Investment Vehicles," which for these purposes

shall mean any investment company or pooled investment fund, including, but not limited to, mutual fund families, exchange-traded funds, fund of funds and hedge funds, in which Goldman Sachs has or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor, but are not managed by Goldman Sachs' Merchant Banking Division and of which Goldman Sachs or any of its respective affiliates is not a majority owner or does not hold a majority beneficial interest.

## B.    Settlement Consideration

### 1.    Monetary Relief

The proposed Settlements require Bain Capital and Goldman to make cash payments for the benefit of Settlement Class Members.  Specifically, Bain Capital has agreed to pay fifty-four million dollars ($54,000,000), and Goldman has agreed to pay sixty-seven million dollars ($67,000,000) – the amounts of which will be paid into two separate "qualified settlement funds" – the Bain Capital Settlement Fund and the Goldman Settlement Fund – no later than thirty (30) business days after the signing of the Notice Order.  These funds will then be invested in U.S. Government-backed securities so they can earn interest pending distribution.

The funds will be distributed in reasonable and equitable fashion to Settlement Class Members, based on the volume of shares they sold or exchanged in the Eight Deals at the time of the buyouts, pursuant to a fair, adequate and reasonable plan of allocation, after the payment of all notice and claims administration costs, any attorneys' fees, expenses and service awards, and related fund taxes.  Co-Lead Counsel will select a qualified third party to oversee the settlement claims process and dissemination of notice, locate potential Settlement Class Members, and administer and distribute the amounts in each Settlement Fund.  The Settling Defendants will have no involvement in reviewing or challenging the claims submitted.

### 2.    Cooperation in the Prosecution of Claims

In addition to the foregoing monetary consideration, Bain Capital and Goldman have agreed to cooperate in the prosecution of Named Plaintiffs' claims against any and all Non-Settling

946797_3

Defendants in certain respects relating to the authenticity and admissibility of Goldman Sachs and Bain Capital documents. Specifically, in the event necessary for any briefing, hearing or trial against any Non-Settling Defendant regarding the claims in the Action, the Settling Defendants agree to engage in reasonable, good faith efforts to timely provide declarations sufficient to establish, to the extent that they can provide such foundation, the authenticity, including under F.R.E. 901, and admissibility, including under F.R.E. 803 or 801(d)(2), of a reasonable number of documents that Named Plaintiffs specifically identify with reasonable advance notice. If counsel for the Non-Settling Defendants object in whole or in part to the sufficiency of the declaration, or if the trial court determines the declaration in whole or in part is not sufficient to admit specified documents, then the Settling Defendants agree to provide, without need for service of process, a witness qualified to testify as to the authenticity and admissibility of such documents produced by the Settling Defendants in the Action.

### C.      Release of Claims

In return for the above consideration, Named Plaintiffs and the Settlement Class Members have agreed to release all Released Claims[5] against the Settling Defendants and the Releasees.[6]

---

[5]   "Released Claims," as defined by the Settlement Agreements, include any and all allegations, claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether in law or equity or arising under constitution, statute, regulation, ordinance, contract or otherwise, direct or indirect, whether known or unknown, foreseen or not foreseen, or present or contingent, for any injury, damage or loss of any kind whatsoever, including but not limited to compensatory damages, consequential damages, incidental damages, statutory liquidated damages, exemplary damages, punitive damages, costs, expenses, interest, and attorneys' fees, which they ever had, now have or may in the future have, own, or claim existing as of the date of the Settlement Agreements that (a) were brought or could have been brought in this Action and/or (b) concern the AMC, Aramark, Freescale, Harrah's, HCA, Kinder Morgan, SunGard, and/or TXU transactions.

[6]   "Releasees" includes Bain Capital; the predecessors, successors and assigns of Bain Capital; and each and all of Bain Capital's past, present, and future direct and indirect parent entities,

946797_3

**D.      Entry of Final Judgment Orders**

Upon determination by the Court that the proposed Settlements are fair, reasonable, adequate, and in the best interests of the Settlement Class, the Parties will request the Court to enter the Final Judgment Orders.[7]

**E.      Fee and Expense Applications**

Co-Lead Counsel may submit an application or applications ("Fee and Expense Applications") for distributions to them from the Settlement Funds for: (a) an award of attorneys' fees in the amount of 27.5% of the Settlement Funds; plus (b) payment of expenses of up to $10,000,000.  In addition, each Named Plaintiff may seek a service award in connection with the litigation at its conclusion.

