# EXHIBIT B

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KIRK DAHL, et al., Individually and on Behalf of All Others Similarly Situated, | ) ) | Lead Case No. 1:07-cv-12388-WGY |
| | ) | |
| Plaintiffs, | ) ) | CLASS ACTION |
| | ) | |
| vs. | ) ) | SETTLEMENT AGREEMENT WITH THE GOLDMAN SACHS GROUP, INC. |
| | ) | |
| BAIN CAPITAL PARTNERS, LLC, et al., | ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |

This Settlement Agreement, dated June 10, 2014 (the "Agreement"), is entered into by and among Scott + Scott, Attorneys at Law, LLP, Robbins Geller Rudman & Dowd LLP, and Robins, Kaplan, Miller & Ciresi L.L.P., on behalf of plaintiffs Kirk Dahl, Police and Fire Retirement System of the City of Detroit, City of Omaha Police and Fire Retirement System, and Michael Wojno, as executor for the estate of Robert Zimmerman and all others similarly situated, on the one hand; and defendant The Goldman Sachs Group, Inc. (on behalf of its predecessors, successors, and all past and present subsidiaries, affiliates and investor funds) ("Goldman Sachs"), on the other hand. Goldman Sachs and Named Plaintiffs (as defined below) are referred to herein individually as a "Party" and collectively as the "Parties."

WHEREAS, the Parties, by and through their undersigned counsel, have reached an agreement-in-principle providing for the settlement and release and dismissal with prejudice of any and all claims that were asserted, or could have been asserted, by or on behalf of the Settlement Class (as defined below) against Goldman Sachs in or relating to *Dahl, et al. v. Bain Capital Partners, LLC, et al.*, Case No. 07-cv-12388-WGY, a putative class action that is pending in the United States District Court for the District of Massachusetts (the "Action");

WHEREAS, Named Plaintiffs allege that Goldman Sachs and the other Defendants participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of leveraged buyouts in excess of $2.5 billion ("LBOs"), announced between 2003 and 2007, to allocate deal outcomes and to purchase companies at artificially suppressed prices, depriving shareholders of a true and fair market value in violation of §1 of the Sherman Act, 15 U.S.C. §1;

WHEREAS, Named Plaintiffs have conducted an investigation into the facts and the law regarding the claims in the Action and believe that their claims are valid, but nevertheless recognize that there are material litigation risks associated with pursuing those claims and, therefore, have

- 1 -

concluded that resolving their claims against Goldman Sachs according to the terms set forth below

is in the best interests of Named Plaintiffs and the proposed Settlement Class;

WHEREAS, Goldman Sachs, despite its belief that it is not liable for the claims asserted and

that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid

further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to

obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with

finality all claims that have been or could have been asserted against Goldman Sachs, based on the

allegations of the Action, as more particularly set out below; and

WHEREAS, Goldman Sachs and Named Plaintiffs have negotiated all of the terms and

conditions of this Agreement at arm's length and all terms, conditions, and exhibits in their exact

form are material and necessary to this Agreement and have been relied upon by the Parties in

entering into this Agreement.

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth

herein and for other good and valuable consideration, it is agreed by and among the undersigned that

the Action be settled, compromised, and dismissed on the merits with prejudice as to Goldman Sachs

on the following terms and conditions, and incorporating the preceding clauses:

**A.    Definitions**

1.      For purposes of this Agreement, "LBO" or "leveraged buyout" is defined as a

leveraged buyout in excess of $2.5 billion announced between 2003 and 2007, as referenced in the

Fifth Amended Class Action Complaint for Violations of the Federal Antitrust Laws (the

"Complaint").

2.      For purposes of this Agreement, "Transaction" shall mean any of the LBOs of

(1) AMC Entertainment Inc., (2) SunGard Data Systems Inc., (3) Aramark Corporation, (4) Kinder

Morgan, Inc., (5) HCA Inc., (6) Freescale Semiconductor, Inc., (7) Harrah's Entertainment, Inc., or (8) TXU Corp., as referenced in the Fifth Amended Class Action Complaint for Violations of the Federal Antitrust Laws in the Action.

3.      For purposes of this Agreement, "Named Plaintiffs" is defined as Kirk Dahl, Police and Fire Retirement System of the City of Detroit, City of Omaha Police and Fire Retirement System, and Michael Wojno as executor for the estate of Robert Zimmerman.

