UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
KIRK DAHL, et al.,                                :
                                                  :
        Plaintiffs,                      :
                                                  :
        v.                               :   Civil Action
                                                  :   No. 07-cv-12388-WGY
BAIN CAPITAL PARTNERS, LLC, et al.,               :
                                                  :
        Defendants.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS TC GROUP III, L.P. AND TC GROUP IV, L.P.'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF NAMED PLAINTIFFS' UNOPPOSED MOTION <u>FOR PRELIMINARY APPROVAL OF SETTLEMENTS</u>**

## INTRODUCTION

In the guise of a supplemental submission in support of their new settlement with Silver Lake Partners (Doc. No. 997) ("Supp. Sub."), plaintiffs telegraph their unease about the strength of Carlyle's argument that the releases that this Court has enforced defeat their ability to try this case with proof common to the class. For the first time in the briefing process on class certification, plaintiffs provide the Court with law that, they claim, permits the Court to certify the Silver Lake settlement class (and by implication, of course, the litigation class) despite the existence of the releases. They argue that the presence of an affirmative defense that may differ among class members does not defeat their satisfaction of the Rule 23 predicates of typicality, adequacy or even the predominance of common issues.

Plaintiffs are wrong in this argument, for multiple reasons discussed below. But this stratagem illustrates the wisdom of considering the settlement class motion along with the benefits of the truly adversarial litigation class motion. *Amchem Products, Inc. v. Windsor* requires that plaintiffs satisfy the Rule 23 standards for both classes. 521 U.S. 591, 623 (1997). A decision that the releases preclude the predominance of common issues in the *litigation class* context therefore necessarily implies that the Court cannot preliminarily approve the *settlement class* on the basis of the present record that plaintiffs have put forward. The gratuitous arguments[1] plaintiffs make in their supplemental submission cannot change this outcome. Carlyle responds to both issues in this supplemental submission.

---

[1] Plaintiffs' arguments are gratuitous because the Silver Lake defendant has no releases from any shareholder group.

I.  **PLAINTIFFS' NEW LEGAL ARGUMENTS THAT THE RELEASES DO NOT PRECLUDE THIS COURT FROM CERTIFYING A CLASS ARE IRRELEVANT GIVEN THE LAW OF THE CASE**

As demonstrated in the defense opposition to class certification, Judge Harrington made two important decisions that are the law of the case that plaintiffs here are working hard to avoid. First, Judge Harrington unequivocally held that releases coming from the shareholder litigations are releases of that defendant from all claims arising from or related to those transactions. (Defs' Opp. To Pls' Mot. For Class Cert. (Doc. No. 966) ("Opp.") at 6-7.) Second, he specifically adopted defendants' position that the released transactions "remain at issue in this case as evidence of the overarching conspiracy as they relate to the *non-released* Defendants," (Memorandum and Order, (Doc. No. 616) at 2) (emphasis added), rejecting plaintiffs' argument that they could use evidence of the released transactions against the released defendants to prove the alleged overarching conspiracy claim. (Opp. at 9-10).[2]

Consistent with this position, in ruling on summary judgment, the Court interpreted these releases to mean that releasing shareholders cannot *use evidence* from the released transaction against the defendants released in that transaction. (*See* Opp. at 6-11 (citing Court's summary judgment opinion stating its decisions were "not based on conduct related to the transaction[s] for which [the relevant defendants] have been released." (Memorandum and Order (Doc. No.

---

[2]  The Court's statement that such evidence remained in the case only in regards to non-released defendants came in the context of an explicit request from plaintiffs that the Court hold that the released transactions "remain at issue in the case as evidence of the overarching conspiracy" against "any of the Defendants." (Pls. Mem. In Opp. To Defs. Mot. To Dismiss (Doc. No. 610) at 5.) Defendants replied that they had "always understood this language to mean that Plaintiffs may use evidence concerning the released transactions against non-released Defendants, not that Plaintiffs may rely on evidence concerning those transactions in fashioning their overarching conspiracy against released Defendants." (Defs. Proposed Reply In Further Support Of Their Mot. To Dismiss ((Doc. No. 611-1) at 2). The Court's response in its Memorandum and Order ((Doc. No. 616) at 2), that the released transactions "remain at issue in this case as evidence of the overarching conspiracy as they relate to the non-released Defendants" resolved that question and is the law of the case.

894) at 16)[3]).)  As discussed in the defense opposition, these holdings are consistent with the Third Circuit's opinion in *In re Prudential Insurance Co. of America Sales Practice Litigation*, 261 F.3d 355 (3d Cir. 2001), which held precisely the same thing, *i.e.* that releasers cannot use evidence from released transactions against their releasees. (Opp. at 10-11.)

