# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIRK DAHL, et al., Individually and on Behalf of All Others Similarly Situated, | ) ) ) Lead Case No. 1:07-cv-12388-WGY |
| Plaintiffs, | ) ) <u>CLASS ACTION</u> |
| vs. | ) ) ) SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF NAMED PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS, INCLUDING A SETTLEMENT WITH DEFENDANTS THE BLACKSTONE GROUP L.P., KOHLBERG KRAVIS ROBERTS & CO. L.P. AND TPG CAPITAL, L.P. |
| BAIN CAPITAL PARTNERS, LLC, et al., | ) ) ) |
| Defendants. | ) ) ) ) |

# TABLE OF CONTENTS

**Page**

I.     Introduction ......................................................................................................... 1

II.    The factual background ...................................................................................... 2

    A.     The background of the litigation ................................................... 2

    B.     The settlement negotiations........................................................... 3

    C.     The settlement agreement.............................................................. 3

III.   The proposed settlement class should be certified for settlement purposes under Rules 23(a) and (b)(3) ........................................................................ 4

IV.    The settlement is fair, reasonable and adequate ......................................... 5

V.     Conclusion ........................................................................................................... 7

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods. v. Windsor,*
   521 U.S. 591 (1997)..................................................................................5

*Hochstadt v. Boston Sci. Corp.,*
   708 F. Supp. 2d 95 (D. Mass. 2010) ........................................................5

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
   55 F.3d 768 (3d Cir. 1995) ......................................................................6

*In re Lupron (R) Mktg. & Sales Practices Litig.,*
   345 F. Supp. 2d 135 (D. Mass. 2004).......................................................6

*In re Relafen Antitrust Litig.,*
   231 F.R.D. 52 (D. Mass. 2005)..............................................................4, 5

**Rules**

Fed. R. Civ. P. 23..........................................................................................2, 4

Fed. R. Civ. P. 23(a) ........................................................................................4

Fed. R. Civ. P. 23(a)(1) ...................................................................................4

Fed. R. Civ. P. 23(a)(2) ...................................................................................4

Fed. R. Civ. P. 23(a)(3) ...................................................................................4

Fed. R. Civ. P. 23(b)(3) ................................................................................4, 5

Fed. R. Civ. P. 26(a)(4) ...................................................................................4

**Other Authorities**

*Manual for Complex Litigation* §21.632 (4th ed. 2004) .............................5

## I.      Introduction.

Named Plaintiffs[1] have signed a settlement agreement with defendants The Blackstone Group L.P. ("Blackstone"), Kohlberg Kravis Roberts & Co. L.P. ("KKR") and TPG Capital, L.P. ("TPG") for a cash payment of $325 million.  Now, six of the seven defendants have settled for a total of $475.5 million. The sole Remaining Defendants for trial, scheduled for November 3, 2014, are TC Group III, L.P. and TC Group IV, L.P. (collectively "Carlyle").

Named Plaintiffs initially settled with Bain Capital Partners, LLC ("Bain Capital") and The Goldman Sachs Group, Inc. ("Goldman") for $54 million and $67 million, respectively.  Named Plaintiffs then reached a settlement with Silver Lake Technology Management, L.L.C. ("Silver Lake") for $29.5 million. Those settlements are scheduled for a preliminary approval hearing on September 4, 2014.[2] Named Plaintiffs now respectfully submit this supplemental memorandum in support of preliminary approval of their Settlement Agreement with Blackstone, KKR and TPG (attached as Exhibit A), in conjunction with the previous settlements, at the hearing on September 4, 2014. [3]

---

[1]      Named Plaintiffs include Kirk Dahl, Police and Fire Retirement System of the City of Detroit, City of Omaha Police and Fire Retirement System, and Michael Wojno as Executor for the Estate of Robert Zimmerman.

[2]      Named Plaintiffs filed their Unopposed Motion for Preliminary Approval of Settlements with Defendants Bain Capital and Goldman Sachs and memorandum in support thereof ("Preliminary Approval Motion") on June 11, 2014. Named Plaintiffs filed their Supplemental Motion and supporting memorandum for the Silver Lake settlement on July 10, 2014.

[3]      Named Plaintiffs incorporate herein by reference all arguments in support of preliminary approval of the Bain Capital, Goldman Sachs and Silver Lake settlements, which apply with equal force to the Blackstone, KKR and TPG Settlement (the "Settlement" or "Settlement Agreement"; together with the Bain Capital, Goldman Sachs and Silver Lake settlement agreements, the "Settlement Agreements" or "Settlements").

