# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

KIRK DAHL, et al.,

               Plaintiffs,

v.

BAIN CAPITAL PARTNERS LLC, et al.,

               Defendants.

Civil Action No.: 07-12388-EFH
(Consolidated)

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS TC GROUP III, L.P. AND TC GROUP IV, L.P.'S MOTION TO STRIKE PLAINTIFFS' EXPERT DISCLOSURES**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT ................................................................................................................... 1

    A.  The Court should deny Carlyle's motion as to Drs. Connor, Marshall, and
Officer because their expert reports are not "additional" disclosures and
Carlyle already possesses them. ............................................................................. 1

        1.  Plaintiffs' expert disclosure complies with Rule 26(a)(2)(B) and the
case management order .................................................................................. 3

        2.  Plaintiffs have not violated Rule 26(a)(2)(B), but even if they had,
the Court should deny Carlyle's request to "preclude" Drs.
Connor, Marshall, and Officer's testimony at trial .................................... 4

    B.  The Wilkie/Williams joint report does not violate Rule 26(a)(2)(B). ............... 6

    C.  The Court should permit both Drs. Wilkie and Williams to testify at trial ...... 9

III.  CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

Page

## Cases

*Abbott Point of Care, Inc. v. Epocal, Inc.,*
868 F. Supp. 2d 1310 (N.D. Ala. 2012) .................................................................. 9, 10, 11

*Adams v. J. Meyers Builders, Inc.,*
671 F. Supp. 2d 262 (D.N.H. 2009) ................................................................................ 5

*Alves v. Mazda Motor of America, Inc.,*
448 F. Supp. 2d 285 (D. Mass. 2006) ......................................................................... 4, 5

*Dale K. Barker Co., P.C.  v. Valley Plaza,*
541 Fed. App'x. 810 (10th Cir. Sept. 17, 2013) ........................................................ 6, 7

*Dan v. United States,*
No. 01-25, 2002 U.S. Dist. LEXIS 28267 (D.N.M., Feb 6, 2002) ............................ 7, 8, 9

*Flebotte v. Dow Jones & Co.,*
No. 97-30117, 2000 U.S. Dist. LEXIS 19875 (D. Mass. Dec. 6, 2000) ........................... 8

*Gagnon v. Teledyne Princeton, Inc.,*
437 F.3d 188 (1st Cir. 2006) ......................................................................................... 6

*Griffith v. Eastern Maine Medical Center,*
599 F. Supp. 2d 59 (D. Me. 2009) ................................................................................. 5

*Jackson v. Louisville Ladder, Inc.,*
No. 1:11-cv-1527, 2013 U.S. Dist. LEXIS 101563 (M.D. Pa., Jul. 22, 2013) ............... 10

*Johnson v. United States,*
780 F.2d 902 (11th Cir. 1986) ..................................................................................... 11

*Lampón v. Real Legacy Assurance Co.,*
293 F.R.D. 86 (D.P.R. 2013) .......................................................................................... 5

*Librado v. M.S. Carriers, Inc.,*
No. 3:02-CV-2095-D, 2004 U.S. Dist. LEXIS 12203
(N.D. Tex. Jun. 30, 2004) ........................................................................................ 7, 8, 9

*Lohnes v. Level 3 Communications, Inc.,*
272 F.3d 49 (1st Cir. 2001) ............................................................................................ 5

ii

*Primus v. United States,*
    389 F.3d 231 (1st Cir. 2004) ............................................................. 5

*Sec'y of Labor v. DeSisto,*
    929 F.2d 789 (1st Cir. 1991) ........................................................... 10

*SJB Group, LLC v. TBE Group, Inc.,*
    No. 3:12-CV-181, 2013 U.S. Dist. LEXIS 114284 (M.D. La., Aug. 13, 2013) .............. 10

*Thakore v. Universal Mach. Co. of Pottstown,*
    670 F. Supp. 2d 705 (N.D. Ill. 2009) ............................................... 9

