UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIRK DAHL, *et al.*, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>vs.<br><br>BAIN CAPITAL PARTNERS, LLC, *et al.*,<br><br>                Defendants. | Lead Case No. 1:07-cv-12388-WGY<br><br><u>CLASS ACTION</u><br><br>DECLARATION OF DARYL F. SCOTT FILED ON BEHALF OF SCOTT+SCOTT, ATTORNEYS AT LAW, LLP IN SUPPORT OF CO-LEAD COUNSEL'S APPLICATION FOR AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND NAMED PLAINTIFF SERVICE AWARDS |

I, Daryl F. Scott, pursuant to 28 U.S.C. §1746, declare as follows:

1. I am a partner of Scott+Scott, Attorneys at Law, LLP ("Scott+Scott"), one of the Court-appointed Co-Lead Counsel in the above-captioned action ("Action").[1] I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. I submit this declaration in support of the Co-Lead Counsel's Application for Award of Attorneys' Fees, Litigation Expenses, and Named Plaintiff Service Awards ("Joint Motion").

3. In this declaration, I discuss the time billed and expenses incurred by Plaintiffs' Counsel, including Scott+Scott's time and expenses. I also discuss the criteria established by Co-

---

[1] The Court appointed Scott+Scott, Attorneys at Law, LLP, Robins, Kaplan, Miller & Ciresi LLP and Robbins Geller Rudman & Dowd LLP to serve as Co-Lead Counsel for the Settlement Class in its September 29, 2014 Order Preliminarily Approving Settlements, Conditionally Certifying the Settlement Class, Appointing Class Counsel for the Settlement Class, Approving Notice Plan, and Setting a Final Approval Hearing ("Preliminary Approval Order"). Additional Plaintiffs' Counsel are set forth in Exhibit A hereto. Co-Lead Counsel and additional Plaintiffs' Counsel are collectively referred to herein as "Plaintiffs' Counsel."

Lead Counsel to review and, when necessary, to adjust the hours billed, billing rates, and expenses.

## PLAINTIFFS' COUNSEL'S TIME AND EXPENSES

### I. Monthly Monitoring of Time and Expenses

4. This case has been ongoing for more than seven years and was prosecuted by 11 law firms.

5. Early in the case, Co-Lead Counsel established procedures for monitoring Plaintiffs' Counsel's time and expenses. Among other things, each firm submitted a monthly report to Scott+Scott, acting for Co-Lead Counsel setting forth an itemized list of the time entries for the work performed and expenses incurred during the month.

6. Scott+Scott then reviewed the reports and used the reports, in consultation with Co-Lead Counsel, to monitor, supervise, and allocate work among the non-lead law firms. Reports submitted and reviewed by Scott+Scott contained information listing, among other things, the name of the timekeeper, the amount of time spent on a task by the timekeeper and the cumulative hours, lodestar, and expenses accumulated by the law firm in the case. The monthly reports were then submitted to me in a summary report prepared by a member of my staff and were personally reviewed by me.

7. Co-Lead Counsel established certain procedures and auditing criteria that governed the accumulation of time and expenses in this Action for submission in the fee and expense application. These criteria were applied to the time and expenses reported by the Plaintiffs' Counsel and are reflected in the summaries contained in the declarations submitted to the Court by each firm in support of the Joint Motion ("Plaintiffs' Counsel's Declarations").

## II.     Review of Plaintiffs' Counsel's Time and Expenses

8.     Prior to the submission of Plaintiffs' Counsel's Declarations, Co-Lead Counsel performed a review of each firm's time and expenses, including their own. The criteria applied to the review is as follows:

- Time entries were removed if Co-Lead Counsel believed that the work did not further the interests of the Class. For example, "read and review" of court filings was removed unless Co-Lead Counsel considered the review necessary for an assigned task, or providing guidance to a named-plaintiff client.

- Work was reviewed to ensure it was commensurate with the attorney's level of experience, for instance, a partner should not have been performing tasks suited for associate and associates should not have been performing tasks suited for paralegals.

- Document review time in excess of 10 hours a day was removed (unless it was expressly approved by Co-Lead Counsel), and time that exceeded 15 hours in a single day was adjusted downward, unless there was a justification.

- Time spent reviewing documents was capped at $400 an hour.

- Expenses were reviewed for reasonableness, and to make sure that they were justified.

9.     After the leadership review was complete, each firm was asked to adjust its time and expenses accordingly, and it is my understanding that these adjustments are reflected in the declarations submitted to the Court in support of the Joint Motion.

10.    Exhibit A lists the Plaintiffs' Counsel's lodestar, broken down by firm. Exhibit A was compiled from the declarations prepared by each of the law firms, and reflects a total lodestar of $80,145,191.75.[2]

---

[2] In the process of finalizing this declaration, it was discovered that two numbers had been mistakenly entered in the lodestar chart. The actual lodestar number is $80,145,191.75, not $80,145,161.50 (a difference of $30.25), as set forth in some of the papers – including the expert declarations – that were finalized prior to the discovery of the mistake.

