UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIRK DAHL, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BAIN CAPITAL PARTNERS, LLC, et al.,<br><br>Defendants. | Lead Case No. 1:07-cv-12388-WGY<br><br>CLASS ACTION<br><br>DECLARATION OF THOMAS J. UNDLIN FILED ON BEHALF OF ROBINS, KAPLAN, MILLER & CIRESI L.L.P. IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES |

I, Thomas J. Undlin, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am a partner of the law firm of Robins, Kaplan, Miller & Ciresi L.L.P. (RKMC), co-lead counsel in the above-captioned class action. I submit this Declaration in support of Plaintiff Counsel's joint Application for Award of Attorneys' Fees, Litigation Expenses, and Named Plaintiffs Service Awards.[1]

2. The information in this Declaration regarding RKMC's time and expenses is taken from time and expense printouts and supporting documentation prepared and maintained by the firm in the ordinary course of business. I am one of the partners who oversaw and conducted the day-to-day activities in the litigation and I reviewed the summaries attached to this Declaration and all relevant detailed backup documentation

---

[1] As described in the moving papers, Lead Counsel includes the Co-Lead Counsel firms of Robins, Kaplan, Miller & Ciresi L.L.P, Scott+Scott, Attorneys at Law, LLP, and Robbins, Geller, Rudman & Dowd LLP. The Court appointed the three firms co-lead counsel in its Order granting preliminary approval on September 29, 2014.

85360312.1

in connection with the preparation of this Declaration. The purpose of this review was to confirm both the accuracy of the entries on the billing summaries as well as the necessity for, and reasonableness of, the time and expenses committed to the litigation. As a result of this review, reductions were made to both time and expenses in the exercise of "billing judgment." As a result of this review and the adjustments made, I believe that the time reflected in the firm's lodestar calculation and the expenses for which payment is sought as set forth in and appended to this declaration are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation. In addition, I believe that the lodestar and expenses are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

3. Throughout most of the duration of this case, RKMC submitted its time and expense records on a monthly basis to co-lead counsel, Scott+Scott. Those time records were reviewed internally at the time of submission to ensure they were accurate and reflected work reasonably undertaken to prosecute this case and advance the interests of the class. We did not review other firms' time and expense on a monthly basis; however we understand that other firms' time and expense summaries were submitted to and maintained by Scott+Scott on behalf of all plaintiffs' firms. When the case was finally settled, over the past month, Lead Counsel has divided and assigned for review among themselves, based on criteria established by Lead Counsel, the billing submissions of other non-lead firms in connection with the combined fee and expense application.

4. To ensure that the RKMC time and expense submissions were accurate, I

once again personally reviewed the firm's detailed billing reports for the entire duration of this case. I reviewed every time entry to ensure that the amount of time spent on the work was reasonable, that the rate billed for the work was reasonable given both the nature of the work being done and the seniority level of the attorney or professional doing the work, that the amount of detail provided in support of the time entry was sufficient, and that the work being done was in furtherance of the class' interests. All of the hourly rates applied by RKMC in this matter are the usual and customary hourly rates that we regularly charge *per diem* clients for complex business litigation cases such as this matter. All of the timekeepers who worked on this case were partners, principals, associates or normally employed professionals of the Firm, including three project review attorneys that we deployed for "first-cut" initial document review. With the help of our internal accounting staff, I also made adjustments to ensure that all of the reported time met the criteria established by Lead Counsel. For example, our review ensured that no document review attorney billed more than 10 hours per day, that summer associate or law clerk time was removed and that the time for any timekeeper who recorded less than 10 hours to the matter were removed.

5.      In addition to time entries, I personally reviewed all of the out-of-pocket costs advanced by RKMC and reflected in its detailed billing reports, for the entire duration of the case, to confirm that such costs were reasonable and expended in furtherance of the Classes' interests. The detailed billing reports are prepared from receipts, expense vouchers, check records and other documents and are an accurate

record of the expenses RKMC incurred in pursuing the matter. I worked with our legal administrative assistants and our internal accounting department to make a detailed review of the submitted expenses to ensure that they complied with the criteria established by Lead Counsel.

6.  With regard to out-of-pocket expenses for travel (airline tickets, ground transportation, hotels, meals), RKMC has paid for travel expenses to attend, among other things, court hearings, witness interviews, strategy working group sessions among class counsel, mediation sessions, meet and confer sessions with opposing counsel, and to take or defend numerous depositions. Each of the cost entries reflected in our records was reviewed to ensure that it was an expense reasonably incurred to prosecute the case and advance the interests of the class. With regard to airline ticket costs, as a rule and pursuant to firm policy, coach class tickets are purchased for all business travel. One exception is that partners may purchase "up-fare" coach tickets in the later years of the case to ensure first class travel space for working space or health reasons. According to our firm travel agent "up-fare" tickets are purchased as a coach class ticket and automatically upgraded to first class and appear on the itinerary as a first class ticket; however, these tickets are not purchased at a first class rate but rather at a coach class rate, and often at a less expensive rate than a full coach fare.