## IV.      CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Before preliminarily determining whether the proposed Settlements are fair, the Court must determine whether to certify the Settlement Class for settlement purposes.  *Hochstadt v. Boston*

---

subsidiaries, affiliates, partnerships, general partners, limited partners (who are not a Non-Settling Defendant or Non-Settling Defendants), shareholders, investors (however denominated), investment funds that it or any of its affiliates managed or advised and such funds' respective affiliates, joint ventures and joint venturers (except joint ventures or joint venturers with respect to the transactions identified in the Settlement Class definition above), members, officers, directors, managers, managing directors, employees, contractors, consultants, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers, trustees, trustors, agents, attorneys, professionals, supervisors, partners, heirs, executors, administrators, assigns, or controlling persons.  "Releasees" also includes Goldman Sachs, and to all of its respective past, present and future, direct and indirect parent entities, subsidiaries, related entities and affiliates, partnerships, investor funds, and their respective general partners, limited partners, principals, shareholders, investors (however denominated), joint ventures, members, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers, trustees, trustors, agents, attorneys, professionals, predecessors, successors, assigns, insurers, heirs, executors, administrators and any controlling person thereof.  "Releasees" excludes any other Non-Settling Defendant ever named in this Action.

[7]      The [Proposed] Rule 54(b) Final Judgment Orders as to Bain Capital and Goldman are Exhibits D and E of the Appendix submitted herewith.

*Scientific Corp.*, 708 F. Supp. 2d 95, 101 (D. Mass. 2010). When "'confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997)). The law favors class action settlements. *In re Lupron(R) Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)).

Under the terms of the proposed Settlements, the Parties have agreed for the sole purpose of the Settlements and without an adjudication of the merits, to the certification of the Settlement Class. To obtain class certification, a plaintiff must establish the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation and demonstrate that the action may be maintained under Rule 23(b)(1), (2), or (3). *Hochstadt*, 708 F. Supp. 2d at 102 (citing *Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32, 38 (1st Cir. 2003)). Here, Named Plaintiffs assert that the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) have been satisfied. As set forth in their Memorandum in Support of Motion for Class Certification (which Named Plaintiffs incorporate by reference herein) (*see* Dkt. No. 928), Named Plaintiffs submit that:

(A)    **Numerosity:**  The proposed Settlement Class is so numerous that joinder of all members is impracticable as there were thousands of investors who sold or exchanged shares of stock in the Eight Deals (Dkt. No. 928, at 11-13);

(B)    **Commonality/Predominance of Common Issues:**  There are questions of law or fact common to the Settlement Class which predominate over any questions solely affecting individual Settlement Class Members, including: (i) liability questions under Section 1 of the Sherman Act; (ii) antitrust injury questions under Section 4 of the Clayton Act; and (iii) damages questions under Section 4 of the Clayton Act (*id*. at 13-15);

(C)    **Typicality:**  Based on Named Plaintiffs' allegations that the claims of each Settlement Class Member arise from the same alleged conspiracy and thus each has an incentive to demonstrate Settling Defendants' participation in that alleged conspiracy, the claims of Named

- 10 -

Plaintiffs are typical of the claims of the proposed Settlement Class they seek to represent (*id*. at 15-17);

**(D)      Adequacy:**  Named Plaintiffs do not have any interests antagonistic to, or in conflict with, the other Settlement Class Members and they will fairly and adequately represent and protect the interests of the other Settlement Class Members as they have retained counsel competent and experienced in class and antitrust litigation (*id*. at 17-27); and

**(E)      Superiority:**  Given that joinder of all Settlement Class Members is impracticable, certifying a settlement class is superior to all other available methods for the fair and efficient adjudication of this controversy since prosecuting separate actions by or against individual Settlement Class Members would create a risk of: (i) inconsistent or varying adjudications with respect to individual Settlement Class Members that would establish incompatible standards of conduct for Defendants; and (ii) adjudications with respect to individual Settlement Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests (*id*. at 27-43).

*See, e.g.*, *In re StockerYale, Inc. Sec. Litig.*, No. 1:05cv00177-SM, 2007 U.S. Dist. LEXIS 65575, at

*4 (D.N.H. Aug. 21, 2007) (concluding requirements of Fed. R. Civ. P. 23(a) and (b)(3) were

satisfied for purposes of preliminary settlement approval).  Accordingly, the Court should certify the

Settlement Class and appoint Named Plaintiffs as the Class Representatives.