4.      For purposes of this Agreement, "Settlement Class" is defined as all persons or entities who sold or exchanged their common stock of (1) AMC Entertainment Inc., (2) SunGard Data Systems Inc., (3) Aramark Corporation, (4) Kinder Morgan, Inc., (5) HCA Inc., (6) Freescale Semiconductor, Inc., (7) Harrah's Entertainment, Inc., or (8) TXU Corp., as part of the LBO for each of the preceding target companies.  Excluded from the Settlement Class are the Court and any members of the Court's immediate family; the Defendants, including their predecessors, successors, and affiliates as well as their current and former directors, managers, partners, officers, and employees; and the directors and officers of each target company at the time of the LBO, provided that the foregoing exclusion shall not cover "Investment Vehicles," which for these purposes shall mean any investment company or pooled investment fund, including, but not limited to, mutual fund families, exchange-traded funds, fund of funds and hedge funds, in which Goldman Sachs has or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor, but are not managed by Goldman Sachs' Merchant Banking Division and of which Goldman Sachs or any of its respective affiliates is not a majority owner or does not hold a majority beneficial interest.

5.      For purposes of this Agreement, the terms "Defendant" or "Defendants" shall mean, respectively, each and all named defendants in the Complaint.

939472_5

6.      For purposes of this Agreement, "Goldman Sachs Releasees" shall refer to Goldman Sachs, and to all of its respective past, present and future, direct and indirect parent entities, subsidiaries, related entities and affiliates, partnerships, investor funds, and their respective general partners, limited partners, principals, shareholders, investors (however denominated), joint ventures, members, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers, trustees, trustors, agents, attorneys, professionals, predecessors, successors, assigns, insurers, heirs, executors, administrators and any controlling person thereof, provided, however, that "Goldman Sachs Releasees" does not include any remaining Defendant in this Action.

7.      For purposes of this Agreement, "Goldman Sachs Releasors" shall refer to Goldman Sachs and shall include, to the full extent that Goldman Sachs has authority to bind them, all of its past and present, direct and indirect parent entities, subsidiaries, affiliates, partnerships and investor funds; all of their respective general partners, limited partners, principals, shareholders, investors (however denominated), joint ventures, members, officers, directors, employees, representatives, insurers, attorneys, predecessors, successors, heirs, executors and administrators; and all of their assigns.

8.      For purposes of this Agreement, "Goldman Sachs Released Claims" shall refer to any and all allegations, claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether in law or equity or arising under constitution, statute, regulation, ordinance, contract or otherwise, direct or indirect, whether known or unknown, foreseen or not foreseen, or present or contingent, for any injury, damage or loss of any kind whatsoever, including, but not limited to, compensatory damages, consequential

- 4 -

damages, incidental damages, statutory liquidated damages, exemplary damages, punitive damages, costs, expenses, interest, and attorneys' fees, that they ever had, now have or may in the future have, own, or claim existing as of the Effective Date (as defined below) that (a) were brought or could have been brought in this Action and (b) concern the Transactions.

9.      For purposes of this Agreement, "Plaintiff Releasors" shall refer to Named Plaintiffs and the Settlement Class and shall include, to the full extent that Named Plaintiffs and the Settlement Class have authority to bind them, all of their respective past and present, direct and indirect parent entities, subsidiaries, affiliates, partnerships and investor funds; all of their respective general partners, limited partners, principals, shareholders, investors (however denominated), joint ventures, members, officers, directors, employees, representatives, insurers, attorneys, predecessors, successors, heirs, executors and administrators; and all of their respective assigns.

10.      For purposes of this Agreement, "Plaintiff Releasees" shall refer to Named Plaintiffs and the Settlement Class, and to their respective past, present and future, direct and indirect parent entities, subsidiaries, related entities and affiliates, partnerships, investor funds, and their respective general partners, limited partners, principals, shareholders, investors (however denominated), joint ventures, members, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers, trustees, trustors, agents, attorneys, professionals, predecessors, successors, assigns, insurers, heirs, executors, administrators and any controlling person thereof.

11.      For purposes of this Agreement, "Plaintiffs Released Claims" shall refer to any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature, whether directly, representatively, derivatively or in any other capacity that the Goldman Sachs Releasors ever had, now has, or hereafter can, shall, or may have on account of, related to, or in any

- 5 -

way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any act or omission of Plaintiff Releasees concerning the institution, prosecution, assertion, settlement or resolution of the Action.

12.     For purposes of this Agreement, the "Settlement Fund" shall refer to the payment to be made by Goldman Sachs into an escrow account pursuant to this Agreement, plus all accrued interest thereon.

13.     For purposes of this Agreement, "Barred Claims" shall refer to (i) claims and claims over for contribution or indemnity (or any other claim or claim-over, however denominated on whatsoever theory) arising out of or related to the claims or allegations asserted by Named Plaintiffs in the Action on their own behalf and on behalf of the Settlement Class in the Action, or (ii) any other claim of any type, whether arising under state, federal, common, or foreign law, for which the injury claimed is that person's or entity's actual or threatened liability to Named Plaintiffs and/or any members of the Settlement Class in the Action.