Clearly worried that their previous strained attempts to get around this law of the case are not working,[4] plaintiffs argue in their supplemental submission that "courts routinely grant class certification despite the existence of releases that apply to some class members but not others," citing no less than fourteen cases that they had previously not seen as important enough to bring to this Court's attention.  (Supp. Sub. at 7.)[5]  These cases deal with whether a defendant's unresolved affirmative defense of releases that may block the claims of some class members and not others defeats the typicality or adequacy of named plaintiffs, or operates as a per se bar to predominance.  But, all of them are irrelevant to the issue presented by the releases here, because Carlyle's affirmative defense is fully resolved – Judge Harrington has already enforced these releases.  Thus, the question is not whether the affirmative defense may be differentially available to a defendant, but whether the unitary class of shareholders of eight different deals can *use evidence* from a released transaction to prove an essential element of their claim against Carlyle.  Plaintiffs' newly cited cases have nothing to do with that question.

---

[3]     *See also* Memorandum and Order (Doc. No. 894) at 17 n.10 (decisions relied on "each Defendant's conduct with respect to the deals for which they have not been released").

[4]     Plaintiffs previously simply denied the Court had resolved the question of whether the releases applied, asserting that "[t]he Court did not exclude any evidence pursuant to releases" in its summary judgment decisions*,* (Pls. MISO Class Cert. (Doc. No. 928) at 36-40), and that: "The Court never found that the releases precluded Plaintiffs from using evidence from the released transactions to prove their claims against released defendants." (Pls. Reply ISO Class Cert. (Doc. No. 973) at 16-20.)

[5]     Supp. Sub. citing cases at 7-8 & n.8, 11 & nn.11-12.

This principle is most easily seen with respect to the unitary class's proof of impact.[6] The Willkie/Williams model assumes that, in the absence of a conspiracy, someone would have put in a higher bid for each of the deals in question. To calculate this supposed higher competitive bid, for each of the eight disputed deals, the Willkie/Williams model uses evidence of a valuation that Blackstone had made in considering a bid for one disputed deal, Freescale. They assume that this valuation reflects a competitive rate of return, and they use that evidence to calculate what they claim would have been a higher bid on each of the eight deals.[7]

Carlyle was part of the winning consortium on the Freescale deal, and the beneficiary of a release from those shareholders. Freescale shareholders held not only 100% of the stock in the Freescale deal, but also held substantial percentages of the shares in all of the other deals, as shown in this chart:[8]

**Freescale Release Impacts Shareholders In Every Deal**

| Deal | Percentage of Freescale Shareholders |
|---|---|
| AMC | 18.1% |
| Aramark | 32.0% |
| HCA | 26.6% |
| Harrah's | 43.0% |
| Kinder Morgan | 35.3% |
| SunGard | 37.3% |
| TXU | 35.0% |
| Freescale | 100% |

---

[6]   Plaintiffs concede that they rely upon the Wilkie and Williams model as their proof of class-wide impact. (Pls. MISO Class Cert. (Doc. No. 928) at 4 ("[t]he accompanying expert report of Drs. Simon Wilkie and Michael Williams shows that evidence common to the classes is available to establish the class-wide impact of the conspiracies").)

[7]   Wilkie and Williams Report (Doc. No. 933) ¶ 26 (explaining that they rely on Blackstone's valuation in Freescale to "determine the competitive α for Freescale [and] then use Freescale's competitive α to calculate the competitive IRR of the other seven transactions").

[8]   Gompers Report (Doc. No. 968), Exhibit 20.

Since Freescale shareholders are in the unitary class, and held shares in each of the other deals in addition to Freescale, that means that, under the law of the case, *the class* cannot use the model to prove impact against Carlyle.  This is an insurmountable problem for the plaintiffs, and has nothing to do with the issue in the cases that plaintiffs newly reveal; those cases are addressing whether the defendants' affirmative defense of release bars a damages claim from some or all of the class members.  Carlyle has already won that issue here.