For the reasons set forth below, as well as in Named Plaintiffs' prior submissions in support of preliminary approval, Co-Lead Counsel and Named Plaintiffs believe this latest Settlement, standing alone or in conjunction with the prior pending Settlements, is well within the range of fairness, adequacy and reasonableness under Rule 23 and the standards of the First Circuit.  It should, therefore, be preliminarily approved by the Court.[4]

## II.     The factual background.

### A.     The background of the litigation.

Blackstone, KKR and TPG have vigorously disputed the Named Plaintiffs' allegations over the past seven years.  Named Plaintiffs have overcome defendants' attacks on multiple fronts, including early efforts to transfer the case, dozens of motions to dismiss and for summary judgment, motions for reconsideration and a petition for interlocutory appeal.  Discovery has also been extensive.  Blackstone produced approximately 1.8 million pages of documents and five of its executives were deposed, including principals and senior managing directors.  KKR produced approximately 1.3 million pages of documents and five of its top executives were deposed, including its Co-CEO and Co-Chairman, George Roberts.  TPG produced approximately 2.4 million pages of documents and four of its executives were deposed, including founding

---

[4]     Named Plaintiffs, with the consent of counsel for the Settling Defendants, will address at the September 4, 2014 hearing the submission of an amended proposed order preliminarily approving the four pending Settlements, amended long-form and summary notices to incorporate the pending Settlements and a proposed Rule 54(b) Final Judgment Order as to Silver Lake, Blackstone, KKR and TPG.  These documents will be substantially similar to those filed in connection with Named Plaintiffs' Preliminary Approval Motion of June 11, 2014.  Named Plaintiffs incorporate the schedule of events governing the remaining procedural aspects of the proposed Settlements previously suggested to the Court, along with their request for appointment of Co-Lead Counsel and the parameters of their fee and expense applications, as set forth in Named Plaintiffs' Preliminary Approval Motion.  *See* Dkt. No. 985 at 9, 19-20.

partners David Bonderman and James Coulter.   Each of these defendants was intimately involved in all facets of the case, including the discovery of Named Plaintiffs' experts on the issue of class certification and in the presentation of defendants' opposition to class certification.

### B.    The settlement negotiations.

Like the litigation itself, the Settlement is the product of vigorous, hard-fought, arm's-length negotiations between experienced counsel. As with the prior Settling Defendants, Blackstone, KKR and TPG engaged in substantial mediation efforts with Named Plaintiffs before an experienced and respected mediator.   After these global mediation efforts faltered, it was only through extensive private negotiations that the parties were able to achieve the Settlement now before the Court.   Because the litigation is at such an advanced stage, with trial scheduled in three-month's time, Co-Lead Counsel and the Named Plaintiffs are in a superior position to assess the relative strengths and weaknesses of their claims and defendants' defenses and conclude that the proposed settlement, along with the previously submitted settlements, are in the best interests of the putative class.

### C.    The settlement agreement.

This Settlement largely mirrors the previous Settlements.   Blackstone, KKR and TPG will make a cash payment for the benefit of Settlement Class Members in the amount of three hundred twenty-five million dollars ($325,000,000.00), and agree to cooperate with Named Plaintiffs in the prosecution of their claims against Carlyle with respect to the authenticity and business record status of their documents.

**III.    The proposed settlement class should be certified for settlement purposes under Rules 23(a) and (b)(3).**

As described in the two prior memoranda in support of preliminary approval of earlier partial settlements, Named Plaintiffs believe that all of the requirements for preliminarily certifying a unified settlement class are amply met.   Moreover, the adequacy of the total settlement relief to Settlement Class Members is only enhanced by the Blackstone, KKR and TPG Settlement.

The Settlement Class should be certified because it meets the requirements of Rule 23(a):

- **Numerosity –** The Settlement Class consists of thousands of investors who sold or exchanged shares of stock in the LBOs of the eight target companies at issue and joinder outside of Rule 23 is impracticable.  Fed. R. Civ. P. 23(a)(1).

- **Commonality –**There are numerous common issues of fact and law that affect all or a substantial number of the class members on the issue of liability and damages, including, *inter alia*, whether Settling Defendants engaged in the alleged anticompetitive conduct.  Fed. R. Civ. P. 23(a)(2); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 69 (D. Mass. 2005)(*Relafen II*).