*Wilson v. Bradlees of New England, Inc.,*
    250 F.3d 10 (1st Cir. 2001) ............................................................ 5

## Other Authorities

WEINSTEIN'S EVIDENCE, ¶ 403[6] (1990) .................................................. 10

## Rules

10th Cir. R. 32.1 ........................................................................ 6

1st Cir. R. 32.1 ......................................................................... 6

Fed. R. App. P. 32.1 ..................................................................... 6

Fed. R. Civ. P. 26 ................................................................. passim

Fed. R. Civ. P. 37 ................................................................... 4, 6

Fed. R. Civ. P. 56 ....................................................................... 2

Fed. R. Evid. 403 ................................................................... 9, 10

## I.  INTRODUCTION

Plaintiffs complied with the case management order and the federal rules. August 1 was the deadline for "*additional* expert disclosures."  Plaintiffs provided their *additional* expert disclosure, the expert report of Drs. Wilkie and Williams.  The deposition dates were also for experts who offered *additional* expert disclosures — not for every expert in the case that Carlyle already had the opportunity to depose but declined to do so.

In their August 1 disclosure, Plaintiffs also refer to their experts' *prior* reports. These reports are not "additional" expert disclosures; Plaintiffs have already disclosed them.  Carlyle has had these expert reports for months, and in some cases *years*.  These reports, each with its own docket number, are part of the Court record.  Carlyle argues that Plaintiffs' failure to copy and re-serve the reports — that it already possesses — "impedes [its] ability to effectively prepare for trial."  But the case management order does not require Plaintiffs to copy and re-serve prior reports.  And Carlyle elected last year *not* to depose all Plaintiffs' experts during discovery.  Trial begins in November, and now Carlyle must live with that decision.

As to Carlyle's remaining arguments, they are either non-issues or more properly raised as motions in limine or at trial.  Respectfully, the Court should deny Carlyle's entire motion without further delay.

## II.  ARGUMENT

### A.  The Court should deny Carlyle's motion as to Drs. Connor, Marshall, and Officer because their expert reports are not "additional" disclosures and Carlyle already possesses them.

The case management order provides that "additional expert disclosures" will be served on August 1, 2014.[1]  Plaintiffs disclosed the "additional" expert report of Drs.

---

[1] *See* Judge Young Order dated January 7, 2014, Dkt. No. 965, attached at Exhibit A.

1

Simon J. Wilkie, Ph.D. and Dr. Michael A. Williams, Ph.D. on August 1, 2014

(Wilkie/Williams VI Report).  Dkt. No. 1020-2.  Further, as to the "additional" expert

disclosures, the Court scheduling order stated:

> *At the time an expert report is served, the party serving will also identify three dates on which the expert will be available for deposition in accordance with the schedule above."

Dkt. No. 965 at 6.[2]  Plaintiffs submitted a letter with its disclosure, indicating the three

dates on which Dr. Williams would be available and that "we are working with Mr.

Wilkie on dates and will try to get as close to these proposed dates as we can."  Dkt. No.

1020-3.  Indeed, Plaintiffs followed up by letter and provided three dates on which Dr.

Wilkie could be available.[3]

Also in the disclosure, Plaintiffs refer to their other experts' *prior* reports. Dkt. No.

1020-1.  These reports are not "additional" expert disclosures, because Plaintiffs have

already disclosed them.  These reports have their own docket numbers and are part of

the Court record. *See* Dkt. Nos. 695; 696; 844; 845; 846; 885; 886; 887; 933; 934; 975; 976;

977; 978; 1020. Carlyle has had these expert reports for months, in some cases *years*.  In

fact, the very existence of these reports was a basis for Carlyle's request to file

additional Rule 56 motions for summary judgment on August 1.  Dkt. No. 965 at 3

("Those motions are warranted in light of and in conjunction with the expert reports

and expert discovery that have occurred….").[4]   Carlyle's own experts addressed prior

Plaintiffs' expert reports.[5]  Now, Carlyle implies that Plaintiffs' failure to copy and re-

serve these same reports that it already possessed "impedes [its] ability to effectively

---

[2] *Id.*, attached as Exhibit A.