### III.  Plaintiffs' Counsel's Expenses

11.  Plaintiffs' Counsel's incurred a total of $12,028,514.99 in expenses in prosecuting this Action. Exhibit B sets forth the Plaintiffs' Counsel's expenditures on a firm-by-firm basis, and was compiled from the declarations prepared by each firm. *See* Plaintiffs' Counsel's Declarations.

12.  Expenses were expended by each firm, as well as through a litigation fund ("Litigation Fund") that was established by Co-Lead Counsel and administered by Scott+Scott.

#### A.  The Litigation Fund

13.  As is common in large, complex cases such as this one, Co-Lead Counsel established a Litigation Fund. In addition to allowing for the timely payment of invoices, many of which were very large, the Litigation Fund also allowed Co-Lead Counsel to better monitor and control expenses.

14.  A total of $4,711,883.12 was paid from the Litigation Fund, and the fund still owes approximately $3,898,116.88 in accrued and outstanding expenses. Exhibit D shows the contributions made to the Litigation Fund by each firm, and Exhibit C sets forth the expenditures from the Litigation Fund, and the approximate amounts outstanding.[3] The numbers contained in Exhibits C and D were taken from the books and records maintained at Scott+Scott, which are based on invoices received by the firm.

15.  Approximately 74% of the costs in this case were paid from the Litigation Fund, and the vast majority of the payments were for experts and consultants ($5,762,128.10), and the establishment and maintenance of the on-line document review platform and repository

---

[3] Each firm contributed to the Litigation Fund, and these contributions are reflected as an expense line item in Plaintiffs' Counsel's Declarations. Contributions to the Litigation Fund were the largest single expense item reported by each of the firms. *See* Plaintiffs' Counsel's Declarations.

($2,539,789.55).  *See* Exhibit C.  Payments were made to court reporters for transcripts and the mediator, among others.  *Id.*

  **B.** **Expenses Incurred by Plaintiffs' Counsel**

  16. In addition to payments by the Litigation Fund, other expenses were paid directly by Plaintiffs' Counsel.  These payments were made primarily by Co-Lead Counsel.  Payments outside of the Litigation Fund were necessary when, for instance, an expense required immediate payment and the Litigation Fund lacked the funds to make the payment, or for early costs when the common fund and assessment regime had not yet been established.

  17. Plaintiffs' Counsel also incurred costs for: (a) telephone, photocopying, and facsimile charges; (b) overnight delivery and messenger services; (c) legal filing, process server, and court reporter fees; (d) on-line legal, financial, and factual research; (e) transportation, meals, and hotels; (f) consultant, investigator, and expert fees; and (g) mediation fees.  These litigation expenses are categorized and detailed in Plaintiffs' Counsel's Declarations, including this one on behalf of Scott+Scott.

## SCOTT+SCOTT'S TIME AND EXPENSES

  18. I am familiar with the work performed by the attorneys and paraprofessionals of the firm, and had primary responsibility for monitoring and tracking the firm's time and expenses in this Action.  The information in this declaration regarding Scott+Scott's time and expenses is taken from time and expense printouts and supporting documentation prepared and/or maintained by the firm in the ordinary course of business.

  19. I reviewed these printouts (and backup documentation where necessary or appropriate) in connection with the preparation of this declaration.  The purpose of this review was to confirm both the accuracy of the entries on the printouts as well as the necessity for, and

reasonableness of, the time and expenses committed to the Action. As a result of this review, reductions were made to both time and expenses. I believe that the time reflected in the firm's lodestar calculation and the expenses for which payment is sought as set forth in this declaration are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation. In addition, I believe that the expenses are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

20. After the reductions referred to above, the number of hours spent on this litigation by my firm is 50,112.20. A breakdown of the lodestar is provided in Exhibit E. The lodestar amount for attorney/paralegal (or attorney/paraprofessional) time based on the firm's current rates is $24,960,699.00. The hourly rates shown in Exhibit E are the usual and customary rates set by the firm for each individual.

21. My firm seeks payment of expenses of $3,822,680.04 in expenses that were necessarily incurred in connection with the prosecution of the litigation. Those expenses and charges are summarized by category in Exhibit F.

22. The expenses pertaining to this Action are reflected in the books and records of this firm. These books and records are prepared from receipts, expense vouchers, check records and other documents and are an accurate record of the expenses.

23. The identification and background of my firm and its partners is attached hereto as Exhibit G.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of November, 2014, at Colchester, Connecticut.

                                                                           Daryl F. Scott

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 13, 2014.

                                             s/ David W. Mitchell
                                             DAVID W. MITCHELL