7.  With regard to out-of-pocket costs for meals, my legal assistant and I reviewed the backup receipts for meals over $75 to confirm that the number of people attending accounted for a reasonable per diem for the meal. The dates and purpose of

the meals were reviewed to determine if any alcohol was served during those meals (in the evening for example) and, if so, removed from the billing.

8. Another significant category of expense paid for by RKMC relates to photocopying costs. The aggregate expense, however, is primarily driven by the number of copies that have necessarily been generated for a case of this size, with larger attorney teams, over the course of more than seven years. RKMC's billed photocopying rates range from 15 cents per page for color copies, 9 cents per page for regular black and white copies, and between 5 cents and 3 cents per pages for digital image, PDF or OCR conversions.

9. The most significant category of expense comprised of contributions to the litigation "common fund", administered for class counsel by co-lead counsel, Scott+Scott. The common fund receipts and expenditures primarily account for payments to expert witnesses necessary to the case and electronic data storage and review platforms for the enormous amount of data that had to be reviewed by class counsel. Beyond the common fund contributions, however, RKMC had other significant expenses paid for directly by RKMC relating to expert witness fees, mediation fees and data storage fees. Most of these direct expenses, such as for expert witnesses and data storage, were paid prior to the establishment of the common litigation fund or at time when immediate payment was necessary and the common fund did not have funds to cover the costs. Others, like mediation fees, were commonly split among the three co-lead firms, including RKMC.

10. From the inception of the investigation of this case in October, 2006, through preliminary approval of the settlements on September 29, 2014, RKMC has represented the class on a contingency fee basis and has not received any fees or any reimbursement of expenses. RKMC has continued to perform legal work and incur expenses on behalf of the class since September 29, 2014, and will continue to do so. RKMC reserves the right to submit its subsequent lodestar and expenses to the Court as a supplement to the current joint Motion.

11. The detailed billing records of RKMC for time spent prosecuting this case and the resulting lodestar, from October 2006 through September 2014, and after adjustments based on the reviews described above, reflect that RKMC hourly billing timekeepers worked a total of 45,606.30 hours on the case for a total invested lodestar at current rates in the amount of $15,525,259.00.

12. Attached as <u>Exhibit A</u> is a summary of our billing records that reflects the timekeepers who worked on the case, along with their title, a cumulative summary of the hours worked, the billing rates and lodestar generated. A full printout of RKMC's time records is available and will be provided if requested by the Court.

13. The RKMC lodestar does not include any time spent prosecuting this case after September 29, 2014, and it does not include any estimates for future time to be incurred in seeking final approval, handling any appeals or administering the settlements. The total also does not include any time that has been undertaken by me or other RKMC personnel to review our firm's time and expenses, prepare the fee and expense petition or to collect, review and analyze any of the billing reports of non-lead

class firms that I was assigned. I personally have spent dozens of hours reviewing the RKMC detailed billing reports and certain other non-lead class firms' submissions to make the adjustments to time and expenses described herein. My legal administrative assistant and many other people in our accounting department have spent many additional hours in this effort.

14. Attached as <u>Exhibit B</u> is a detailed breakdown, by category, of the out-of-pocket costs, after adjustment, paid by RKMC for this matter from October 2006 through September 2014, totaling $3,074,923.94. The largest share of these out-of-pocket costs (approximately 63%) is comprised of contributions to the Common Litigation Fund as assessed by Lead Counsel, and maintained by the co-lead counsel firm of Scott+Scott. The other expenditures were for direct payments to experts and consultants beyond the common fund, direct payments to vendors for data storage fees beyond the common fund, and direct disbursements for travel, computer assisted research, photocopies and the like, which have been described above. A full printout of RKMC's costs is available and will be provided if requested by the Court.

15. A detailed description of the work that RKMC, along with all of Plaintiffs' Counsel, performed over the course of this litigation is set forth in Declaration of Plaintiffs' Counsel in Support of Named Plaintiffs' Motion for Final Approval of Settlement and Plan of Distribution of Settlement Proceeds; and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses, and will not be repeated here. A resume of RKMC's antitrust practice group, along with the professional biography

information of the Firm partners who primarily worked on this case are attached as Exhibit C.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:   Minneapolis, Minnesota.
         November 13, 2014

_____
Thomas J. Undlin

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 13, 2014.

                                                s/ David W. Mitchell
                                                DAVID W. MITCHELL

955185_2