## V.      PRELIMINARY APPROVAL OF THE SETTLEMENTS IS WARRANTED

Under Rule 23(e), the claims of a certified class may be settled "only with the court's

approval."  Fed. R. Civ. P. 23(e).  The purpose of requiring court approval of a class action

settlement is to ensure that the settlement is fair, adequate and reasonable.  *See In re Pharm. Indus.*

*Average Wholesale Price Litig.*, 588 F.3d 24, 32 (1st Cir. 2009).  In determining whether to approve

the proposed Settlements, the Court should follow the two-step process outlined in the *Manual for*

*Complex Litigation*.  *See Manual for Complex Litigation* ("*MCL*") §§21.632-21.635 (4th ed. 2004);

*see, e.g.*, *Hochstadt*, 708 F. Supp. 2d at 97 n.1, 106-08 (applying the analysis provided by the *MCL*

and preliminarily approving class action settlement).  Typically, this involves first determining

whether the settlement is entitled to preliminary approval (step one) and then if so, whether the

settlement should receive final approval (step two).

- 11 -

The first step of the process is where this case currently resides.  At this time, the Court is to review the proposed terms of the Settlements and make a "'preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'" *Hochstadt*, 708 F. Supp. 2d at 107 (quoting *MCL* §21.632).  The Court should examine whether the proposed Settlements are within the range of possible approval, bearing in mind that the Court, as well as any objectors, will have the opportunity to consider all of the relevant factors at a subsequent fairness hearing, which is the second step in the settlement approval process.  *See Hochstadt*, 708 F. Supp. 2d at 107-08.  Unless the preliminary evaluation discloses reasons to doubt the fairness of the proposed class settlement or other obvious deficiencies, the court should grant the motion for preliminary approval, and direct the preparation and dissemination of the notice of certification of the class, the proposed settlement, and the date of the final fairness hearing.  *See MCL* §21.633 & n.976; *Hochstadt*, 708 F. Supp. 2d at 106-07.

The second step of the process, provided the court has preliminarily approved the proposed settlement, is for the court to conduct a formal fairness hearing where arguments and evidence may be presented in support of, or in opposition to, the class settlement as being fair, reasonable, and adequate.  *See MCL* §21.634.  At the conclusion of the formal fairness hearing, the court will then determine whether final approval of the class settlement should be granted.  *Id.*

Here, the Court should preliminarily approve the parties' proposed Settlements.  It is well established in this Circuit that there is a "'clear policy in favor of encouraging settlements.'" *Durrett v. Housing Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (citation omitted).  While the parties still must show that the proposed Settlements are reasonable under Rule 23, the "court enjoys considerable range in approving or disapproving a class action settlement, given the generality of the standard." *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582

- 12 -

F.3d 30, 45 (1st Cir. 2009). Rule 23's reasonableness standard allows the court to balance the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement. *Id.* at 44. This task of balancing the benefits and costs is routinely accomplished by an evaluation of four factors. *See Hochstadt*, 708 F. Supp. 2d at 107. Specifically, a presumption of fairness attaches to the court's determination to preliminarily approve a class settlement "'when the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Lupron(R) Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (citation omitted). For the reasons set forth below, these four factors weigh in favor of preliminary approval of the proposed Settlements.

### A. The Settlement Negotiations Occurred at Arm's Length

In connection with the mediation process, Co-Lead Counsel conducted vigorous and extensive negotiations with Settling Defendants with a view toward achieving the best relief possible for the Settlement Class. Named Plaintiffs and the Settling Defendants were unable to reach agreement at the conclusion of formal mediation sessions. However, following that mediation, Co-Lead Counsel and the Settling Defendants continued settlement discussions and eventually reached agreements. At all times, the settlement negotiations – whether through formal or informal means – have been at arm's length.

The foregoing makes clear that the proposed Settlements were the product of adversarial and arm's-length negotiations. The Settlements were reached after over six years of contentious litigation, during which Named Plaintiffs have had their original claims scaled back by the Court. In fact, the efforts to settle this contentious litigation required the involvement of a highly-skilled

- 13 -

neutral mediator – here, a former district court judge with extensive experience in settling complex class actions – to reach an agreement to resolve the case against Settling Defendants.   The involvement of highly qualified mediators helps ensure the procedural fairness of negotiations. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *In re JPMorgan Chase Mortg. Modification Litig.*, No. 1:11-md-02290-RGS, 2014 U.S. Dist. LEXIS 65718, at *14 (D. Mass. May 7, 2014); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (JG) (JO), 2013 U.S. Dist. LEXIS 179340, at *30-*32 (E.D.N.Y. Dec. 13, 2013).