14.     For purposes of this Agreement, "Co-Lead Counsel" shall refer to the following counsel for Named Plaintiffs:

> David R. Scott
> Christopher M. Burke
> Scott + Scott, LLP
> 707 Broadway, 10th Floor
> San Diego, CA 92101
>
> K. Craig Wildfang
> Thomas J. Undlin
> Robins, Kaplan, Miller & Ciresi, LLP
> 2800 LaSalle Plaza
> 800 LaSalle Avenue South
> Minneapolis, MN 55402

- 6 -

939472_5

Patrick J. Coughlin
David W. Mitchell
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

**B.     Approval of This Agreement and Dismissal of All Claims Against Goldman Sachs With Prejudice**

15.     The Parties and their counsel, respectively, shall use their best efforts to effectuate this Agreement and its purpose, and secure the prompt, complete, and final dismissal with prejudice of the Action as to the Goldman Sachs Releasees, but not as to any party, person, or entity that is not a Goldman Sachs Releasee.

16.     Named Plaintiffs shall submit to the Court (i) a motion for preliminary approval of the settlement and (ii) a motion for attorneys' fees and costs to be paid from the Settlement Fund in the manner described in paragraph 45 below.  The motion for preliminary approval shall include a proposed plan for the sending of notice to the Settlement Class within fifteen (15) days after an order of preliminary approval is entered, and establishing a period of sixty (60) days from the giving of such notice within which any member of the Settlement Class may:  (a) object to the settlement, (b) object to the request of Named Plaintiffs' counsel for fees and costs, or (c) request exclusion from the Settlement Class.  The motion for preliminary approval shall also request that any hearing on final approval of the settlement and any determination on the request for fees and costs be set for no earlier than forty-five (45) days from the final date for serving objections and that any reply briefs in support of the motion for final approval be filed fourteen (14) days prior to that hearing.

17.     The Parties agree that, subject to Court approval, notice of this settlement shall be directed to the Settlement Class as defined above.   The settlement claims process will be administered by an independent claims administrator selected by Co-Lead Counsel and approved by the Court.  Goldman Sachs will have no involvement in reviewing or challenging claims.  Goldman

- 7 -

Sachs has no responsibilities whatsoever for allocation and distribution of settlement proceeds, whether to Co-Lead Counsel, the claims administrator, or the Settlement Class. All costs of class notice and administration shall be paid out of the Settlement Fund, and the Settlement Fund shall be the sole source of payment of any costs of class notice and administration. Goldman Sachs will not object to the proposed notice or plan of allocation. The settlement will be non-recapture, *i.e.*, it is not a claims-made settlement. If the settlement is finally approved, there will be no reversion, and Goldman Sachs has no ability to seek or obtain the return of any of the Settlement Fund.

18.     The Parties shall jointly seek entry of an order and final judgment, the text of which the Parties shall agree upon. The terms of that order and final judgment will include, at a minimum, the substance of the following provisions:

(a)     certifying the Settlement Class pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure solely for the purpose of this settlement;

(b)     approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to Named Plaintiffs and the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure or other applicable law and directing its consummation according to its terms;

(c)     appointing Co-Lead Counsel in paragraph 14 as counsel for the Settlement Class and finding that Co-Lead Counsel adequately represent the Settlement Class;

(d)     approving finally the releases contained herein as fair, reasonable and fully enforceable;

(e)     as to the Goldman Sachs Releasees, (i) dismissing with prejudice the Action and all Goldman Sachs Released Claims, and (ii) providing that the claims of the Settlement Class

- 8 -

are forever discharged and released, without recovery of attorneys' fees and/or costs from Goldman Sachs;

(f)     containing bar order and judgment reduction provisions as set forth below in paragraphs 28 and 29;

(g)     reserving exclusive jurisdiction over this settlement and this Agreement, including the administration and consummation of this settlement, to the United States District Court for the District of Massachusetts;

(h)     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal with prejudice as to Goldman Sachs be finally entered; and

(i)     approving the payment of attorneys' fees, costs and service awards as awarded by the Court out of the Settlement Fund.

19.     Subject to the provisions of paragraph 45 below, this settlement shall become effective when the Court has entered an order and final judgment, including a Federal Rule of Civil Procedure 54(b) certification of finality, approving this Agreement under Federal Rule of Civil Procedure 23(e) and dismissing the Action with prejudice as to Goldman Sachs and when one of the following occurs: (a) if an appeal is taken, (i) the date of final affirmance on appeal of the order and final judgment, the expiration of the time for a petition for or a denial of a writ of certiorari to review the order and final judgment and, if certiorari is granted, the date of final affirmance of the order and final judgment following review pursuant to that grant; or (ii) the date of final dismissal of any appeal from the order and final judgment or the final dismissal of any proceedings on certiorari to review the order and final judgment; or (b) if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal from the order and final judgment (the "Effective Date").