Plaintiffs' supplemental submission also challenges the law of the case by attacking the *Prudential* principle that releasing plaintiffs cannot use evidence from the released transactions against released defendants, citing two cases they never cited to Judge Harrington.  (Supp. Sub. at 9-10.)  While the attempt to evade the law of the case is improper on its face, those newly cited cases are not on point in any event.  *Insignia Systems, Inc. v. News America Marketing In-Store, Inc.*, No. 04-4213 (JRT/AJB) 2011 U.S. Dist. LEXIS 11376, at *5 (D. Minn. Feb. 4, 2011), permitted plaintiffs to use evidence from a time period covered by an earlier release where it could be "demonstrate[d] how it [wa]s not related to the claims asserted in the prior litigation but is related to the instant litigation."  *Mims-Johnson v. Bechtel National, Inc.*, No. CV-10-3119-RMP, 2012 U.S. Dist. LEXIS 20370, at *11-12 (E.D. Wash. Feb. 16, 2012), similarly permitted discovery into conduct from a period covered by a release on the ground that the plaintiff alleged no "causal connection" between the defendant's earlier conduct and the wrongful behavior that was the subject of the current suit.  Neither case helps plaintiffs here because Judge Harrington has already held that the releases that bind plaintiffs cover the claims in this litigation, *i.e.*, that the earlier claims *are* related to these claims, and that therefore there *is* a causal connection between the earlier suits and this one.

Thus, plaintiffs' new arguments (even if the Court is inclined to consider them), do not help them obtain certification of either a litigation class or a settlement class.

## II. THIS COURT SHOULD CONTINUE TO CONSIDER THE LITIGATION CLASS AND SETTLEMENT CLASS MOTIONS USING THE SAME STANDARDS

Plaintiffs continue in their supplemental submission to request preliminary approval of their settlements, without regard to the pendency of the litigation class motion. But this Court should stay its hand on their motion for preliminary approval of any settlement, until the certifiability of the litigation class is finally decided.

That is exactly what happened in the *In re New Motor Vehicles* case with respect to a pre-certification settlement that plaintiffs had reached with Toyota, one of the many automotive companies named as defendants in that multidistrict litigation. Toyota and plaintiffs entered into a settlement agreement on February 24, 2006, during the pendency of plaintiffs' motion for certification of a nationwide injunction class and state damages classes. *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 269 F.R.D. 80, 82 (D. Me. 2010). They then moved for preliminary approval of the settlement. The court denied the motion for preliminary approval on the ground that an open issue on the litigation class motion would affect the certifiability and scope of the settlement class. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 236 F.R.D. 53, 56-57 (D. Me. 2006).

The court subsequently certified the litigation class and the non-settling Defendants appealed the certification of both the injunction class and the damages class. The First Circuit reversed both rulings. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 29 (1st Cir. 2008). On remand, the trial court entered summary judgment for non-settling defendants on the ground that plaintiffs' impact model contained no evidence that each and every class member would have been injured by the alleged conspiracy. *In re New Motor Vehicles*

*Canadian Exp. Antitrust Litig.*, 632 F. Supp. 2d. 42, 63 (D. Me. 2009).  Toyota and plaintiffs then renewed their motion for approval of the settlements, relying on new evidence on the impact issue.  After several more rounds of supplemental briefing, the court finally certified the settlement damages class in August of 2010, four years after the initial settlement and on the basis of a record expanded beyond the record that the trial court had on the litigation class motion and summary judgment.  *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 269 F.R.D. 80, 94 (D. Me. 2010).

Since plaintiffs here rely on the same predicates for their settlement class motion as they do for their litigation class motion, this Court should defer ruling on the preliminary approval motion until the viability of the litigation class has been finally determined.

Dated: July 21, 2014                                             Respectfully Submitted,

/s/ Margaret M. Zwisler
Margaret M. Zwisler (admitted *pro hac vice*)
Jennifer L. Giordano (BBO# 650537)
William R. Sherman (admitted *pro hac vice*)
E. Marcellus Williamson (admitted *pro hac vice*)
LATHAM &WATKINS LLP
555 Eleventh Street, N.W.
Washington, DC 20004-1304
margaret.zwisler@lw.com
(202) 637-2200

Alfred C. Pfeiffer, Jr. (admitted *pro hac vice*)
LATHAM &WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 9411106538

***Attorneys for TC Group III, L.P. and TC Group IV, L.P.***

**CERTIFICATE OF SERVICE**

I, Margaret M. Zwisler, hereby certify that today I caused a true and correct copy of the foregoing document to be served by CM/ECF on all counsel of record.

Dated: July 21, 2014

/s/ Margaret M. Zwisler
Margaret M. Zwisler (admitted *pro hac vice*)
Jennifer L. Giordano (BBO# 650537)
William R. Sherman (admitted *pro hac vice*)
E. Marcellus Williamson(admitted *pro hac vice*)
LATHAM &WATKINS LLP
555 Eleventh Street, N.W.
Washington, DC 20004-1304
margaret.zwisler@lw.com
(202) 637-2200

Alfred C. Pfeiffer, Jr. (admitted *pro hac vice*)
LATHAM &WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 9411106538

***Attorneys for TC Group III, L.P.  and TC Group IV, L.P***