- **Typicality –** The Named Plaintiffs' claims are typical of the claims of absent class members as they "arise from the same event or pattern or practice and are based on the same legal theory." *Relafen II* at 69; Fed. R. Civ. P. 23(a)(3).   Here, the nexus among all class members, based on evidence sufficient for trial, is an "overarching agreement between the Defendants to refrain from 'jumping' each other's announced proprietary deals."  Mar. 13, 2013 Memorandum and Order at 30 (Dkt. No. 763).

- **Adequacy –** The Named Plaintiffs will "fairly and adequately protect the interest of the class" because their interests do not conflict and they are represented by counsel with extensive experience in antitrust cases who have vigorously prosecuted the case. Fed. R. Civ. P. 26(a)(4); *Relafen II* at 69.  All members of the putative class are aligned in an identical goal of seeking damages for artificially depressed share prices resulting from the same conspiracy.

The requirements of Rule 23(b)(3) also weigh in favor of certifying the Settlement Class because common questions of law and fact predominate and a class action is the superior method for resolving this litigation. The common questions for trial in the absence of settlement is whether the Settling Defendants entered into unlawful agreements not to compete for the target companies and whether share prices paid to the Settlement Class in the LBOs would have been higher absent such agreements. These common questions predominate over any individualized inquiries among class members, including purported issues of trial manageability resulting from releases obtained in prior shareholder litigation.[5]

Rule 23(b)(3) is further satisfied because a class action is the superior method for resolving the present case. The Settlement Class includes thousands of individual shareholders, many of whom individually would be unable to effectively vindicate their rights. *Amchem*, 521 U.S. at 617 (1997); *Relafen II* at 70. Class treatment also eliminates the risk of inconsistent adjudication.

## IV.    The settlement is fair, reasonable and adequate.

At this stage of consideration, the Court "must first make a 'preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'" *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010) (quoting the *Manual for Complex Litigation* §21.632 (4th ed. 2004)). A presumption of fairness attaches to the court's preliminary fairness determination when "'(1) the negotiations occurred

---

[5]    Manageability of a class trial is not a relevant consideration in the settlement context. As the Supreme Court noted, a trial court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Relafen II* at 69.

at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Lupron (R) Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)).  For the reasons described in Named Plaintiffs' previous submissions in support of preliminary approval of the prior partial settlements, and herein with respect to the conduct of the litigation, the intensity of the discovery efforts, and the negotiation process, the Settlement with Blackstone, KKR and TPG easily satisfies the preliminary approval standard in the First Circuit.

As with the prior settlements with Bain Capital, Goldman Sachs and Silver Lake, the proposed Settlement with Blackstone, KKR and TPG confers substantial benefits upon the Settlement Class while eliminating: (i) the uncertainty of future relief after protracted and expensive litigation, including the difficulties of proving liability, causation and damages under the Sherman Act and Clayton Act and the possible defenses to such claims; and (ii) the risk that Named Plaintiffs may not ultimately prevail and thus may not secure this significant additional relief for the Settlement Class.

## V.      Conclusion.

For all of the reasons set forth above, the Settlement is well within the range of reasonableness contemplated by courts in this Circuit, and the Court should preliminarily approve the proposed Settlement.

Dated:  August 7, 2014

Respectfully submitted,

By: _s/Thomas J. Undlin_

K. Craig Wildfang (admitted pro hac vice)
Thomas J. Undlin (admitted pro hac vice)
Stacey P. Slaughter (admitted pro hac vice)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN  55402-2015
(612) 349-8500
kcwildfang@rkmc.com
tjundlin@rkmc.com
spslaughter@rkmc.com

Lisa A. Furnald (BBO #631059)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P
800 Boylston Street, 25th Floor
Boston, MA  02199
(617) 267-2300
lafurnald@rkmc.com

Christopher M. Burke (admitted pro hac vice)
Walter W. Noss (admitted pro hac vice)
Kristen M. Anderson (admitted pro hac vice)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA  92101
(619) 233-4565
cburke@scott-scott.com
wnoss@scott-scott.com
kanderson@scott-scott.com

David R. Scott
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT  06415
(860) 537-3818

Patrick J. Coughlin (admitted pro hac vice)
David W. Mitchell (admitted pro hac vice)
Randi D. Bandiman (admitted pro hac vice)
Phong L. Tran (admitted pro hac vice)
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
(619) 231-1058
patc@rgrdlaw.com
davidm@rdrdlaw.com
ptran@rdrglaw.com

*Co-Lead Class Counsel*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 7, 2014.

*s/Thomas J. Undlin*
Thomas J. Undlin