[3] *See* Letter attached at Exhibit B.

[4] *See* attached Exhibit A.

[5] *See* Expert Report of Paul A. Gompers dated 8/1/14 at ¶ 10 (reviewed prior reports of Drs. Wilkie, Williams, and Marshall); Expert Report of Edward A. Snyder dated 8/1/14 at ¶ 10 (reviewed prior reports of Drs. Wilkie and Williams).

prepare for trial." If Carlyle has experienced the inability to prepare for trial effectively, then it is not due to Plaintiffs' failure to abide by this Court's Order.

Carlyle made a decision last year *not* to depose all the experts during discovery. Carlyle is not entitled to depose any expert who did not submit an "additional" report.[6] Carlyle's request for more depositions is a delay and distraction as Plaintiffs prepare for trial in November. The Court should deny Carlyle's attempt to depose these experts now on the prior reports. [7]

Because Plaintiffs' experts complied with the federal rules and identified their assignments, opinions, and conclusions, Carlyle will suffer no prejudice at trial, having known about these opinions for quite some time.

### 1.   Plaintiffs' expert disclosure complies with Rule 26(a)(2)(B) and the case management order.

In the reports, Plaintiffs' experts disclosed their opinions, the facts and data they considered, the exhibits used to summarize or support their opinions, their qualifications, and their relevant prior testimony, in accordance with Fed. R. Civ. P. 26 (a)(2)(B). *See* Dkt Nos. 695; 696; 844; 845; 846; 885; 886; 887; 933; 934; 975; 976; 977; 978; 1020. Plaintiffs' experts provided Carlyle with a clear and complete statement of all their opinions. The attached chart, by way of example, lists each expert's assignment and conclusion.[8] Carlyle had the opportunity to depose each expert already and chose not to during expert discovery. Michael Williams and Simon Wilkie were the only experts they deposed, on December 11 and December 12, 2013, respectively. If they do submit additional reports in rebuttal, then Plaintiffs will, of course, make them available for deposition on the new reports.

---

[6] The time for expert disclosures has not concluded, as the rebuttal expert disclosure deadline is September 2, 2014.

[7] Should the Court nevertheless decide to allow Carlyle to depose Drs. Connor, Marshall, and Officer, Plaintiffs, in order to avoid further delay, have provided dates on which they could be available. *See* Exhibit B.

[8] *See* attached Exhibit C.

**2.   Plaintiffs have not violated Rule 26(a)(2)(B), but even if they had, the Court should deny Carlyle's request to "preclude" Drs. Connor, Marshall, and Officer's testimony at trial.**

Carlyle argues that if Plaintiffs violated Rule 26(a)(2)(b), then "mandatory preclusion" is the appropriate sanction.[9]  As explained above, Plaintiffs have not violated Rule 26(a)(B).  But even if that were not the case, Carlyle provides no authority to support such a drastic sanction here.  In fact, Carlyle's authority reaches the opposite conclusion; it cautions against just such a severe sanction.  Each case Carlyle cites involved a party who either failed to provide any expert report, or only provided it months or years after the deadline.

Carlyle cites *Alves v. Mazda Motor of America, Inc.*, for the proposition that expert preclusion is the appropriate remedy in this case.  But in *Alves*, the plaintiff *never* produced an expert report. 448 F. Supp. 2d 285, 289-92 (D. Mass. 2006). The court in *Alves* summarized the circumstances: "The court…granted plaintiff several extensions of the deadline for expert discovery, even when no timely request had been made by her. Nevertheless, Alves' counsel…continued to disregard the requirements of Rule 26(a)(2) and this court's Orders, and then misrepresented his reasons for doing so." *Id.* at 296. Here, unlike in *Alves*, Plaintiffs provided expert reports months, if not years, *before* the August 1 deadline for "additional" reports. Carlyle has not made any allegation of "continued disregard of Rule 26(a)(2)" or misrepresentation by Plaintiffs. As such, *Alves* is completely irrelevant.