Co-Lead Counsel are highly experienced in complex class action litigation, and Bain Capital and Goldman are represented by well-respected law firms.   Clearly, none of the terms of the proposed Settlements are the product of fraud, collusion, or abandonment of the interests of the Settlement Class.   Rather, the proposed Settlements resulted from non-collusive negotiations between experienced counsel after formal mediation before a mediator.   Under these circumstances, the time spent and the efforts made by the parties are persuasive indicators that the proposed Settlements were the result of negotiations conducted at arm's length.   *See Hochstadt*, 708 F. Supp. 2d at 107.

## B.   Sufficient Discovery and Investigation Was Conducted

Co-Lead Counsel and Named Plaintiffs were well-informed about the strengths and weaknesses of their case at the time of settlement, due to their extensive efforts in litigating the case through discovery, mediation, summary judgment and class certification.   This strongly militates in favor of preliminary approval.

From the outset, Co-Lead Counsel spent a considerable amount of time and resources investigating and evaluating the facts and merits of the claims.   In connection with the filing of the initial complaint and the amended complaints thereafter, Co-Lead Counsel undertook a significant,

- 14 -

continuing investigation.  This investigation included a review of publicly available information concerning the Defendants and the claims asserted, including newspaper and research articles about the LBOs, target companies and private equity industry, online publications, SEC and other government filings and reports, as well as other publicly available information.  This investigation informed Co-Lead Counsel and Named Plaintiffs about the strengths and weaknesses of their claims, particularly with respect to issues of antitrust liability, causation and damages relating to Bain Capital and Goldman.  The investigation also guided Co-Lead Counsel and Named Plaintiffs on effectively conducting the settlement negotiations and whether the proposed settlement terms were appropriate.

Co-Lead Counsel gained an even more advanced and developed understanding of the Parties' positions and the strengths and weaknesses of the litigation through their participation in protracted discovery and their extensive briefing of the motions to dismiss and summary judgment issues.  Co-Lead Counsel took discovery on a total of 27 complex transactions across three different phases of discovery, yielding more than 13 million pages of discovery and the depositions of more than 50 witnesses, some of whom were executives with Bain Capital and Goldman.  Beginning in July 2012, Defendants filed multiple motions for summary judgment, during which the Parties submitted over 1,700 pages of briefing, over 2,500 exhibits and participated in a two-day hearing on all summary judgment motions on December 18 and 19, 2012.  The Court issued its summary judgment decisions on March 13, 2013, June 20, 2013, July 18, 2013, August 29, 2013 and November 22, 2013, in which it granted in part and denied in part Defendants' various motions.  These proceedings further informed Co-Lead Counsel and Named Plaintiffs as to the strengths and weaknesses of the case.

Given this extensive information, developed and gathered during the six years that this litigation has been pending, Named Plaintiffs and their counsel were able to fully evaluate the merits

- 15 -

of the claims and the risks of continued litigation, and make an intelligent judgment about settlement. *See Hochstadt*, 708 F. Supp. 2d at 107. Named Plaintiffs therefore recognize that the continued prosecution of the claims against Bain Capital and Goldman will be subject to significant hurdles, including the burdens and risk of losing the class certification motion (and any accompanying interlocutory appeal under Rule 23(f)), upcoming summary judgment briefing, and establishing liability, causation, and damages at trial. Named Plaintiffs recognize that they will face additional uncertainty at trial because the case involves complicated issues of causation and damages that will likely be the subject of a highly contentious "battle of the experts." There is no way to predict with certainty which expert testimony or methodology might be accepted by the jury or which might be rejected as speculative or unreliable. Finally, even if this case were certified for class treatment, proceeded to trial, and Named Plaintiffs prevailed, Defendants certainly could appeal any judgment favorable to a class, delaying further any possible recovery to Settlement Class Members.