20.     This Agreement shall be deemed executed as of the last date of signature by Goldman

Sachs and Co-Lead Counsel, and Co-Lead Counsel shall give notice to Goldman Sachs within three

(3) business days after this Agreement is deemed executed.  Neither the provisions of Rule 60 of the

Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. §1651, shall be taken into account

in determining the above-stated times. As of the date of execution of this Agreement, the Parties

shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded or

terminated except in accordance with paragraphs 46 and 47 of this Agreement.

21.     Neither this Agreement (whether or not it should become final) nor the final

judgment, nor any and all negotiations, documents, and discussions associated with such negotiation,

shall be deemed or construed to be an admission by, or form the basis of an estoppel by any Named

Plaintiff, Settlement Class member or third party against any Goldman Sachs Releasees, or evidence

of any violation of any statute or law or of any liability or wrongdoing whatsoever by any Goldman

Sachs Releasees, or of the truth of any of the claims or allegations contained in any complaint or any

other pleading filed by Named Plaintiffs, and evidence thereof shall not be discoverable, or used

directly or indirectly, in any way against any Goldman Sachs Releasees, whether in the Action or in

any other action or proceeding.  Neither this Agreement, nor any of its terms and provisions, nor any

of the negotiations or proceedings connected with it, nor any action taken to carry out this

Agreement by any of Named Plaintiffs or Goldman Sachs shall be referred to, offered into evidence,

or received in evidence in any pending or future civil, criminal or administrative action or

proceeding against any Goldman Sachs Releasees, except in a proceeding to enforce this Agreement,

or to defend against the assertion of Released Claims, or as otherwise required by law.

939472_5

### C.   Release, Discharge, and Covenant Not to Sue

22.   In addition to the effect of any final judgment entered in accordance with this Agreement, upon the Effective Date as set out in paragraph 19 of this Agreement, and in consideration of payment of the Settlement Amount as specified in paragraph 27 of this Agreement, and for other valuable consideration, the Plaintiff Releasors shall be deemed to have released, acquitted and discharged all Goldman Sachs Releasees from any and all Goldman Sachs Released Claims.  The Goldman Sachs Released Claims shall not affect the rights and claims of Named Plaintiffs and the Settlement Class against any entity or person other than the Goldman Sachs Releasees.  Without limiting the foregoing release, Plaintiff Releasors covenant and agree that, upon or after the Effective Date, they shall not seek to establish liability against any Goldman Sachs Releasee based, in whole or in part, upon any of the Goldman Sachs Released Claims or conduct at issue in the Goldman Sachs Released Claims or institute, bring or commence any action or use any evidence or facts in any court, arbitration, or other forum against the Goldman Sachs Releasees with respect to the Goldman Sachs Released Claims, except as necessary to enforce this settlement. Named Plaintiffs and the Settlement Class agree not to appeal any prior orders in this Action as to the Goldman Sachs Releasees.

23.   In addition to the effect of any final judgment entered in accordance with this Agreement, upon the Effective Date as set out in paragraph 19 of this Agreement, and in consideration of the release, discharge and covenant not to sue as specified in paragraph 22 of this Agreement, and for other valuable consideration, the Goldman Sachs Releasors shall be deemed to have released, acquitted, and discharged all Plaintiff Releasees from any and all Plaintiffs Released Claims.  Without limiting the foregoing release, the Goldman Sachs Releasors covenant and agree that, upon or after the Effective Date, they shall not seek to establish liability against any Plaintiff

- 11 -

Releasee based, in whole or in part, upon any of the Plaintiffs Released Claims or conduct at issue in the Plaintiffs Released Claims.  With respect to any member of the Settlement Class who requests exclusion from the Settlement Class, the Goldman Sachs Releasors reserve all of their legal rights and defenses.

24.     The Parties contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and that an injunction may be obtained, preventing any action from being initiated or maintained in any case sought to be prosecuted by or on behalf of any members of the Settlement Class with respect to the Goldman Sachs Released Claims.

25.     In addition to the provisions of paragraphs 22, 23 and 24 of this Agreement, upon the Effective Date of this settlement, the respective Releasors shall be deemed to have expressly waived, released and relinquished, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by Section 1542 of the California Civil Code or any federal, state or foreign law, rule, regulation or common law doctrine that is similar, comparable, equivalent or identical to, or that has the effect of, Section 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR**;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to §1542 of the California Civil Code.  Each Releasor and Releasee may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of paragraphs 22, 23 and 24 of this Agreement, but each Releasor and Releasee hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any

- 12 -

known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of paragraphs 22, 23 and 24 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

26. In consideration for the settlement and dismissal of Named Plaintiffs' and the Settlement Class's claims against Goldman Sachs in the Action, Goldman Sachs agrees to provide Named Plaintiffs and the Settlement Class with the following cooperation in the prosecution of their claims in the Action against any and all remaining Defendants:

(a) In the event necessary for any briefing, hearing or trial against any Defendant regarding the claims in the Action, Goldman Sachs agrees to engage in reasonable, good faith efforts to timely provide a declaration sufficient to establish, to the extent that Goldman Sachs can provide such foundation, the authenticity, including under Federal Rule of Evidence 901, and admissibility, including under Federal Rule of Evidence 803 or 801(d)(2), of a reasonable number of documents that Named Plaintiffs specifically identify with reasonable advance notice. Named Plaintiffs and the Settlement Class agree to be reasonable in their selection of documents. If counsel for the remaining Defendants object in whole or in part to the sufficiency of the declaration, or if the Court determines the declaration in whole or in part is not sufficient to admit specified documents, then Goldman Sachs agrees to provide without need for service of process a witness qualified to testify as to the authenticity and admissibility of such documents produced by Goldman Sachs in the Action.

(b) In the event that this settlement fails to receive final approval by the Court, or in the event that it is terminated by either Party under any provision herein, the Parties agree that neither Named Plaintiffs, the Settlement Class nor Co-Lead Counsel shall be permitted to introduce into evidence, at any hearing, or in support of any motion, opposition or other pleading in this Action

- 13 -

or in any other federal or state action alleging a violation of any antitrust or unfair competition law relating to the subject matter of this Action, the sworn or unsworn oral or written statements or certifications provided by Goldman Sachs, its counsel, or any individual made available by Goldman Sachs pursuant to this paragraph.

(c)      In the event Goldman Sachs fails to perform any cooperation obligations to which it agrees, the sole remedy shall be to seek specific performance, and this Agreement shall be otherwise unaffected.  Any dispute concerning the cooperation obligations of the Parties shall be reduced to writing before a Party seeks relief from the Court.  In addition, Goldman Sachs shall have the right to assert the attorney-client privilege, attorney-work product protection, or applicable privacy laws regardless of its cooperation obligations.

### D.      Settlement Amount

27.      Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, Goldman Sachs will pay sixty-seven million U.S. dollars ($67,000,000 USD) (the "Settlement Amount").  The Settlement Amount will be deposited into an escrow account controlled jointly by Scott + Scott, LLP, Robins, Kaplan, Miller & Ciresi L.L.P., and Robbins Geller Rudman & Dowd LLP not later than thirty (30) business days after the Court's preliminary approval of this settlement.  Payment shall be made into the account listed as "Goldman Sachs Settlement Fund."  Named Plaintiffs and the Settlement Class shall look solely to the Settlement Fund for settlement and satisfaction against the Goldman Sachs Releasees for all Goldman Sachs Released Claims, as well as applications for attorneys' fees and costs, and shall have no other recovery against Goldman Sachs or any other Goldman Sachs Releasee.  Co-Lead Counsel shall provide Goldman Sachs reasonable documentation, such as a W-9 form, to facilitate such payment.

### E.   Bar Order and Judgment Reduction

28.   The Parties agree that the final judgment shall (a) permanently bar, enjoin and restrain any person or entity from commencing, prosecuting, or asserting any Barred Claims against any of the Goldman Sachs Releasees, whether as claims, cross-claims, counterclaims, third-party claims, or otherwise, and whether asserted in the Action or any other proceeding, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere; and (b) permanently bar, enjoin and restrain the Goldman Sachs Releasees from commencing, prosecuting, or asserting any Barred Claims against any person or entity, whether as claims, cross-claims, counterclaims, third-party claims or otherwise, and whether asserted in the Action or any other proceeding, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency or other forum in the United States or elsewhere (the "Bar Order").

29.   The Parties also agree that the final judgment shall provide that any final verdict or judgment that may be obtained by or on behalf of the Settlement Class or a member of the Settlement Class against any person or entity subject to the Bar Order described in paragraph 28 shall be reduced as provided by applicable law.

### F.   Escrow Account

30.   The Escrow Account referenced in paragraph 25 will be established at The Huntington National Bank, with such bank as escrow agent ("Escrow Agent") subject to escrow instructions as agreed by the Parties.

31.   The Escrow Agent shall invest the Settlement Amount deposited in short term (up to one year maturity) United States Agency or Treasury Securities or other instruments backed by the full faith and credit of the United States Government or an Agency thereof, or fully insured by the

939472_5

United States Government or an Agency thereof and shall reinvest the proceeds of these instruments

as they mature in similar instruments at their then-current market rates.  All risks related to the

investment of the Settlement Fund in accordance with the investment guidelines set forth in this

paragraph shall be borne by the Settlement Fund.

32.     The Escrow Agent shall not disburse the Settlement Fund or any portion thereof

except as provided by this Agreement, by an order of the Court, or with the written agreement of

counsel for Goldman Sachs.