---

[9] Fed. Rule Civ. P. 37(c)(1) governs sanctions: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Carlyle has failed to show any actual prejudice resulting from Plaintiffs' incorporation of the experts' prior reports that it already possesses (as opposed to "additional" reports under the case management order). If there is no prejudice, then Plaintiffs' incorporation of prior reports was harmless and no sanction is even authorized under Rule 37. The case law cited by Carlyle does nothing to contradict this conclusion.

So, too, are the litany of other "mandatory preclusion" cases Carlyle cites. Carlyle relies on *Primus v. United States*, 389 F.3d 231 (1st Cir. 2004), but as in *Alves*, the court granted the plaintiff in *Primus* multiple extensions on the expert disclosure deadline. *Id.* at 234. The plaintiff still attempted to identify a new expert months *after* the last deadline for expert disclosure. *Id.* at 234. Carlyle then relies on *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10 (1st Cir. 2001), where, again, the plaintiff attempted to introduce expert evidence nearly *one year after* expert report deadlines had passed. (*Id.* at 18.) Carlyle also relies on *Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49 (1st Cir. 2001), where the plaintiff offered an expert report three months after the deadline for such reports. *Id.* at 60. Carlyle's reliance on *Lampón v. Real Legacy Assurance Co.*, 293 F.R.D. 86 (D.P.R. 2013) is also misplaced. There, the defendants provided the expert report five months *after* the discovery deadline. *Id.* at 87. Carlyle also cites to *Adams v. J. Meyers Builders, Inc.*, 671 F. Supp. 2d 262 (D.N.H. 2009); yet in *Adams*, the plaintiff *never* filed a complete expert report, only a summary of a report. *Id.* at 268. And finally, Carlyle cites *Griffith v. Eastern Maine Medical Center*, 599 F. Supp. 2d 59, 64-65 (D. Me. 2009), for the proposition that expert reports provided in earlier stages of litigation cannot be used to satisfy a subsequent expert report deadline. (Def.'s Br. at 8.) Yet *Griffith* says nothing of the sort. In justifying their failure to provide expert reports by the discovery deadline, the plaintiffs in *Griffith* pointed to expert reports provided by their same expert in *separate litigation*. Nowhere in the facts of *Griffith* did the expert provide any report in an earlier stage of the same case. *Id.* at 63-65. Carlyle cites no cases that address the present situation in which the "deadline" concerns "additional" expert reports. Here, Plaintiffs provided all of the expert reports on or before the applicable expert disclosure deadline in the case.

Carlyle ignores the voluminous authority that states sanctions are inappropriate when no actual prejudice occurs from any real or perceived nonconformity with

discovery rules. For example, the Advisory Committee notes to the 1993 amendment to Rule 37 (the rule that Carlyle relies upon as authority to order sanctions) states that the harmlessness provision is intended "to avoid unduly harsh penalties in a variety of situations." The First Circuit has given illustrative examples, such as when "a potential witness [is] known to all parties," or when "a trial witness already listed by the adverse party." *Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188, 197 (1st Cir. 2006). The First Circuit's primary concern is to ensure proper notice, as all parties were aware of the experts or their reports in both examples given. In the instant case, all parties knew of Plaintiffs' experts well ahead of the deadline and had full reports from all experts by or prior to the deadline.

Carlyle contends that regardless of any previous report provided, Plaintiffs were required to again provide that identical report, for a second time, on August 1, 2014. (See Defendant's repeated quoting of Rule 26(a)(2)(A) stating "disclosure 'must be accompanied by a written report.'") Not only is this a nonsensical interpretation of the rule, but nonconformity in the form of providing an expert report *too early* is harmless, and the First Circuit has held that sanction "for a minor act of negligence in the absence of prior warning or a showing of special prejudice would be too harsh." *Gagnon*, 437 F.3d 188, 198.