The proposed Settlements, however, eliminates the risks and uncertainties of continued litigation against Bain Capital and Goldman, while providing a certain and prompt recovery to Settlement Class Members. Indeed, the Settlements require Bain Capital and Goldman to pay the substantial cash amounts of $54,000,000 and $67,000,000, respectively, for the benefit of Settlement Class Members. Given the substantial nature of the relief and the uncertainties of protracted litigation, the Settlements are unquestionably within the range of possible approval.

### C.      The Proponents of the Settlements Are Experienced in Similar Litigation

This Action has been litigated by experienced and competent parties and counsel on both sides of the case. Co-Lead Counsel here, Robbins Geller Rudman & Dowd LLP, Robins, Kaplan,

Miller & Ciresi, L.L.P., and Scott + Scott LLP, are well known for their experience and success in complex antitrust and class action litigation.

Co-Lead Counsel were and are currently counsel in numerous complex, antitrust class actions similar to this litigation. Indeed, Co-Lead Counsel are very experienced in litigating actions like this litigation. Notably, Co-Lead Counsel were involved in the prosecution and ultimate resolution of the *Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-MD-1720 (JG) (JO), the largest antitrust settlement in history. Likewise, defense counsel have an abundance of experience and have been involved in numerous large class action cases such as this litigation. That such well-informed parties and counsel, operating at arm's length and after hard-fought litigation and settlement negotiations, endorse the Settlements as being fair, reasonable and adequate, militates in favor of granting preliminary approval of the Settlements.

### D.      Number of Objections

Since the notice to the Settlement Class has not yet been issued, this factor can only be assessed preliminarily.[8] *See Hochstadt*, 708 F. Supp. 2d at 108. Named Plaintiffs are unaware of any opposition to the proposed Settlements.

Nonetheless, Named Plaintiffs have actively participated in the litigation and approved the decision to enter into the Settlements. Moreover, counsel on both sides have weighed the costs, risks and delay associated with continuing litigation against the benefits of settlement as reflected in the Settlements. Co-Lead Counsel believe that settlement at this time, as provided in the Settlements, is in the best interests of Named Plaintiffs and Settlement Class Members since it confers substantial benefits upon the Settlement Class while eliminating: (i) the uncertainty of future relief after

---

[8]     In the event any objections are received after notice is disseminated, those objections will be addressed by Co-Lead Counsel in connection with the motion for final approval of the Settlements.

protracted and expensive litigation, including the difficulties of proving liability, causation and damages against Bain Capital and Goldman under the Sherman Act and Clayton Act and the possible defenses to such claims; and (ii) the risk that Named Plaintiffs may not ultimately prevail and thus may not secure any relief for the Settlement Class.

Under these circumstances, the Court should preliminarily approve the proposed Settlements and instruct notice to be issued to the Settlement Class.

## VI.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND MANNER OF CLASS NOTICE

Under Rule 23(e)(1), the Court "must direct notice in a reasonable manner to all class members who would be bound" by the proposed Settlements.  Fed. R. Civ. P. 23(e)(1).  Due process requires that Settlement Class Members be apprised of their rights with respect to the proposed Settlements, be provided with enough information to make an informed decision, and be afforded a full and fair opportunity to participate in the proceedings convened to determine whether the proposed Settlements should be given final approval.  *See Bennett v. Roark Capital Grp., Inc.*, No. 2:09-cv-00421-GZS, 2011 WL 1627939, at *2 (D. Me. Apr. 27, 2011).  Here, the proposed form and manner of the Notices satisfy these requirements.

As more fully detailed in the proposed Notice Order, Co-Lead Counsel will cause the Mail Notice (Appendix, Exhibit F) to be mailed to all identifiable and potential members of the Settlement Class.   The Mail Notice directs Settlement Class Members to the websites of the Claims Administrator and Co-Lead Counsel for copies of all settlement documents.  A summary notice (Appendix, Exhibit G) will also be published once in the national edition of *The Wall Street Journal*. This proposed method of giving notice to Settlement Class Members is appropriate because it is "the best notice practicable under the circumstances" and will provide "due and sufficient notice to all persons entitled thereto."  *StockerYale*, 2007 U.S. Dist. LEXIS 65575, at *6.

- 18 -

946797_3

Moreover, the content of the Notices include the general terms of the Settlements as set forth in the respective Settlement Agreements, the proposed Plan of Allocation, the date of the Final Approval Hearing, and other details.  The Notices advise recipients that they have the right to exclude themselves from the proposed Settlements, or to object to any aspect of the proposed Settlements.  The Notices also provide recipients with the contact information for the Claims Administrator and Co-Lead Counsel.  Accordingly, the proposed Notices provide Settlement Class Members with all information required by Rule 23(e) and due process.  Named Plaintiffs therefore respectfully request that the Court direct that Settlement Class Members be given notice of the pendency of this Action and the proposed Settlements in the forms and methods set forth in Exhibits F and G.