33.     Subject to further order(s) and/or directions as may be made by the Court, or as

provided in this Agreement, the Escrow Agent is authorized to execute such transactions as are

consistent with the terms of this Agreement.

34.     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia*

*legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such

funds shall be distributed or returned to Goldman Sachs pursuant to this Agreement and/or further

order(s) of the Court.

35.     Without further order of the Court, the Settlement Fund may be used by Co-Lead

Counsel to pay reasonable costs and expenses actually incurred in connection with providing notice

to the Settlement Class, locating members of the Settlement Class, soliciting claims, assisting with

the filing of claims, administering and distributing the Settlement Fund to members of the Settlement

Class, processing proof of claim forms, and paying escrow fees and costs, if any ("Notice and

Administration Expenses").

36.     The Parties and the Escrow Agent agree to treat the Settlement Fund as being at all

times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1.  In addition, the

Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions

939472_5

of paragraphs 30-38, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Co-Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

37.     For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be Co-Lead Counsel. Co-Lead Counsel shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in paragraph 36 hereof) shall be consistent with paragraphs 30 through 38 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in paragraph 38 hereof.

38.     All (a) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Goldman Sachs Releasees or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (b) expenses and costs incurred in connection with the operation and implementation of paragraphs 30 through 38 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this paragraph 38) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Goldman Sachs Releasees and their counsel shall have no liability or responsibility for any Taxes or Tax

- 17 -

Expenses.  The Settlement Fund shall indemnify and hold each of the Released Persons and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to members of the Settlement Class any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)).  The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of paragraphs 30 through 38.

39.     In the event that this Agreement is not approved or this Agreement is terminated, canceled, or fails to become effective for any reason, the Settlement Fund less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing in connection with the settlement provided for herein, shall be refunded to Goldman Sachs.

### G.     Settlement Administration, Costs of Notice, and Interim Expenses

40.     Co-Lead Counsel will select a third party to act as a qualified settlement administrator to assist with the settlement claims process and administration of notice to the Settlement Class, locating potential members of the Settlement Class, and administering and distributing the Settlement Fund ("Settlement Administrator").

41.     If Co-Lead Counsel enter into any other settlements on behalf of the Settlement Class before notice of this Agreement is given to the Settlement Class, Co-Lead Counsel have the option in their sole discretion to provide a single notice to class members of such settlements.  Further, in the

- 18 -

event that a litigation class is certified as to some or all of the remaining Defendants before notice of this Agreement is given to the Settlement Class, Co-Lead Counsel may, in their sole discretion, choose to consolidate the notice of this Agreement with the notice to the litigation class.

### H.    Payment of Expenses

42.    Costs incurred in providing any notice of the settlement to the Settlement Class and in claims administration may be paid from the Settlement Fund, which amounts shall not be recoverable by Goldman Sachs in the event that this settlement does not become final, is terminated by Goldman Sachs, or is rescinded by either Party.  After this Agreement becomes final within the meaning of paragraph 19, all court ordered disbursements, including attorneys' fees and litigation costs, may be made from the Settlement Fund.  Other than as set forth in this paragraph 42, neither Goldman Sachs nor any of the other Goldman Sachs Releasees under this Agreement shall be liable for any of the costs or expenses related to the Action, including, without limitation, attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for class administration and costs.

### I.    The Settlement Fund

43.    After this Agreement becomes final within the meaning of paragraph 19, the Settlement Fund shall be distributed in accordance with plans for direct distributions, cy pres, or as otherwise permitted by law, all to be submitted at the appropriate time by Named Plaintiffs and approved by the Court.

44.    It is contemplated that Named Plaintiffs' counsel will seek attorneys' fee award(s), payment of costs and expenses (including expert witness fees and expenses), and service awards to Named Plaintiffs.  Goldman Sachs shall take no position on any application for attorneys' fees,

939472_5

payment of costs and expenses or Named Plaintiff service awards to the extent that the application is not inconsistent with that provided for pursuant to paragraph 42. After the entry of any order awarding attorneys' fees, payment of costs and expenses, or Named Plaintiff service awards, the Escrow Agent may, pursuant to paragraph 27, establish and maintain sub-accounts to hold such awards for payment.

45.    (a)    The procedure for and the allowance or disallowance by the Court of the applications for awards of attorneys' fees, the payment of costs and expenses and any service awards to Named Plaintiffs is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of this Agreement, and any order or proceeding relating to the fee application(s) or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement. Except as expressly provided in this Agreement, Goldman Sachs, under this Agreement, shall not have any responsibility for, or interest in, or liability whatsoever with respect to any payment to counsel for Named Plaintiffs of any fee award in the Action. Goldman Sachs, under this Agreement, shall not have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among counsel for Named Plaintiffs, and/or any other person or entity who may assert some claim thereto, of any fee award that the Court may make in the Action.