## B.    The Wilkie/Williams joint report does not violate Rule 26(a)(2)(B).

Carlyle then argues that joint reports are improper, but the overwhelming legal authority disagrees.  Reports co-authored by two experts are common and generally acceptable.  *See, e.g.*, *Dale K. Barker Co., P.C.  v. Valley Plaza*, 541 Fed. App'x. 810, 815-16 (10th Cir. Sept. 17, 2013) (unpublished[10]) ("We see no reason to think the practice always and inherently impermissible, as [appellant] seems to suppose.  Co-authored

---

[10] *Dale K. Barker Co.* is an unpublished opinion, but remains persuasive authority pursuant to Fed. R. App. P. 32.1, 1st Cir. R. 32.1, and 10th Cir. R. 32.1.

expert reports aren't exactly uncommon."); *Librado v. M.S. Carriers, Inc.*, No. 3:02-CV-2095-D, 2004 U.S. Dist. LEXIS 12203, at *41 (N.D. Tex. Jun. 30, 2004) ("The court discerns nothing generally objectionable about a joint report, provided it gives defendants the information to which they are entitled under Rule 26(a)(2)(B)."). The Wilkie/Williams VI report satisfies Rule 26(a)(2)(B)'s requirement of a "complete statement of all opinions" that each expert will express. Drs. Wilkie and Williams both signed declarations stating that they are prepared to testify to the entire report. Dkt. Nos. 1020-4, 1020-5. The experts are not required to delineate which opinions belong each of them because all the opinions in the report are joint opinions. *Id.*

The Tenth Circuit's decision in *Dale K. Barker Co.* is instructive on this point. There, the district court allowed the defendants to file a joint report by two experts, and the plaintiff appealed the decision. 541 Fed. App'x. at 815. The court noted that the experts had "reviewed the same materials and, working together, came to the same opinions" and concluded that because the experts "were both prepared to testify to all the opinions in the report, we see no reason why it should be inherently impermissible for them to file a joint report." *Id.* at 816. The court continued that there was no reason to fear confusion, because both experts adhered to all of the opinions in the report. *Id.* The same reasoning and analysis applies to the Wilkie/Williams VI report.

The only case Carlyle cites to support its argument, *Dan v. United States*, does not apply here. In that case, the joint report that the district court found to be deficient continuously shifted from joint opinions to individual opinions and back again, with no indication of which expert was offering each individual opinion. *Dan v. United States*, No. 01-25, 2002 U.S. Dist. LEXIS 28267, at *3-7 (D.N.M., Feb 6, 2002). The

Wilkie/Williams VI report, in contrast, clearly and consistently refers to analyses and opinions shared jointly by both experts.[11]

As this court has explained, the primary purpose of Rule 26(a)(2) is "to require disclosure of expert testimony sufficiently in advance of trial so that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Flebotte v. Dow Jones & Co.*, No. 97-30117, 2000 U.S. Dist. LEXIS 19875, at *23 (D. Mass. Dec. 6, 2000). Carlyle articulates no legitimate basis that the joint report impairs its ability to cross examine these experts, given that (i) both Drs. Williams and Wilkie have adopted the entire report, and (ii) Carlyle will have an additional opportunity to depose both experts before trial. Under these circumstances, Carlyle will have more than a reasonable opportunity to prepare for effective cross examinations of Drs. Williams and Wilkie at trial. *See Flebotte*, 2000 U.S. Dist. LEXIS 19875, at *20-23 (holding that defendant's submission of a joint report of two expert witnesses "provided plaintiffs with a fair opportunity to adequately prepare a rebuttal to the defendant's expert testimony"); *Librado*, 2004 U.S. Dist. LEXIS 12203, at *38-40 (holding that a joint report by two experts that provided the materials reviewed, the educational backgrounds of the experts, and a detailed analysis of the experts' joint opinion disclosed sufficient information to allow for a reasonable opportunity to prepare for effective cross-examination").