## VII.    APPOINTMENT OF CO-LEAD COUNSEL

In accordance with Rule 23(g), Named Plaintiffs respectfully request the appointment of the firms of Robbins Geller, Robins, Kaplan, and Scott + Scott, as Co-Lead Counsel.  The Settling Defendants do not oppose that request.  In appointing class counsel, it is appropriate for the Court to consider the following factors: "(i) the work that counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  In light of the comprehensive investigation, litigation, and settlement efforts undertaken by these firms, as described herein, combined with their extensive experience, knowledge and firm resources, the appointment of Robbins Geller, Robins, Kaplan, and Scott + Scott, as Co-Lead Counsel, is fully warranted.

## VIII.   PROPOSED SCHEDULE OF EVENTS

- 19 -

Provided that the Court grants preliminary approval to the proposed Settlements, Named Plaintiffs respectfully request that the Court set a schedule of events to govern the remaining procedural aspects of the proposed Settlements, subject to the Court's convenience as follows:

| | |
|---|---|
| Notice mailed to Settlement Class Members | 30 calendar days after entry of the Notice Order ("Notice Date") |
| Summary Notice published | Within 30 calendar days after entry of the Notice Order |
| Deadline for filing papers in support of the Settlements, Plan of Allocation, and request for an award of attorneys' fees and expenses | 60 calendar days prior to the Final Approval Hearing |
| Deadline for supplemental filing of the Plan of Allocation | 15 calendar days after the Notice Date |
| Deadline for filing objections to the proposed Settlements | 60 calendar days after the Notice Date |
| Deadline for filing reply papers in support of the proposed Settlements | 14 calendar days prior to the Final Approval Hearing |
| Final Approval Hearing | At the Court's convenience, on or after 105 calendar days after the Notice Date |

## IX.   CONCLUSION

For the foregoing reasons, the proposed Settlements warrant this Court's preliminary approval, and Named Plaintiffs respectfully request this Court enter the Notice Order directing that Notice be provided to Settlement Class Members through the forms and methods in Exhibits F and G of the Appendix submitted herewith, set a schedule of events to govern the remaining procedural aspects of the proposed Settlements, and grant such further relief as the Court deems just and reasonable.

DATED:  June 11, 2014               ROBBINS GELLER RUDMAN
                                                   & DOWD LLP


                                                   s/ DAVID W. MITCHELL
                                   _____
                                                   DAVID W. MITCHELL

- 20 -

PATRICK J. COUGHLIN (admitted *pro hac vice*)
RANDI D. BANDMAN (admitted *pro hac vice*)
SUSAN G. TAYLOR (admitted *pro hac vice*)
DAVID W. MITCHELL (admitted *pro hac vice*)
PHONG L. TRAN (admitted *pro hac vice*)655 West
Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

SCOTT + SCOTT LLP
DAVID R. SCOTT (admitted *pro hac vice*)
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Telephone:  860/537-5537
860/537-4432 (fax)

SCOTT + SCOTT LLP
CHRISTOPHER M. BURKE (admitted *pro hac vice*)
WALTER W. NOSS (admitted *pro hac vice*)
KRISTEN M. ANDERSON (admitted *pro hac vice*)
707 Broadway, 10th Floor
San Diego, CA  92101
Telephone:  619/233-4565
619/233-0508 (fax)

ROBINS, KAPLAN, MILLER &
   CIRESI L.L.P.
LISA A. FURNALD (BBO #631059)
800 Boylston Street, 25th Floor
Boston, MA  02199
Telephone:  617/267-2300
617/267-8288 (fax)

ROBINS, KAPLAN, MILLER &
   CIRESI L.L.P
K. CRAIG WILDFANG (admitted *pro hac vice*)
THOMAS J. UNDLIN (admitted *pro hac vice*)
STACEY P. SLAUGHTER (admitted *pro hac vice*)
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN  55402-2015
Telephone:  612/349-8500
612/339-4181 (fax)

- 21 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 11, 2014.

s/ DAVID W. MITCHELL
DAVID W. MITCHELL