(b)    Subject only to subparagraphs 45(a) and (c), attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any filed objections to the settlement, to any award of attorneys' fees and expenses or to any service award, or to any actual, or potential for, appeal therefrom, or collateral attack on the settlement or any part of it, subject to Co-Lead Counsel's obligation to make a full repayment to the Settlement Fund if this Agreement does not become final pursuant to paragraph 19 of this

- 20 -

Agreement, or if this Agreement is rescinded pursuant to paragraphs 46 and 47 of this Agreement or to make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal and/or further proceeding on remand, or successful collateral attack, the fee or cost award is reduced or reversed.

**J.     Termination and Rescission**

46.     (a)     Within fourteen (14) business days after the end of the period to request exclusion from the Settlement Class, Co-Lead Counsel will cause copies of timely requests for exclusion from the Settlement Class to be provided to counsel for Goldman Sachs.

(b)     Goldman Sachs shall, in its sole discretion, have the option to terminate this Agreement upon the occurrence of one or more conditions relating to putative members of the Settlement Class who have timely exercised their rights to be excluded from the Settlement Class ("Opt Outs"), as set forth in a separate agreement ("Supplemental Agreement") executed between Co-Lead Counsel and Goldman Sachs.

47.     If the Court refuses to approve this Agreement or any material part hereof, or if such approval is materially modified or set aside on appeal, or if the Court does not enter the final judgment provided for in paragraph 18 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then within thirty (30) days thereafter, Goldman Sachs and Named Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.  Written notice of the exercise of any such right to rescind shall be made by the rescinding party to counsel to either Named Plaintiffs or Goldman Sachs as the case may be.  A modification or reversal on appeal of any amount of the fees for counsel for Named Plaintiffs shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

48.    In the event that this Agreement does not become final, then this Agreement shall be of no force or effect (except for this paragraph and paragraph 21) and any and all parts of the Settlement Fund caused to be deposited by Goldman Sachs in the Escrow Account(s), including all interest earned on such accounts, shall be returned forthwith to Goldman Sachs less only disbursements made pursuant paragraphs 35 and 38 relating to notice and administration costs and tax expenses, or pursuant to Court order in accordance with this Agreement.  The Parties expressly reserve all of their rights if this Agreement does not become final.  Further, and in any event, the Parties agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with its negotiation, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Goldman Sachs or the Goldman Sachs Releasees, or of the truth of any of the claims or allegations contained in the Complaint or any other pleadings filed by Named Plaintiffs in the Action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding against Goldman Sachs or the Goldman Sachs Releasees.

### K.    Miscellaneous

49.    This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Agreement, for a complete resolution of the Goldman Sachs Released Claims with respect to each Goldman Sachs Releasee as provided in this Agreement.

50.    This Agreement does not settle or compromise any claim by Named Plaintiffs and the Settlement Class against any Defendant or alleged co-conspirator other than the Goldman Sachs Releasees.  All rights against such other Defendants or alleged co-conspirators are specifically reserved by Named Plaintiffs and the Settlement Class.

- 22 -

51.     Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement, is or may be deemed to be or may be used as an admission of, or evidence of, (i) the validity of any claim or defense; or (ii) the appropriateness or inappropriateness of any class or other representational capacity whether contemporaneously with this Agreement or at any time in the future.

52.     Except as otherwise set forth herein, this Agreement shall not affect whatever rights the Plaintiff Releasors or any of them may have to participate in or benefit from any relief or recovery as part of a judgment or settlement in this Action against any other party named as a Defendant (other than Goldman Sachs).

53.     The United States District Court for the District of Massachusetts shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by the Parties.  This Agreement shall be construed according to the laws of the State of Massachusetts without regard to its choice of law or conflict of laws principles.

54.     This Agreement may be executed in counterparts by Named Plaintiffs and Goldman Sachs, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

55.     Neither Named Plaintiffs nor Goldman Sachs shall be considered to be the drafters of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafters of this Agreement.

939472_5

56.     The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

57.     Where this Agreement requires either Party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

58.     The Parties agree that Co-Lead Counsel have taken sufficient discovery to date to allow them to determine that the settlement is in the best interests of the Settlement Class, and no further discovery is necessary or will be undertaken in connection with the settlement.

59.     This Agreement may be modified or amended only by a writing signed by all of the signatories hereto.

60.     Except as otherwise provided herein, this Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective agents, successors, executors, heirs and assigns.

61.     The Parties and their counsel agree to use their best efforts to do anything reasonably necessary to effectuate the performance of, and uphold the validity and enforceability of, this Agreement.

Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of the Party or Parties he or she represents, subject to Court approval.

- 24 -

DATED:  June 10, 2014

THE GOLDMAN SACHS GROUP, INC.