Finally, even if the Wilkie/Williams VI report did run afoul of Rule 26(a)(2)(B) — which it doesn't — the appropriate "sanction" is not to strike the report and preclude the experts from testifying. Even Carlyle's lone case, *Dan v. United States*, does not go that

---

[11] Moreover, the joint report in *Dan* suffered from "numerous other failings" which, combined with the confusion as to joint versus individual opinions, ultimately led the court to conclude that the report did not comply with Rule 26(a)(2)(B). *Dan*, 2002 U.S. Dist. LEXIS 28267 at *7-8. For instance, the report did not disclose the complete basis for the opinions offered, the information considered by the experts in formulating their opinions, or the compensation being paid to the experts, and did not include a listing of cases in which the experts had testified in the past or an updated curriculum vitae. *Id.* The Wilkie/Williams VI report does not suffer these defects. *See* Dkt. No. 1020-2.

far.  There, the district court ruled that although the plaintiffs' joint expert report did not comply with Rule 26(a)(2)(B), striking the report and experts "would be a devastating and perhaps fatal blow to Plaintiffs' ability to successfully prosecute their case."  2002 U.S. Dist. LEXIS, at *14-15.  Instead, the court required the plaintiffs to submit separate reports for each expert "in full compliance" with Rule 26 to the defendant and granted the defendant an extension of time to take the experts' depositions on the completed reports.  *Id*. at *15; *see also Librado*, 2004 U.S. Dist. LEXIS, at *40-41 (requiring defendants to obtain missing expert's signature on joint report and ensure that the report clearly identified what was the work of each expert and any opinions that belonged to one expert but not another).

### C.    The Court should permit both Drs. Wilkie and Williams to testify at trial.

As an initial matter, Carlyle's argument that the testimony of Drs. Williams and Wilkie would be cumulative and prejudicial under Federal Rule of Evidence 403 is premature.  Without knowing exactly what the testimony of either witness will be, and with additional depositions of both witnesses still to occur before trial, Carlyle asks the court to *assume* that neither witness could possibly have anything to add to the other's testimony simply because they share the opinions in the joint report.  This argument is more properly raised at trial, when the court actually hears the testimony of at least one of these experts—or at the earliest, as a motion in limine after Carlyle has had a chance to examine the experts on the joint report at their depositions.  *See Abbott Point of Care, Inc. v. Epocal, Inc.*, 868 F. Supp. 2d 1310, 1332-33 (N.D. Ala. 2012) (declining to preclude testimony by either of two experts whose testimony was allegedly cumulative, and distinguishing an earlier case in which a second expert's testimony was excluded by noting that in the earlier case, the first expert had already testified, whereas in the case before it the court was being asked to speculate in advance of trial based only on the expert reports that the testimony of the two witnesses would be cumulative); *Thakore v.*

*Universal Mach. Co. of Pottstown*, 670 F. Supp. 2d 705, 720 (N.D. Ill. 2009) (denying motion in limine to exclude allegedly cumulative testimony because Rule 403 bars only "needlessly" cumulative testimony and it was "impossible at [the pre-trial] stage to make that determination.").

However, even if the court concludes that this argument is properly raised in the current motion, the argument fails.  The fact that two experts co-author a joint report does not necessarily mean that their trial testimony would be cumulative or prejudicial.  *See Jackson v. Louisville Ladder, Inc.*, No. 1:11-cv-1527, 2013 U.S. Dist. LEXIS 101563 (M.D. Pa., Jul. 22, 2013) (denying motion to preclude testimony of co-author of joint expert report as cumulative under Fed. R. Evid. 403); *SJB Group, LLC v. TBE Group, Inc.*, No. 3:12-CV-181, 2013 U.S. Dist. LEXIS 114284 (M.D. La., Aug. 13, 2013) (same).  Moreover, two different experts sharing the same opinion does not automatically render either expert's testimony redundant or cumulative for the purposes of Rule 403.  *See Abbott Point of Care, Inc.*, 868 F. Supp. 2d at 1330-33 (allowing testimony at trial of two experts who reached the same conclusion on infringement in a patent case).  Rule 403 "does not mean that a court may exclude evidence that will cause delay regardless of its probative value."  *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 795 (1st Cir. 1991) (quoting WEINSTEIN'S EVIDENCE, ¶ 403[6] at 403-99 (1990)).  Rather, the rule "requires a balance of probative value against the negative consequences of using a particular piece of evidence."  *Id.*