_(signature)_

200 West Street, 15th Floor
New York, NY  10282
(212) 902-1000


JOHN D. DONOVAN, JR. (BBO#
130950)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA  02199-3600
(617) 951-7566
john.donovan@ropesgray.com


RICHARD C. PEPPERMAN II (admitted
*pro hac vice*)
BENJAMIN R. WALKER (admitted *pro
hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
(212) 558-4000

ROBINS, KAPLAN, MILLER &
   CIRESI L.L.P.
LISA A. FURNALD (BBO #631059)

_(signature)_

800 Boylston Street, 25th Floor
Boston, MA  02199
Telephone:  617/267-2300
617/267-8288 (fax)


ROBINS, KAPLAN, MILLER &
   CIRESI L.L.P.
K. CRAIG WILDFANG (admitted *pro hac vice*)
THOMAS J. UNDLIN (admitted *pro hac vice*)
STACEY P. SLAUGHTER (admitted *pro hac vice*)
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN  55402-2015
Telephone:  612/349-8500
612/339-4181 (fax)


ROBBINS GELLER RUDMAN
   & DOWD LLP
PATRICK J. COUGHLIN (admitted *pro hac vice*)
RANDI D. BANDMAN (admitted *pro hac vice*)
DAVID W. MITCHELL (admitted *pro hac vice*)
PHONG L. TRAN (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)


SCOTT + SCOTT LLP
DAVID R. SCOTT (admitted *pro hac vice*)
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Telephone:  860/537-5537
860/537-4432 (fax)

- 25 -

SCOTT + SCOTT LLP
CHRISTOPHER M. BURKE (admitted *pro hac vice*)
WALTER W. NOSS (admitted *pro hac vice*)
KRISTEN M. ANDERSON (admitted *pro hac vice*)
707 Broadway, 10th Floor
San Diego, CA  92101
Telephone:  619/233-4565
619/233-0508 (fax)

LANDSKRONER • GRIECO • MERRIMAN, LLC
JACK LANDSKRONER (admitted *pro hac vice*)
PAUL GRIECO (admitted *pro hac vice*)
1360 West 9th Street, Suite 200
Cleveland, OH  44113
Telephone:  216/522-9000
216/522-9007 (fax)

ROBBINS ARROYO LLP
BRIAN J. ROBBINS (admitted *pro hac vice*)
GEORGE AGUILAR (admitted *pro hac vice*)
600 B Street, Suite 1900
San Diego, CA  92101
Telephone:  619/525-3990
619/525-3991 (fax)

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
RICHARD A. LOCKRIDGE (admitted *pro hac vice*)
CHARLES N. NAUEN (admitted *pro hac vice*)
KAREN HANSON RIEBEL (admitted *pro hac vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401-2159
Telephone:  612/339-6900
612/339-0981 (fax)

HULETT HARPER STEWART, LLP
DENNIS STEWART (Of Counsel)
225 Broadway, Suite 1350
San Diego, CA  92101
Telephone:  619/338-1133
619/338-1139 (fax)

- 26 -

BRANSTETTER, STRANCH
  & JENNINGS, PLLC
J. GERARD STRANCH IV (admitted *pro hac vice*)
227 Second Avenue, North – 4th Floor
Nashville, TN  37201-1631
Telephone:  615/254-8801
615/255-5419 (fax)

MURRAY FRANK LLP
BRIAN P. MURRAY (Of Counsel)
275 Madison Avenue, Suite 801
New York, NY  10016
Telephone:  212/682-1818
212/682-1892 (fax)

REINHARDT WENDORF & BLANCHFIELD
MARK REINHARDT (admitted *pro hac vice*)
2201 Atlantic Avenue
Sullivan's Island, SC  29482
Telephone:  651/287-2100

REINHARDT WENDORF & BLANCHFIELD
ROBERTA A. YARD (admitted *pro hac vice*)
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN  55101
Telephone:  651/287-2100
651/287-2103 (fax)

FARUQI & FARUQI, LLP
NADEEM FARUQI (Of Counsel)
369 Lexington Avenue, 10th Floor
New York, NY  10017-6531
Telephone:  212/983-9330
212/983-9331 (fax)

SHEPHERD FINKELMAN MILLER
  & SHAH, LLP
JAYNE A. GOLDSTEIN (admitted *pro hac vice*)
1640 Town Center Circle, Suite 216
Weston, FL  33326
Telephone:  954/515-0123
954/515-0124 (fax)

- 27 -

939472_5

WAGSTAFF & CARTMELL LLP
TYLER W. HUDSON (admitted *pro hac vice*)
4740 Grand Avenue, Suite 300
Kansas City, MO  64112
Telephone:  816/701-1177
816/531-2372 (fax)

Attorneys for Plaintiffs

939472_5