Ignoring this balancing requirement, Carlyle argues that if Drs. Williams and Wilkie both testify to all the opinions in the joint report, then their testimony would necessarily be cumulative and unfairly prejudicial.  However, Carlyle fails to identify a single specific way in which such testimony would unfairly prejudice it, other than to say flatly that the testimony of one will add nothing new to the testimony of the other.  Carlyle insists that the second testifying expert could only "parrot" the opinions of the first, which Carlyle claims is "expressly forbidden."

10

Carlyle ignores the probative value of having two experts with different backgrounds and areas of expertise testify on their shared opinions.  For instance, as Carlyle itself notes in its brief, Dr. Williams has more experience with industrial organization and traditional antitrust issues such as cartel behavior and plus factors.  Thus, he will likely be able to explain certain aspects of the report relating to those types of issues differently from Dr. Wilkie.  Likewise, Dr. Wilkie likely can offer comprehensive testimony regarding aspects of the report where he has exceptional experience, such as auction theory and finance issues.  In a case like this one involving highly complicated and technical material, allowing both experts to testify can only aid the factfinder in understanding their shared analysis and opinions.  *See Johnson v. United States*, 780 F.2d 902, 904-06 (11th Cir. 1986) (holding that the trial court abused its discretion by precluding a third expert witness from testifying in a medical malpractice case involving "highly technical material," because his "analysis was somewhat different," his testimony regarding certain issues was "more comprehensive," and he "had different, and arguably better qualifications than the other experts"); *Abbott Point of Care, Inc.*, 868 F. Supp. 2d at 1330-32 (holding that two experts who reached identical conclusions based on shared evidence should both be allowed to testify at trial due to "nuances" in their backgrounds and proposed testimony).  Accordingly, the Court should permit both Drs. Wilkie and Williams to testify at trial.

## III.   CONCLUSION

For these reasons, Plaintiffs respectfully request the Court:

1.      Deny Carlyle's motion to strike the expert disclosures of Drs. Connor, Marshall, and Officer and deny the motion to preclude Plaintiffs from relying on their expert testimony at trial;

2.      Deny Carlyle's motion to strike the expert disclosures of Drs. Wilkie and Williams and deny the motion to preclude Plaintiffs from relying on their expert

testimony at trial, and deny their alternative request to limit the testimony to one of these experts and the opinions specifically offered in Wilkie/Williams VI;

3.      Order Carlyle to pay the attorneys' fees and costs to Plaintiffs in responding to this motion.

Dated: August 18, 2014                 Respectfully submitted,


                                       /s/ Stacey P. Slaughter
                                       K. Craig Wildfang
                                       Thomas J. Undlin
                                       Stacey P. Slaughter
                                       ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
                                       2800 LaSalle Plaza
                                       800LaSalle Avenue South
                                       Minneapolis, MN 55402
                                       (612) 349-8500

Lisa A. Furnald
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199


Christopher M. Burke
Walter W. Noss
Kristen M. Anderson
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101

David R. Scott
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415


Patrick J. Coughlin
David W. Mitchell
Randi D. Bandiman
Phong L. Tran
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 18, 2014, I caused the attached Motion to be served via the Electronic Filing system on all of Defendants' counsel of record and via e-mail on all attorneys who have agreed to accept service via email at defendantsprivateequity@scott-scott.com.

/s/ Stacey P. Slaughter
Stacey P. Slaughter (admitted *pro hac vice*)
K. Craig Wildfang (admitted *pro hac vice*)
George D. Carroll (admitted *pro hac vice*)
ROBINS, KAPLAN, MILLER & CIRESI LLP
800 LaSalle Avenue, 2800 LaSalle Plaza
Minneapolis, MN 55402-2015
(612) 349-8500